# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------X

IN RE:

    **SHAHARA KHAN,**　　　　　　　　　　　　**CASE NO. 10-46901**

            Debtor.

----------------------------------------------------------------X

**DEBRA KRAMER**
**AS TRUSTEE**
**OF ESTATE OF SHAHARA KHAN,**

           Plaintiff.

--against—
　　　　　　　　　　　　　　　　　　　　　　**ADVERSARY NO.**
　　　　　　　　　　　　　　　　　　　　　　**11-01520**

**TOZAMMEL H MAHIA,**

          Defendant.

----------------------------------------------------------------X

## TO THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

PLEASE TAKE NOTICE that, upon the accompanying Memorandum and

affirmation in Support of Dahiya Law Offices LLC 's Motion to Withdraw the

Reference, dated November 10, 2012; the Declaration of Karamvir Dahiya, Esq. in Support

of the Motion to Withdraw the Reference and exhibits thereto; and all the papers filed and

proceedings had herein, Karamvir Dahiya and Dahiya Law Offices LLC (together, the

"Movant" or "Dahiya") respectfully hereby move the United States District Court for the

Eastern District of New York for an order, pursuant to 28 U.S.C. §157(d), Rule 5011 of

the Federal Rules of Bankruptcy Procedure, and Rule 5011-1 of the Local Rules of the

United States Bankruptcy Court for the Eastern District of New York, withdrawing the

reference to the United States Bankruptcy Court for the Eastern District of New York of

1

the underlying motion for sanctions as initiated by the plaintiff trustee and her counsels against the undersigned and his office in the above-captioned adversary proceedings.

Further, Notice is given that this motion is based on jurisdictional and constitutional facts involving Article III values with assertion of right to be heard by an Article III, that there has not been an express consent to the jurisdiction of the bankruptcy judge adjudication and that the Bankruptcy Unit of Eastern District of New York has no jurisdiction over the alleged dispute or claim.

Dated: New York, New York
November 10, 2012

Respectfully submitted,

Dahiya Law Offices LLC

By: /s/Karamvir Dahiya, Esq. (KD-9738)
350 Broadway Suite 412
New York New York 10013
Tel: (212) 766-8000
Fax: (212) 766-8001

Notice to:

Debra Kramer
Attorney at Law
Panel Trustee
98 Cuttermill Road, Suite 466 South
Great Neck, NY 11021
Phone: (516) 482-6300
Fax: (516) 482-6317

The Law Offices of Avrum J. Rosen, PLLC
38 New Street
Huntington, New York 11743
Phone: 631-423-8527
Fax:   631-423-4536

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
IN RE:

   **SHAHARA KHAN,**       **CASE NO. 10-46901**

      Debtor.
----------------------------------------------------------------X
**DEBRA KRAMER**
**AS TRUSTEE**
**OF ESTATE OF SHAHARA KHAN,**

      Plaintiff,

--against—

             **ADVERSARY NO. 11-01520**

**TOZAMMEL H MAHIA,**

      Defendant.
----------------------------------------------------------------X

## AFFIRMATION IN SUPPORT OF WITHDRAWAL OF THE SANCTION MOTION

   The undersigned Karamvir Dahiya, Esq. and his office Dahiya Law Offices LLC (together, the "Dahiya" or "Movants") respectfully submit this memorandum of law in support of their motion, pursuant to 28 U.S.C. § 157(d) and Rule 5011 of the Federal Rules of Bankruptcy Procedure, for an order withdrawing the reference of sanctions motion initiated by the Plaintiff and her counsels ("Panel trustee") against the Movants, based on section 1927 of Title 28 and 'inherent powers' of the bankruptcy unit/court emanating from the past representation of the defendant, Tozammel H. Mahia in the aforesaid proceeding to the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court")

## PRELIMINARY STATEMENT

The Movants respectfully seek to have this dispute heard by an Article III Judge in order to avoid several constitutional infirmities and for safeguarding individual rights and for upholding fairness principles.   The issues raised here are of 'great importance and delicacy.' The claim is based on the two principles, right to be heard by an independent judiciary and as well as that the bankruptcy court does not have any power under the constitution to hear such a dispute.

The panel trustee has sought a monetary relief in excess of $20,000 against the undersigned, alleging such compensability by virtue of sanctions motions under section 1927 of the Title 28 and also invokes inherent power of the bankruptcy court.  Ex. A (The Motion for Sanctions)

We object, as there are no grounds for claims under section 1927 and inherent power and that the bankruptcy court does not have jurisdiction on either of these two grounds. A bankruptcy court assuming jurisdiction on these two grounds violates "separation of power" and is contrary to the principles laid out by the Supreme Court. And further the bankruptcy judges ruling on such issues shall violate appointment clause.

The plaintiff in the aforesaid adversary proceeding, the trustee (the "Panel Trustee") for the estate of Ms. Shahara Khan ("Debtor") sought to recover in excess of $30,000 based on New York State causes of action especially

4

New York Creditors and Debtor Law.  The defendant, Tozammal Mahia ("Mahia") and his sister had bought their first residential home in 2005 located at 87-27 110th Street, Richmond Hill, New York.  At the time of closing, based on the advice of the mortgage broker, Mahia and his sister added their mother's name on the property.  The debtor had not provided any down payment towards the purchase of the house. The debtor never paid any mortgage payments.  Debtor had not worked since and before that she was making less than 400 dollars a month.  The defendant and his sister sold the house  and in and from the disbursements available, no money was specifically ear-marked for the debtor mother, though the defendant-son, debtor-mother and sister continued to have access to that fund as it is a joint-family.  Panel trustee, her lawyers Avrum Rosen and his associate Fred Kantrow ("The Trio")  brought the law suit to recover the funds, claiming to do so for the benefit of creditors. Ex. B. (The Complaint).

As impleaded as a party-defendant, the son and the  debtor thought that it was a bad faith litigation  and thus it was necessary to bring counterclaim against the trustee under "Abuse of Process" and Constitutional tort as well as injunctive relief.  The answer to the underlying lawsuit was filed with specific request that the said case and counterclaims are to be heard by an Article III. There was no consent to the jurisdiction of the bankruptcy judge. Ex. C. (The Answer).

As was expected, owing to such assertion of right to be heard by an Article III court, the Trio, immediately brought a motion for sanctions, as they have done it

5

earlier in other matters (detailed in the affidavit).  The sole motive behind these

motions is to chill advocacy, compromise fundamental rights and coerce debtor and

the families into settlement. They, the Trio,  don't like to be checked.  The motions

for sanctions had its intended impact and the defendant got scared and immediately

decided to change the undersigned as his attorney. The defendant hired a new

attorney and the new attorney immediately withdrew the counterclaims and

consented and submitted to the jurisdiction. Ex. D. (Withdrawing of

Counterclaims).  The Trio achieved whatever they wanted. And now they want to

continue to harass and silence the attorney who represents the under privileged poor

people.


Trustee brings motion for sanctions against the undersigned based on section

1927 of title 28 and also invokes inherent power of the bankruptcy unit of this

district. The gravamen of their accusation is that the undersigned files motions to

withdraw the references to gain litigation leverage and increase the cost of

litigation. Whereas the undersigned asserts that it is the fundamental rights of the

debtor's families pitted as defendants in proceedings to have a right to be heard by

an independent article III court. The Trio does not like such rights asserted and they

want parties to fight them in the bankruptcy court turf.


The underlying lawsuit was brought in bad-faith because had the panel

trustee and her legal team done their homework--which they were under an

obligation to do--they would have found out that the debtor was only a bare legal

title holder of the property and she had no interest or claim in the property. Though

the defendant, debtor and the family members tried to explain to the trustee, but she

dismissed their pleas. Looking at the other cases brought by The Trio—Ms. Debra

Kramer as Trustee, Avrum Rosen and Fred Kantrow as her counsels, it was clear

this lawsuit was brought to put the vulnerable immigrant family in fear to get a

good settlement. More details of this practice is delineated in the attached Affidavit.

Debtor at the section 341 meeting of creditors, when examined by the panel

trustee disclaimed any interest in the property. She did not even know that she had a

property. The transcript is attached herewith. Ex. E. (The 341 Transcript)

On this motion for withdrawal of reference, the Court need not definitively

decide these issues on a threshold basis. Rather, the Court need only decide that

these important, threshold matters-on which nearly all of the damages and

relief asked for against the undersigned movant depends-will require significant

consideration and interpretation of non-Bankruptcy Code federal statutes,

constitutional interpretation of Article III, separation of power, State law abuse of

process elements, constitutional torts, nature of private right involved herein. As

and if such consideration is required, Congress has mandated that these actions be

heard in an Article III court, and this Court must withdraw the reference of the

underlying motion proceedings to the Bankruptcy Court.

Withdrawal of the reference is mandatory as this motion raises questions of vital importance both statutorily and constitutionally. These questions do raise novel issues to the level of "substantial and material consideration" where Second Circuit has found withdrawal of reference necessary. *In re Ionosphere Clubs, Inc.*, 922 F.2d 984 (2d Cir. 1990). Indeed, withdrawal of reference is mandatory here as the very jurisdiction, the bankruptcy court is attempting to assume is subject to constitutional questioning and the undersigned has invoked the right to be heard by an article III court.

The undersigned submits the following questions and proposition of law for consideration by this Honorable Court.

## Proposition of law and Issues Raised.

1.  The claim asserted and judicial power invoked by trustee and her lawyer, Arum Rosen and Fred Kantrow does not fall within one of the "exceptional" categories identified by the Northern Pipeline plurality (involving territorial courts, military tribunals, and public rights) or within its "adjunct" theory; *Northern Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982);

2.  There is no "Schor" like consent by the undersigned to this adjudication of panel trustee claims by the bankruptcy judge/referee and also the underlying dispute involves a private right issue i.e.

liability of one individual to another; *CFTC v. Schor*, 478 U.S. 833 (1986)

3.      The underlying dispute emanates from the cause of a litigant or a right of a litigant of the right to be heard by an Article III court. Further, the Trustee asserting that a litigant is not entitled to withdraw the reference and be coerced to battle with the trustee in an non-Article III forum is violative of Due Process Clause;

4.      The underlying dispute raises questions of constitutionality of application of provisions of 1927 as assumed by a bankruptcy judge as bankruptcy court is not a court of United States as defined under Chapter 5 of Title 28;

5.      The bankruptcy judges are not adjunct to Article III court, thus their assuming powers to decide private rights and constitutional issue is unconstitutional;

6.      Whether the bankruptcy judges have the same powers to entertain Article III issues as compared to the magistrate judges who are operating under the constant supervision of Article III judges;

7.      Whether aggregation of bankruptcy Judges constituting a tribunal, pursuant to 28 U.S.C. § 151, entitled as bankruptcy court, is Court of the United States as contemplated under Chapter 5 and section 451of Title 28;

8.  Whether the aggregation of bankruptcy judges constituting a unit of District Court, called bankruptcy court under 28 U.S.C. § !51, have "inherent power: as inhering to an Article III court;

9.  Whether the legislative amendment to the Bankruptcy Reform Act of 1978 ("Act") (Pub.L. 95-598, 92 Stat. 2549, November 6, 1978) by Bankruptcy Amendments and Federal Judgeship Act of 1984 ("BAFJA") (Pub. L. No. 98-353, 98 Stat. 333 (1984) cures the unconstitutionality of Act and such if now extant bankruptcy judge can entertain underlying case of New York State based causes of action of Uniform fraudulent conveyances Act;

10. Whether, BAFJA amending the bankruptcy act of 1978 by making the appointment by an independent judiciary cures the defects as reflected by Marathon case;

11. Whether the bankruptcy judge has been constitutionally vested with the power to decide the question of Jurisdictional fact under 28 U.S.C. 157 (b)(3), in light of still extant jurisprudence of *Crowell v. Benson*, 285 U.S. 22 (1932);

12. Whether the bankruptcy unit of district court can constitutionally decide both disputes private and public without being an adjunct to the district court and without a constant and direct supervision of these judicial officers operating as bankruptcy judge;

10

13.    Whether, the amount of powers assumed or arrogated to or by the bankruptcy judges/referee violates the Appointment Clause. Art. II, Cl. 2, § 2;

14.    Whether a bankruptcy judge assuming such powers, as contemplated under 28 U.S.C. §§ 151 and 1927 violates Appointments Clause of Article II, Section 2;

15.    Whether a wholesale, un-individuated, ipso facto transfer of the cases (statutorily filed with the district court), pursuant to Local Rules of District Court invoking section 157 of title 28 violates the Constitution as held in Northern Pipeline.

16.    Whether such a blanket referral by district court under section 157 of title 28 violates Separation of Power doctrine;

17.    Whether such an automatic transfer of cases violates the Appointment Clause;

18.    Whether a private party who has not consented to the jurisdiction of the bankruptcy court has a right to have its case heard by an Article III court;

19.    Whether the undersigned is entitled to a jury trial on the issue of liability and damages asserted by the panel trustee, and as Article III and Seventh Amendment test is co-extensive if case must mandatorily move to Article III forum;

20.    Whether Barton doctrine extends to all and every act of a panel trustee appointed under section 701 and 702 (d) of Title 11 and if it is obsolete in light of the fact that the panel trustee is not a receiver appointed by the court;

21.    Whether Barton Doctrine if at all applicable, can shield constitutional torts liability under Bivens; and

22.    Whether a non debtor can move to request withdrawal of reference without establishing a cause thereby avoiding constitutional questions.

I, the undersigned respectfully, in support of my application for withdrawal of reference and for issues raised provide the following brief summary of law implicated herein.

## Bankruptcy Court and Public/Private Right Distinction

Bankruptcy Units of the District Court cannot decide private rights issues as their role is limited to those functions under the bankruptcy code limited to exception to such private rights. To the extent, a bankruptcy judge willfully assumes jurisdiction to decide matters impacting private rights, such an act is unconstitutional.

The Supreme Court is the only court established by the Constitution, other inferior federal courts, District Courts and Courts of Appeals, staffed by judges with

permanent tenure and protection against diminution of salary are created by the Congress pursuant to Article III. Bankruptcy unit of the District Court is a created by the Congress pursuant to its power under Article1 of the Constitution.

Congress has created other tribunals, pursuant to its power under Article 1, Section 8 and Clause 9 like Court of the Appeals for the Armed Forces, the Court of Appeal for Veteran Claims, the Tax Court, the Court of Federal Claims, the Merit System Protection Board and armed forces court martial along with other adjudicative bodies. These federal tribunals though denominated as "courts" [not as Article III courts], are staffed by judges lacking life tenure and salary protection. These are aptly called Article I courts, for most of the time, Congress while creating them is exercising legislative authority enumerated under powers in Article 1with the "necessary-and-proper" clause of the same article.

These aforesaid courts have adjudicated issues arising under the laws of the United States. For instances, Court Martial, under Article 1, presided over by senior army officer, adjudicating claims arising under United States laws; Court of Claims for several years adjudicating contract and property claims against United States; Court of Claims handling disputes emanating from federal government's administration of taxes, customs and public lands.  However,  all these disputes falls under the rubric of "Public Rights" exception to Article III that the Supreme Court had identified in *Murray's lessee v. Hoboken Land & Improvement Co.* 59 U.S. (18 How.) 272, 284 (1855).  Justice Curtis, writing for the unanimous court in Murray's

Lessee case looked not to the terms of Article III as such, but to the differing nature of rights which federal courts enforced in the exercise of their jurisdiction, in order to define the scope of congressional power to substitute other tribunals for Article III courts: "there are matters involving public rights, which may be presented in such form that the judicial power is capable of acting on them, and which are susceptible of judicial determination, but which congress may or may not bring within the cognizance of the courts of the United States, as it may deem proper." Id.

Public rights involve civil claims by and against government. *See Ex parte Bakelite Corp.*, 279 U.S. 438, 458 (1929) (holding that the Court of Customs Appeals had been properly constituted as a legislative court: "The full province of the court under the act creating it is that of determining matters arising between the government and others in the executive administration and application of the customs law."). Further, "[t]he appeals include nothing which inherently or necessarily requires judicial determination, but only matters the determination of which may be, and at times has been, committed exclusive to executive officers" (emphasis added). *Id.*

Congress has also, time to time created specialized tribunals and has staffed them with Article III judges. Examples are Foreign Intelligence Surveillance Court, the Alien Terrorist Removal Court, similarly in the past we have had Emergency Court of Appeals with exclusive jurisdiction to entertain challenges to order and regulations issued under the Emergency Court of Appeals, created by the 1971

amendments to the Economic Stabilization Act of 1970. The reason was simple, for they entailed or could issues related to "Personal Rights."

Supreme Court, has permitted, in an early case, *Crowell v. Benson*, adjudication of private dispute between private parties, however same has been subject to two limitations i.e. Jurisdictional facts and constitutional facts of the case shall be decided or preserved for an Article III judge. 285 U.S. 22 (1932). Further, law was to be determined independently of the agency. *Id.* However, in *Northern Pipeline*, Justice Brennan revived the distinction between "public" and "private" rights—first coined in Murray's lessee and but interred in Crowell—to restrict Congress' power, arguing that so called "private rights" cases could not be "removed from Art. III courts and delegated to legislative courts or administrative agencies," even if judicial review in an Article III court were provided thereafter. *N. Pipeline Constr. v. Marathon Pipeline Co.*, 458 U.S. 50 (1982). *Northern Pipeline* also created or added another important layer to the justiciability of claims falling under the rubric of public rights doctrine, it brought these public rights at par with private rights in regards to mandatory appellate Article III review. *Id.*

*Northern Pipeline* is the first categorical check on an expansively increasing presence of Article I courts and it is the only decision that invalidated congressional employment of legislative courts, striking down the jurisdiction given to the non-Article III federal bankruptcy judges under the Bankruptcy Act of 1978. *Id.* The Court, considered the constitutionality of Bankruptcy Act of 1978 which had

expanded the powers of the bankruptcy court: making them Court of Record, with

independent power to issue subpoena and enforce judgment, hold people in contempt,

rulings on issues related to both federal and states laws, power to decide its own

jurisdiction and ultimately giving jurisdiction on both summary and plenary

proceeding by abrogating the division which was an acceptable form of bankruptcy

adjudication under bankruptcy act of 1898. Rejecting government's two arguments

invoking *Crowell v. Benson* and *United States v. Raddatz*, 447 U.S. 667 (1980), that

bankruptcy courts as "adjunct" were subject to the oversight and review of an Article

III court and Article I power of the Congress to enact laws on bankruptcy, the Court

refused to accept further acknowledged Three exceptions [territorial courts, court

martial and public right adjudicators] to Article III and held Article III imposing a

strict structural limit to the power of the Congress in this regard and stated that

adjunct theory fails as the alleged adjunct had power to enter self-executing

judgments, to conduct jury trials, to punish for contempt and to issue subpoena. See

*Id.* at 55. Thus the court-like features made the bankruptcy court <u>ineligible</u> for adjunct

justification which was found in Crowell case.


Post '*Northern Pipeline*', an attempt was made by the Supreme Court,

adhering to the tenets of *Crowell* case, to reject "any attempt to make determinative

for Article III purposes the distinction between public and private right." *Commodity*

*Futures Trading Comm'ns v. Schor*, 478 U.S. 833, 853; *Thomas v. Union Carbide*

*Agric. Prod. Co.*, 473 U.S. 568 at 585-586. In the matters of *Schor* and *Thomas*, the

Supreme Court adopted a pragmatic and balancing approach towards evaluating the

jurisdiction and constitutionality of the post-Marathon challenges to such Article I tribunal or agencies dealing with either state related issues or disputes between private parties, however the same was confined to arena of federal regulatory scheme and express, knowing consent of the parties. *Thomas v. Union Carbide Agricultural Products Co.*, 473 U.S. 568 (1985) (dealing with seemingly private nature of dispute); *Commodity Futures Trading Commissions v. Schor*, 478 US. 833 (1986) (dealing with state law issues).

*Schor* distinguished *Northern Pipeline* because the claims herein premised on federal law and distinguished Crowell because the federal claim rested on federal law, and distinguished *Crowell* because the federal claim did not replace a pre-existing state law right to compensation. Although the liability of one private party to another was at stake, the right to compensation under FIFRA "is not a purely 'private' right but bears many of the characteristics" of a public rights dispute, apparently because it arose under a complex regulatory scheme. The crucial point did not involve categorization. Id., *Schor.*

The factors that informed the Court decision in *Thomas* were: firstly, it characterized the rights in question as federal rights, distinguishing it from state law claims as implicated in *Northern Pipeline*; secondly, these federal rights were regarded as a part of complex regulatory scheme, thus rendering the compensation scheme as a species of quasi-public rights; and thirdly, the most important aspect of this scheme in question was that the scheme in question did not result in any private

judicial enforceable decision. *Thomas*, 473 U.S. at 568; *Northern Pipeline*, 458 U.S. at 50.

However, it must be noted that the Court reached such allowance as reflected in *Thomas* and *Schor* cases, only after it had separated for analytical purposes the individual interest in Article III adjudication from the institutional interest in preserving the role of federal judiciary in the constitutional scheme. *See Schor*, 478 US. at 848-50. The Court explicitly admitted the importance of the parties' consent, so that the individual rights were not compromised. However, it must be noted that the Supreme Court within short span of time, in *Granfinanciera S.A. v. Nordberg* resurrected the distinction between "public" and "private" rights that *Thomas* and *Schor* seemingly had laid to rest. Court decided that, if a cause of action involves "private rights" and then Congress is forbidden by Article III from placing adjudicative authority over that cause of action in an non-Article III tribunal: if a cause of action "is not a public right' for Article III purposes, then Congress may not assign its adjudication to a specialized non-Article III court lacking 'the essential attributes of the judicial power'" 492 U.S. 33, 53 (1989) (quoting *Crowell*, 285 U.S. at 51). Thus according to *Granfinanciera* majority, Congress cannot assign common-law tort, contract, and other claims to a non-Article III tribunal; neither can Congress assign statutory rights of its own creation to such a tribunal, unless the statutory right either belongs to or exists against the Federal Government, or unless the statutory right is "closely intertwined with a federal regulatory program [that] Congress has power to enact."

Here in this controversy at the bar, the undersigned has invoked his right to be heard by an article III judge and it deals with private right. There has not been any consent to the jurisdiction of the bankruptcy court. Absence of consent, presence of private rights and concerns with the structural issue related to separation of powers must not allow the bankruptcy court any adjudication of the dispute related to personal liability under 1927 or some assumed inherent power when in fact there is none. A judicial review under *denovo* scheme by the district court, of the findings and proposal of the bankruptcy judge will not be enough to sustain any jurisdiction to the bankruptcy judge herein, as "the constitutional requirements for the exercise of the judicial power must be met at all stages of adjudication, and not only on appeal, where the court is restricted to considerations of law, as well as the nature of the case as it has been shaped at the trial level." *Northern Pipeline*, 458 U.S. at 50.

## Sanction as "private rights."

Sanctions issues erupting from the alleged act in adversarial posture is clearly an issue of private rights. The dispute here is "inherently judicial" as it arises not from or between government and persons subject to its authority in connection with the performance of the constitutional functions of the executive or legislative departments. *Northern Pipeline*, 102 S. Ct. at 2869 (quoting *Crowell*, 285 U.S. at 50). This dispute here is between two parties and it's a private right dispute, as this case "lie at the core of the historically recognized judicial power," and must, therefore, be heard by an article III court." *Id.* at 2871.  Private rights, have been defined as "the

liability of one individual to another under the law as defined . . . . " *Id.* at 69-70

(citing *Crowell*, 285 U.S. at 51).


## Separation of power and legal rights

The undersigned requested to be heard by an article III court and challenges

the assumed jurisdiction of the bankruptcy judge as in violation of separation of

power. Separation of power and protection of legal rights go hand in hand. *See*

*Northern Pipeline*, 102 S. Ct. at 2869; *Stern v. Marshall,* 131, S. Ct. 2594 (2011).

Congress cannot grant the bankruptcy judges, either inherent powers or powers under

section 1927 of the title 28, as that would violate the very strictures of Court as laid in

the *Northern Pipeline* case.


The Constitution reflects a fundamental conviction that governmental "power

is of an encroaching nature, and that it ought to be effectually restrained from passing

the limits assigned to it." The Federalist No. 48, at 332 (James Madison) (Jacob E.

Cooke ed., 1961), quoted in *Metro. Washington Airports Auth. ("MWAA") v. Citizens*

*for the Abatement of Aircraft Noise, Inc.*, 501 U.S. 252, 273 (1991). The founders, not

content to rely on paper definitions of the rights secured to the people, "viewed the

principle of separation of powers as a vital check against tyranny." *Buckley v. Valeo*,

424 U.S. 1, 121 (1976) (per curiam). In order to safeguard liberty, therefore, the

Constitution creates three distinct branches of government -- Congress, the President,

and the federal judiciary -- and assigns to them differing roles in the exercise of the

government's powers. The resulting division of governmental authority is not a mere set of housekeeping rules indicating which branch presumptively performs which functions; it is, rather, a fundamental means by which the Constitution attempts to ensure free, responsible, and democratic government. *See MWAA*, 501 U.S. at 272 ("The ultimate purpose of this separation of powers is to protect the liberty and security of the governed."). The constitutional separation of powers advances this central purpose by "assur[ing] full, vigorous, and open debate on the great issues affecting the people (*Bowsher v. Synar*, 478 U.S. 714, 722 (1986); by "placing both substantive and procedural limitations on each [branch]" *MWAA*, 501 U.S. at 272; and by maintaining a "system of . . . checks and balances" among the three branches. *Morrison v. Olson*, 487 U.S. 654, 693 (1988). James Madison described the "policy" lying behind "distributions of power" -- "the constant aim is to divide and arrange the several offices in such a manner as that each may be a check on the other." The Federalist No. 51, at 349 (James Madison) (Jacob E. Cooke ed., 1961), quoted in *Buckley*, 424 U.S. at 122-23

The Court's decisions have employed three distinct principles in resolving separation of powers disputes. First, where "[e]xplicit and unambiguous provisions of the Constitution prescribe and define . . . just how [governmental] powers are to be exercised," *Chadha*, 462 U.S. at 945, the constitutional procedures must be followed with precision. Second, where the effect of legislation is to vest Congress itself, its members, or its agents with "'either executive power or judicial power,'" the statute is unconstitutional. *MWAA*, 501 U.S. at 274 (citation omitted). Finally, legislation that

affects the functioning of one of the other branches may be unconstitutional if it prevents the affected branch "from accomplishing its constitutionally assigned functions." *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 443 (1977) (legislation affecting the executive branch); *accord Schor*, 478 U.S. at 851, 856-57 (legislation affecting the judiciary).

In this matter here, where a panel trustee is asking for relief under 1927 from a bankruptcy judge and the judge assuming jurisdiction on 1927 issues and as well as invoking inherent powers of a court, in absence any independent court, it transgresses constitutional boundary. To the extent Congress allows such a power as assumed by the bankruptcy judge, we are concerned about this legislation affecting the judiciary. *Id.* ("the separation of powers question presented in this litigation is whether Congress impermissibly undermined . . . the role of the Judicial Branch"). The existing bankruptcy structure or jurisdiction imperils what "Separation of Power" protects: Separation of Power safeguards individual liberty.

> *In a single republic, all the power surrendered by the people is submitted to the administration of a single government; and the usurpations are guarded against by a division of the government into distinct and separate departments. In the compound republic of America, the power surrendered by the people is first divided between two distinct governments, and then the portion allotted to each subdivided among distinct and separate departments. Hence a double security arises to the rights of the people. The different governments will control each*

*other, at the same time that each will be controlled by itself.*

THE FEDERALIST NO. 51, at 323 (James Madison) (Clinton Rossiter ed., 1961).


There are limits set up by the constitution on congressional powers—internal limits set up Article III's definition of Congress authority to control jurisdiction; and external limits to the kind of laws congress could pass. External limits are imposed by the parallel constitutional provisions protecting the fundamental rights of the people, access to justice, Fifth Amendment due process clause, right to be heard by an impartial arbiter of disputes, etc. However limitations imposed by Article III on the extent of permissible congressional jurisdictional regulation operate as a corollary of the separation of power. This separation of power doctrine could suffer violation if, "[o]ne branch may interfere impermissibly with the other's performance of its constitutionally assigned  function. Alternatively, the doctrine may be violated when one branch assumes a function that more properly is entrusted to another." Justice Powell, J., concurring in judgment, *INS v. Chadha*, 462 U.S. 919, 963 (1983).


In *Northern Pipeline*, Justice Brennan asked the question "whether the assignment by Congress to bankruptcy judges of the jurisdiction granted in 28 U.S.C. §1471 violates Article III of the Constitution." *Northern Pipeline*, 458 U.S. at 52.  It was clearly articulated in this matter: "In sum, our Constitution unambiguously enunciates a fundamental principle—that the 'judicial power of the United States' must be reposed in an independent Judiciary." *Id.* Emphasizing that Article III was designed to ensure an independent and impartial judiciary and thereby maintain the

23

separation of powers. Only in regards to territorial courts, military tribunals and the

adjudication of public rights dispute, did the Court, "recognized a circumstance in

which the grant of power to the Legislative and Executive Branches was historically

and constitutionally so exceptional that the congressional assertion of a power to

create legislative courts was consistent with, rather than threatening to, the

constitutional mandate of separation of power." *Id.* The Court found that bankruptcy

tribunal staffed with non-Article III judges neither "lie exclusively outside the States

of the Federal Union, like those in the District of Columbia and the territories. *Id.*

Nor do the bankruptcy courts bear any resemblance to courts-martial . . . ." *Id.*

(quoting *Crowell*, 285 U.S. at 51, finding liability of one individual to another under

the law as private right, the Court ruled that granting such unbridled rights to referees,

appointed as judges, was a transgression of constitutional mandate of separation of

power).

Bankruptcy judges' permissibility to act as an adjunct has also been caveated

properly by the Court that "the functions of the adjunct must be limited in such a way

that 'the essential attributes' of judicial power are retained in the Art. III court." Id.

However, inherent power of a court, powers of the United States Court under section

1927 are clearly 'the essential attributes of the judicial power.' *Northern Pipeline*, 458

U.S. at 81 ("We conclude that . . . the Bankruptcy Act of 1978, has impermissibly

removed most, if not all, of "the essential attributes of the judicial power' from the

Art. III district court, and has vested those attributes in a non-Article III adjunct. Such

a grant of jurisdiction cannot be sustained as an exercise of Congress' power to create adjuncts to Art. III courts.").

The Court, in allowing exercise of judicial power by a non-article III mechanism, adopted a balancing and pragmatic approach in *Schor* case allaying the separation of power concerns as delineated in *Northern Pipeline*. It found that the arbitration mechanism in *Schor*, "incorporates its own mechanism of internal sanctions and relies only tangentially, if at all, on the Judicial Branch for enforcement. The danger of Congress  or the Executive approaching on the Article III judicial power is at minimum when no unwilling defendant is subjected to judicial enforcement * * *." *Schor*, 478 U.S. at 851.  Finally, "FIFRA limits but does not preclude review of the arbitration proceeding by an Article III court:, since awards can be set aside for "fraud, misconduct or misrepresentation" and "review of constitutional error is preserved." *Id.*   However, this balancing approach does not fit well with the constitutionally mandated 'separation of power' concerns as reflected in *Chadha* and *Bowsher* court. *Schor* approach clearly militates against the 'Actual Separation of Power' operationally defined by the constitution. Court relying on abstract principles or adopting a bonhomous approach: " a pragmatic solution to the difficult problem of spreading costs of generating adequate information regarding the safety, health, and environmental impact of a potentially dangerous product,"— cannot be a guiding decision, for pragmatism or balancing test cannot be a litmus test for verifying the constitutionality of an act.  It surely is inappropriate "where the Constitution by explicit text commits the power at issue to the exclusive  control" of a

given branch; in such circumstances the Court has "refused to tolerate any intrusion" by the other branches. *Pub. Citizen v. United States Dep't of Justice*, 491 U.S. 440, 484, 495, 487 (1989). Ad hoc cost benefit analysis as provided by *Schor* emphasizing on balancing, cannot displace bright line rules as provided in the constitution. *See*, e.g., *Printz v. Untied States*, 521 U.S. 98, 117 S.Ct. 2365, 2383 (1997) (declining to "balance" in enforcing rule that Congress may not command exercises of state or local sovereignty).

The *Northern Pipeline* opinion was clearly geared by anxious bench of the Supreme Court to draw constitutional lines precluding Congress from diminishing the role of Article III courts as guardians of legal rights. Thus article III is meant to put an end to any legislative over-reaching. *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211 (1995).

The bankruptcy judge relying on the impugned text of 1978 Bankruptcy Act wants to adjudicate a motion under section 1927 of title 28 and inherent powers. A bankruptcy judge assuming jurisdiction, contrary to the statutory provisions of section 1927 and despite requests for right to be heard by a non-debtor before a article III judge does violate that separation of power. The district court's blanket referral of petitions and all disputes related or emanating from that filing of a case to a bankruptcy judges without individuated parsing cannot pass constitutional test. The undersigned cannot be pressured to accept jurisdiction by the bankruptcy judge when he is not the debtor and has not sought any substantive relief from her unit.

## **BAFJA Amendment does not Cure the Unconstitutionality of the**

## **Bankruptcy Provisions.**

Congress, being concerned that the erstwhile bankruptcy law (The Bankrutpcy

Act of 1898 ("Nelson Act", July 11898 Act) ch. 541, 30 stat. 544) which entailed

excessive amount of preliminary litigation over jurisdictional issues surrounding the

bifurcation of bankruptcy jurisdiction, passed the 1978 Bankruptcy Reform Act.

Under the 1998 Act, the distinction between the summary and plenary proceeding,

bound up with notions of in rem and in personam jurisdiction and splintered

bankruptcy jurisdiction between the federal and state court produced aggravating

consequences.  Under the 1898 Act, the bankruptcy court exercised in rem

jurisdiction over all property in its actual or constructive possession.  A trustee action

to recover money or property from a third party was considered a summary in rem

proceeding only if the defendant had no substantial defense to turnover of the

property.  In case there were any colorable defenses, the trustee will have to bring a

plenary proceeding and the same must be under the aegis of a district court. However

this was changed by the 1978 Act.  It gave very broad jurisdiction to the bankruptcy

judge as it established bankruptcy court as court of record, anointed these referees as

judges, gave them jurisdiction parallel to what was being exercised by the district

courts. This wholesale transfer of jurisdiction from district court to bankruptcy court

was held unconstitutional by the Supreme Court in *Northern Pipeline*. *See Northern

Pipeline*, 458 U.S. at 52.

Congress passed the Bankruptcy Amendments and Federal Judgeship Act of 1984 ("1984") to remedy the unconstitutionality of the 1978 Bankruptcy Reform Act. Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub. L. No. 98-353, 98 Stat. 333 (1984) ("BAFJA"). The BAFJA amendments addressed the Marathon separation of powers holding by altering the allocation of this pervasive jurisdiction (28 U.S.C. § 1334) as between the Article III district courts and their non-article III adjuncts, the bankruptcy units or judicial officers. *See* 28 U.S.C. § 157.

This amendment tellingly refers bankruptcy courts as "units" of the district court, while bankruptcy judges as "judicial officers of the district court." 28 U.S.C. § 151. This was an attempt to limit the power of the bankruptcy judges in order to be in compliance with the *Northern Pipeline* dictate. However to fit with the *Northern Pipeline* schema, the bankruptcy judge must confine its adjudicatory power to 'public right' domain. A public-rights claim is one that "derives from a federal regulatory scheme, or in which resolution of the claim by an expert governmental agency is essential to a limited regulatory objective within the agency's authority." *Stern*, 131 S.Ct. at 2613. *Northern Pipeline* strictures are not only regarding avoidance of state based causes of action but also to refrain from issues dealing with private rights. The thesis that bankruptcy judges could pass constitutional muster by labeling them as adjuncts to the District Court cannot be sustained as they are not adjunct to the district court, as these bankruptcy judges have their distinct court and operate an independent courts, for instance claiming inherent powers. The subject matter jurisdiction of these bankruptcy judges is still the same as which was held unconstitutional. Bankruptcy

judges do not operate under such district court "total control and jurisdiction." District Court have broad array of statutory and as well as other levers for supervising the magistrates who are assisting the District Courts as auxiliary judicial officers which is missing here regarding bankruptcy judges.

## **Right to be heard by an Article III court.**

The undersigned has invoked the right to be heard by an Article III court and it is constitutionally provided. Article III protects individual litigants by safeguarding their "right to have claims decided by judges who are free from potential domination by other branches of government." *United States v. Will*, 449 U.S. 200, 218 (1980).

Section 1 of Article III provides that the judicial power of the United States shall be vested in one Supreme Court and in such inferior courts as Congress may ordain and establish; Section 1, further mandates that judges of all courts, both the Supreme Court and inferior, shall enjoy life tenure during good behavior and protection from salary reductions during their continuation in office. U.S. CONST. art. III, § 1.

A bankruptcy judge does not have such protection, as she is not an Article III judge. She has been appointed by the Circuit Court to act as a judicial officer to the District Court. 28 U.S.C. 152 (Bankruptcy judges shall serve as judicial officers of the United States district court established under Article III of the Constitution).\

Reflecting on the judiciary's role in preserving liberty, the Court has determined that Article III "not only preserves to litigants their interest in an impartial and independent federal adjudication of claims within the judicial power of the United States, but also serves as "an inseparable element of the constitutional system of checks and balances." *Schor*, 478 U.S. at 850 (quoting *Northern Pipeline*, 458 U.S. at 58).

Article III protects individual litigant by safeguarding their "right to have claims decided by judges who are free from potential domination by other branches of government. *Will*, 449 U.S. at 218. This streak of independence is so important that Canon 1 of the Code of Judicial Conduct, "A Judge should Uphold the Integrity and Independence of the Judiciary," declares: "An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing high standards of conduct, and shall personally observe those standards so that the integrity and independence of the judiciary may be preserved." Code of Judicial Conduct Canon 1 (1990).

In *United States v. Will*, the Court identified a personal Article III interest that preserve to litigant the "right to have claims decided by judges who are free from potential domination by other branches of government." 449 U.S. at 200. That right to be heard by an independent judge, with life tenure and its relation to the judicial function cannot be underestimated. *See* THE FEDERALIST NO. 78, at 521-30 (Alexander Hamilton) (Jacob E. Cooke ed., 1961)

"Article III does not confer on litigant an absolute right to the plenary consideration of every nature of claim by Article III court." However the right could be waived, like other constitutional right. *Schor*, 478 U.S. at 847. Nevertheless, while an individual may waive personal rights, the structural protection of Article III cannot be waived. *Id.* at 850-51(To the extent that this structure principle is implicated in a given case, the parties cannot be y consent cure the constitutional difficult for the same reason that the parties by consent cannot confer on the federal courts subject matter jurisdiction beyond the limitation imposed by Article III, § 2").

Direct appeal to an Article III court is insufficient to rehabilitate the denial of an Article III judge at the initial stage of a proceeding. The Supreme Court has held that a non-Article III official may preside when fulfilling a role "subject to the district judge's ongoing supervision and final decision." *Gomez v. United States*, 490 U.S. 858, 856 (1989). In this respect, the magistrate performs a limited advisory role in assisting the district court and full *de novo* review ensures that "the ultimate decision making authority …remain[s] with the district court." *Id.* The Court, in *Gomez*, granted the writ, and after reviewing petitioners' claim, note that "[j]ury selection is the primary means by which a court  may enforce a defendant's right to be tried by a jury free from ethnic, racial, or political prejudice." Although, the Court specifically avoided the constitutional implication of permitting a magistrate to preside over jury selection in a felony criminal trial, it concluded that the right to have an article III preside in such a consequential proceeding was so "basic [to] fair trial rights" that the

31

harmless error doctrine could not apply. *Id.* at 873.  Citing the district judge's lack of

control over the magistrate determination the Court reasoned  that the Act did not

empower magistrate to superintend jury selection in felony criminal cases. This lack

of ongoing control is the linchpin of the Court's decision in Gomez. There is no such

control on the bankruptcy judges.

Congress had crafted the 1984 BAFJA Amendment based on *United States v.*

*Raddatz*, 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980) as the Court had

permitted exercise of judicial power by magistrates.  However, such an adjunct theory

or analogy does not apply to the setting of the bankruptcy judge within the context of

district court as there is no constant supervision of these judicial officers. Even if the

analogy of the bankruptcy judge with the magistrate is proper to justify their

constitutionality, it cannot override the express representation of a litigant to a right to

be heard by an article III court.

The Supreme Court, in preserving the magistrate's role, declared that, absent

consent, trial of a civil case before a magistrate would constitute a per se violation of

Article III. And in the Ninth Circuit, en banc opinion, Judge Kennedy observed that

"[a] mandatory provision for trial of an unrestricted class of civil cases by a

magistrate and not by Article III judge  would violate the constitutional rights of the

litigants." *Pacemaker Diagnostic Clinic of Am., Inc. v. Instromedix, Inc.,* 725 F.2d

537, 542 (9th Cir. 1984) (en banc), cert. denied, 469 U.S. 824 (1985).

Mirroring this observation, the Seventh Circuit in *Olympia Hotels Corp., v. Johnson Wax Dev. Corp.* held that the Federal Magistrate Act does not empower magistrate to preside without consent at voir dire in civil cases and suggested that the statute might violate Article III if so construed. 908 F.2d 1363 (7th Cir. 1990). The court of appeals explained that parties "cannot be forced to try a dispute that is subject to federal jurisdiction only by virtue of Article III before a judge who is not authorized to exercise the power conferred by that article." *Id.*

Magistrate adjudication may violate separation of powers concerns because the Constitution presents Article III judges from delegating certain authority to non-Article III tribunals' decision. The Seventh Circuit has observed that "a radical shift to trial by magistrate could easily result in a finding of unconstitutionality" as the reality of judicial control over magistrate authority declines. *Geras v. Lafayette Display Fixtures, Inc.*, 742 F.2d 1037, 1045 (7th Cir. 1984).

The United States Court of Appeals for the District of Columbia Circuit upholding in *Fields v. Washington Metropolitan Area Transit Authority* provision of the Federal Magistrate Act that permit magistrates, upon consent of the parties , to conduct a jury trial with the option of a direct appeal to the court of appeals, rejecting the Article III challenge, the court explained:

> [T]he degree to which magistrates are controlled by the Article III judiciary—both institutionally through appointment and general supervision, and more particularly through oversight by the district court judge of the individual magistrate' handling of each case—

> avoids any violation of the separation-of-powers principles that underlie the Article III protection designed to ensure an independent judiciary.

743 F.2d 890 (D.C. Cir. 1984).

However here, in the bankruptcy context there is no constant supervision of these bankruptcy judges. Further, it is clear even in a magistrate related adjudication, the Court has been very concerned, lest the rights of the litigants are compromised.

Thus Article III and the Fifth Amendment establishes rights for litigants to have their cases heard and decided by Article III, as opposed to Article I, judges.

A mere availability of the Article III review cannot supplant or substitute for the right to be heard by a constitutional judge. *See, e.g. Northern Pipeline*, 458 U.S. at 74 n.28, 86 n.39 (plurality opinion) (denying that appellate review alone will suffice to vindicate Article III values).

It is clear according to *Granfinanciera* majority, Congress cannot assign common-law tort, contract, and other claims to a non-Article III tribunal; neither can Congress assign statutory rights of its own creation to such a tribunal, unless the statutory right either belongs to or exist against the Federal Government, or unless the statutory right is "closely intertwined  with a federal regulatory program [that] Congress has power to enact ." *Granfinanciera,* 492 U.S. at 54.

34

## Consent Issue

Subsequent to *Northern Pipeline*, the Court, without nullifying *Northern Pipeline*, relevance or importance, juxtaposed a new "pragmatic" and "balancing" approach which primarily rested on the waiver of any personal right to an Article III adjudication. However, there was or is <u>no consent</u> here as was elucidated in "*Schor*." *Schor*, 478 U.S. at 833. To the extent bankruptcy judge assumes or adopts a compulsory jurisdiction on that attorney who representing a client had invoked a right to be heard by an Article III court, it violates separation of powers principle and violates constitutional mandate of Article III. Indeed, this balancing approach does not fit well with the constitutionally mandated separation of powers adopted in *INS v. Chadha*, 462 U.S. 919 (1983) (holding legislative veto provisions constitutionally invalid), and *Bowsher v. Synar*, 478 U.S. 714 (1986) (invalidating a statute designed to trigger federal budgets cuts on the ground that it vested executive functions in an employee potentially subject to congressional influence).

Even if personal right to an Article III judge may be waived, however structural protection provided by Article III is not waivable and especially when there is no direct supervision or control of bankruptcy judges. See *Peretz v. United States*, where Supreme Court allowed such waiver permissible (concerning adjudication before magistrate), only when "the entire process takes place under district court's total control and jurisdiction." 501 U.S. 923 (1991).

## Inherent Power and 1927

The Trio requests the court to use inherent powers of the bankruptcy unit of this District Court to penalize the undersigned, when its clear that no sanctions are warranted not only because of lack of jurisdiction but even on merits, section 1927 elements are not satisfied.

Hard to define but easy to resort is this inherent power, which in essence is nothing but judicial power of independent court.  Inherent power is that judicial that inheres to the court and is not assign or delegable.

The Supreme Court has long defined "inherent powers" as those which "cannot be dispensed with ... because they are necessary to the exercise of all others."" *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (citing *United States v. Hudson & Goodwin*, 11 U.S. (7 Cranch) 32, 34 (1812)).

"When Congress creates a statutory right, it clearly has discretion" to provide for specific venues for the vindication of that right. *Northern Pipeline*, 458 U.S. at 50.  However the bankruptcy tribunal does not have such power, when the "right being adjudicated is not of congressional creation." *Id.* at 83-84.  Inherent power is not a statutory creation of Congress; it has an inherent characteristic of a judicial tribunal exercising constitutional powers.

Bankruptcy court is a court or an agency created by the Congress under Article I, thus consistent with Article I, these courts cannot have inherent powers. Barring certain exceptions as mentioned in the foregoing paragraphs, these courts cannot be vested or delegated with Article III judicial powers. Bankruptcy courts are not involved in any regulatory functions to be an agency of the federal government, though those principles have been used to justify some of its function, they are structured as adjuncts, however in reality, based on the practice, there is no independent bankruptcy court, other than bankruptcy referees assisting the district court in going through bankruptcy petitions.

Though, in a jurisprudential sense, to justify the bankruptcy court and exercise of judicial power, they could pass constitutional muster only if they are viewed as executive agencies administering the bankruptcy law on behalf of Congress and as such executive judges could only exercise judicial power only incidental to or in conjunction with executive or legislative powers of the Untied States. If that is so, then bankruptcy judge cannot exercise either section 1927 of the code or any inherent powers as there is no judicial power that inheres to such an executive or legislative agent. Clearly if such a bankruptcy referee or a judge, independently or solely assumes rather than incidentally, possess judicial power that grant of judicial power violates Article III.

Here the bankruptcy judge is not exercising judicial power as incidental to or in conjunction with the exercise of the executive or legislative power of the United

37

States, but as delegatee of case and controversy from a judicial branch of United States.

Some bankruptcy judged have sourced inherent powers from 11 U.S.C. § 105. Comments surrounding the enactment of the 1978 Reform Act suggest that it was intended to expand the powers of bankruptcy courts to cover all matters under Chapter 11, including the expansion of contempt powers. H.R. Rep. No. 595, 95th Cong., 1st Sess. at 13, reprinted in 1978 U.S.C.C.A.N. 5963, 5974. Thus, legislative history had supported construing § 105 broadly. As originally enacted in 1978, § 105(a) provided: "The Bankruptcy Court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." It was these very powers given to the bankruptcy judge besides establishing them as independent court that had really irked Marathon's plurality:

> Unlike the administrative scheme that we reviewed in Crowell, the Act vests all "essential attributes" of the judicial power of the United States in the "adjunct" bankruptcy court. First, the agency in Crowell made only specialized, narrowly confined factual determinations regarding a particularized area of law. In contrast, the subject matter jurisdiction of the bankruptcy courts encompasses not only traditional matters of bankruptcy, but also "all civil proceedings arising under title 11 or arising in or related to cases under title 11." 28 U.S.C. § 1471(b) (1976 ed., Supp. IV) (emphasis added). Second, while the agency in Crowell engaged in statutorily channeled factfinding functions, the bankruptcy courts exercise "all of the jurisdiction"

conferred by the Act on the district courts, § 1471(c) (emphasis added). Third, the agency in Crowell possessed only a limited power to issue compensation orders pursuant to specialized procedures, and its orders could be enforced only by order of the district court. By contrast, the bankruptcy courts exercise all ordinary powers of district courts, including the power to preside over jury trials, 28 U.S.C. § 1480 (1976 ed., Supp. IV), the power to issue declaratory judgments, § 2201, the power to issue writs of habeas corpus, § 2256, and the power to issue any order, process, or judgment appropriate for the enforcement of the provisions of Title 11, 11 U.S.C. § 105(a) (1976 ed., Supp. IV.). . . . We conclude that 28 U.S.C. § 1471 (1976 ed., Supp. IV), as added by § 241(a) of the Bankruptcy Act of 1978, has impermissibly removed most, if not all, of "the essential attributes of the judicial power" from the Art. III district court, and has vested those attributes in a non-Art. III adjunct. Such a grant of jurisdiction cannot be sustained as an exercise of Congress' power to create adjuncts to Art. III courts.

Upon declaration of the unconstitutionality of the foregoing, in 1984, the words "Bankruptcy Court was changed to just "court". Bankruptcy Amendments and Federal Judgeship Act of 1984 (Pub. L. No. 98-353), reprinted in App. Pt. 6(a) Collier on Bankruptcy (Volume E) at 6-18 (Lawrence P. King, et al. eds. 15th ed. 1999). This "court" found in section 105 is not bankruptcy court, it is the district "court."

In 1986, § 105 was amended to add a second sentence: "No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent any abuse of process . . . ." 11 U.S.C. § 105(a).

However of importance is the deletion of the word bankruptcy from "bankruptcy court." No bankruptcy court is created under BAFJA, by the congress as it did in Bankruptcy Act of 1978 where it was held invalid.  Therefore an 'independent court' creating provisions of the Act were deleted and therefore the word "bankruptcy court" was converted to "court" and this court is the court of the United States  and not bankruptcy court, as there is no bankruptcy court anymore. Bankruptcy court is reference to a collective body of the bankruptcy judges assisting the District Court in disposing of bankruptcy cases. "In each judicial district, the bankruptcy judges in regular active service shall constitute a unit of the district court to be known as the bankruptcy court for that district." 28 U.S.C. 151.

Further equally important was the deletion of the old section 1481 of the 1978 Bankruptcy Act, by BAFJA.  Section 1481 had granted the prior bankruptcy court, the "powers of a court of equity, law, admiralty." Under BAFJA, the bankruptcy court is not set up as an independent court, but as a unit of the district court and is staffed not by an independent judge, but a judicial officer of district.

A judge is a not court and since there is no independent court, it cannot have inherent powers. Inherent powers inheres with or to an independent court.

Since bankruptcy courts/units are not independent court and since it is equally important to have court of original jurisdiction to the subject matter of bankruptcy, it is the District Court which has the original jurisdiction on the bankruptcy petition and cases. "Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11." 28 U.S.C. 1334 (a).

Since, bankruptcy courts are not independent courts are but a statuary creation, therefore it's power are highly circumscribed as opposed to the powers of Article III courts therefore we have cautions regarding exercises of such powers by such Article III courts.  Because inherent powers are shielded from direct democratic controls, they must be exercised with restraint and discretion. See *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 450-451, 31 S.Ct. 492, 501-502, 55 L.Ed. 797 (1911); *Green v. United States*, 356 U.S. 165, 193-194, 78 S.Ct. 632, 648, 2 L.Ed.2d 672 (1958) (Black, J., dissenting).  *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 764-65, 100 S. Ct. 2455, 2463, 65 L. Ed. 2d 488 (1980).

All bankruptcy proceedings are commenced upon referral of a matter from District Court to its bankruptcy unit. There is no individuated referral, its wholesale; something which might not be permissible under the constitution. For wholesale

transfer of issues and jurisdiction cannot be done without violating the Article III strictures. Further, inherent power an integral part of an independent court cannot be a delegated one, it arises on its own by virtue of a being a court. If it is dependent on some outside providence, then it is not inherent. Bankruptcy judges are dependent on what is being referred to them and inherent powers are not assigned for inherency stays with the original, thus district court's inherent powers cannot be delegated.

## Section 105 is not "Inherent Power"

Some bankruptcy courts attempts to define section 105 as a repository of inherent powers and have attempted to beyond the strict language of the section. Section 105 is not an inherent power, it is a provisional facilitator. The Supreme Court in *Norwest Bank Worthington v. Ahlers* held that, "whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code." 485 U.S. 197 (1988). Following this lead, the Seventh Circuit stated that "[t]he fact that a bankruptcy proceeding is equitable does not give the judge a free floating discretion to redistribute rights in accordance with his personal views of justice and fairness. . ." *In re Kmart Corp.*, 359 F.3d 866 (7th Cir. 2004). Further, section 105 cannot be used to dilute or expand the reach of a provision of the code, it cannot change the substantive character or application of a provision. Ninth Circuit aptly stated that "[s]ection 105 does not authorize relief inconsistent with more specific law." *In re Lowenschuss*, 67 F.3d 1394, 1402 (9th Cir. 1995). *See* Third

Circuit *In re Combustion Eng'g* at 236, "[t]he general grant of equitable power contained in § 105(a) cannot trump specific provisions of the Code...." *Id.* 391 F.3d 190 (3rd Cir. 2004).

It is a procedural section to help carry out the other provisions of the code, even if this section is amenable to being used by a bankruptcy court, presided over by a bankruptcy judge, it is not a substantive section of the Bankruptcy Code. It does not create any substantive rights on its own. *Deutsche Bank AG v. Metromedia Fiber Network, Inc.* (in re Metromedia Fiber Network, Inc.), 416 F.3d 136 (2nd Cir. 2005) (stating that "section 105 does not allow the bankruptcy court to create substantive rights that are otherwise unavailable under applicable law") (citing *New England Dairies, Inc. v. Dairy Mart Convenience Store, Inc.* (In re Dairy Mart Convenience Store, Inc.). 351 F.3d 86, 92 (2nd Cir. 2003)).

## 1927 and Subject Matter Jurisdiction

This issue motion under section 1927 and basis used, is not a core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section (157). This is not even a "related to" jurisdiction as it was clear from the beginning that the pleadings were filed only for consideration by the district judge and not by the bankruptcy judge.  It is improper for the bankruptcy court to take cognizance of this matter.

The issue if the bankruptcy court has the power to sanctions under sec. 1927 is unresolved at least this district. All though, the second circuit has affirmed or

disaffirmed sanctions under section 1927 in the bankruptcy courts. *Oliveri v.*
*Thompson*, 803 F.2d 1265, 1267 (2d Cir. 1986). However, the jurisdictional issue
pertaining to this provision regarding its application to the bankruptcy court has not
been decided so far. "Questions which merely lurk in the record, neither brought to
the attention of the court nor ruled upon are not to be considered as having been so
decided as to constitute precedents." *Webster v. Fall*, 266 U.S. 507, 511 (1925).
*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 119 n.29 (1984) ("When
questions of jurisdiction has been passed on in prior decisions sub silentio, this Court
has never considered itself bound when a subsequent case finally brings the
jurisdictional issue before us." (quoting *Hagans.v Lavine*, 415 U.S. 528, 533 n.
(1974).

As far as subject matter is concerned, the 1984 BAFJA amendments made no
changes whatsoever in the scope of the federal bankruptcy jurisdiction, which is still
defined by the same statutory grant as that of the 1978 Reform Act. The new
bankruptcy structure of 1984 BAFJA amendments fully retained the 1978 Reform
Act's scheme of an all-encompassing federal jurisdiction over all civil proceedings
"arising under" the Bankruptcy Code, or "arising in" or "related to" to bankruptcy
cases. 28 U.S.C. § 1334 (b). However, the BAFJA amendments admittedly made an
attempt to address the *Northern Pipeline* separation of power issues holding by
altering the allocation of this pervasive jurisdiction as between the Article III district
courts and their non-Article III adjuncts, the district bankruptcy judicial officers.

The jurisdictional scheme as implemented by BAFJA is based on reference of bankruptcy cases and proceeding from Article III district court to the non-Article III bankruptcy judges—not bankruptcy court—as there is no independent bankruptcy court. This federal jurisdiction is governed by 28 U.S.C. § 1334. Clearly bankruptcy courts do not have distinct jurisdiction over cases—all bankruptcy matters are within the jurisdiction of the federal district court, 28 U.S.C. § 1334, which may refer any or all of them to bankruptcy judges. 28 U.S.C. § 157 (a). This referral makes them adjuncts and thus it is not a stand-alone Article I court or any court.

Subsection (a) of section 1334 gives the district court "original and exclusive jurisdiction of all cases under title 11." Jurisdiction over bankruptcy "proceeding" which are distinct disputes that arise within the context of the overall "case" is addressed by section 1334 (b). This section confers on the district court "original but not exclusive jurisdiction of all civil proceedings under title 11, or arising in or related to cases under title 11." The *Northern Pipeline* court had held unconstitutional the provisions of bankruptcy law which had allowed the bankruptcy judge to exercise all jurisdiction conferred under section 1334 (a) and (b). Hence in this corrective legislation of section 1334, there is no automatic transfer (erstwhile section 1471(c)) or allocation of powers to the non-Article III bankruptcy judges.

However this schema of so called vesting of essential judicial power with the district court to meet the constitutionality requirement of *Northern Pipeline* case is misleading. Congress created section 157 of title 28 to achieve what it had attempted

pre-Marathon case—this section innocuously labeled as "Procedures" governs the allocation of judicial power over bankruptcy matters as between the bankruptcy judges and the district court.

Though, subsection (a) of § 157 while authorizing the references of "any or all" bankruptcy cases and proceedings from the district court to the bankruptcy judges, has a permissive provision, "may" and not mandatory, all cases are automatically transferred to the bankruptcy judges in violation of *Northern Pipeline*. It is the default rule that all bankruptcy matters are referred to bankruptcy judge and ironically, one has to assert a cause to bring it bank to the district court by virtue of withdrawal of reference. The district court by wholesale of transfer of the jurisdiction to the bankruptcy court causes violation of the separation of power. As long as a litigant has to show cause to bring the case or controversy back to District Court, it runs contrary to constitutional principles of *Northern Pipeline*, *Schor* and *Stern* cases.

The most elementary aspect of federal bankruptcy jurisdiction is the power to entertain, "all civil proceedings arising under title 11." 28 U.S.C. § 1334 (b). This "arising under" bankruptcy jurisdiction was designed to replicate general federal question jurisdiction where the source of federal law under which claim is made is the federal bankruptcy code. See H.R. Rep. No. 95-595, at 445.

Section 1927 is not something that is "arising under" as it is not created by the Bankruptcy Code and it is also not something that is "arising in" as it is not a claim by

and against bankruptcy estate.  Hence 1927, if it is at all available to the bankruptcy subject matter, it could only fall under "related to" bankruptcy jurisdiction for third party disputes.  BAFJA in order to continue to retain maximum possible federal bankruptcy jurisdiction, yet be in compliance with Marathon strictures bifurcated the proceedings in two parts: (1) "core" proceedings "arising under" or "arising in" in which a bankruptcy judge can enter final orders, and (2) noncore "related to" proceedings, in which only a district court  can enter final orders absent consent of the parties to a bankruptcy adjudication. 28 U.S.C. § 157 (c)(2).

What all is subsumed under the "related to" has been a matter of considerable litigation.  In a popular case of *Pacor*, the Third Circuit laying down a firm test on the related to bankruptcy jurisdiction stated as follows:

> The usual articulation of the test for determining whether a civil proceeding is related  to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy . . . An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate.

*Pacor*, 743 f.2d at 994.

47

However when this "related to" jurisdiction is further examined in light of its clarification by Supreme Court, even this tenuous hold  "related to" section 1927 eviscerates.  The Court noted that nearly all circuits have embraced the *Pacor* test, but (correctly) did not find it necessary to adopt any particular test in order to decide the case before it.  *Celotax*, 514 U.S. at 307-08

"The First, Fourth, Fifth, Sixth, Eighth, Tenth and Eleventh Circuits have adopted the [Third Circuit's] Pacor test with little or no variation. The Second  and Seventh Circuits on the other hand, seem to have adopted a slightly different test." *Id.* at 308-09 n.6; see *also Elscint, Inc. v. First Wis. Fin. Copr.* ( In re Xonics, Inc.) 813 F.2d 127, 131 (7th Cir. 1987) (stating that related to jurisdiction over a third-party dispute depends on whether "it affects the  amount of property available for distribution or the allocation of property among creditors") *Turner v. Ermiger* (I*n re Turner*), 724 F.2d 338, 341 (2nd Cir. 1983) (determining that third party "related to" jurisdiction requires a "significant connection " to the debtor's bankruptcy case).

The Court goes to characterize "related to" bankruptcy jurisdiction, while cautioning that "a bankruptcy court's 'related to' jurisdiction cannot be limitless," as including two types of actions: (1) *Northern Pipeline*-like "causes of action owned by the debtor which become property of the estate. . .  and (2) suits between third parties which have an effect  on the bankruptcy estate." *Celotex Corp. v. Edwards*, 514 U.S. 300, 307-08 n.5 (1995). Further, the Court noted in dicta, in *Celotex* that the

bankruptcy jurisdiction in Chapter 7 less than that which could be available in Chapter 11 case. *Id.* at 310.

Here, hypothetical satisfaction of monetary claim by panel trustee does not augment the estate and it further has no affect on bankruptcy estate. It relates to two private parties unrelated to the estate.

The limits to third party "related to" bankruptcy jurisdiction are constitutional limits. Here there is no alteration of debtor's rights, liabilities, options or freedom of action, so this proceeding asserting relief under 1927 is not even related one and thus bankruptcy court has no jurisdiction on the proceeding.

Subject matter jurisdiction is parri-passu with relief under 1927 and inherent power, as it is not a Rule 9011 proceeding, which allows a court to entertain disciplinary issue irrespective of subject matter jurisdiction.

Even consent cannot confer jurisdiction on the bankruptcy judge here, for subject matter jurisdiction cannot be conferred by consent, for that would result in issues related to separation of power.

As a matter of statutory interpretation, it's more than clear that Congress never intended to delegate the power to bankruptcy judges to use of section 1927, when faced with private parties motions for sanctions.

Question is if Article III allow Congress to give bankruptcy judges these powers. As a delegatee of the judicial powers and since this process is not "under the district court's total control and jurisdiction." *Peretz v. United States*, 501 U.S. 923 (1991), the bankruptcy judge cannot use section 1927 powers and inherent powers. Inherent powers of a court inheres with the court and cannot be delegated.

An allowance was made in several cases equating the bankruptcy judges with the magistrate judges, on adjunct theory, however it was based on the premise that it does not threaten Article III power because Article III trial judges remain in "total control" of the magistrate' work. However that is not the case here.

## Bankruptcy Courts are not United States Courts for 1927

Bankruptcy courts are not "courts of the United States" because bankruptcy judges do not enjoy life tenure. *In re Courtesy Inns*, 40 F.3d 1084, 1086 (10th Cir. 1994). See also *Brown v. Mitchell* (In re Arkansas Communities, Inc.), 827 F.2d 1219, 1221 (8th Cir. 1987) ("questionable whether a bankruptcy court falls within the definition of 'courts of the United States' for purposes of imposing sanctions against attorneys under this section"); *Perroton v. Gray* (In re Perroton), 958 F.2d 889, 893-96 (9th Cir. 1992) (holding bankruptcy court is not a court of the United States entitled to waive filing fees under 28 U.S.C. 1915(a));

Congress itself has clearly defined the "courts of United States." Jurisdiction under 1927 turns on whether the bankruptcy court is a "court of the United States." The historical and statutory notes appended to 1927 refer to the definition of "court of

the United States" in another section in the same title, 28 U.S.C. 451. That is a

definition section applicable to all of Title 28, and it states:

As used in this title [28]:

The term "court of the United States" includes the Supreme Court of the

United States, courts of appeals, district courts constituted by chapter 5 of this title,

including the Court of International Trade and any court created by Act of Congress

the judges of which are entitled to hold office during good behavior.

Bankruptcy courts are not the "Courts of United States," though a collective

assembly of District Court bankruptcy judges can constitute a court as a unit of

District Court.   Since bankruptcy courts are not courts of United States, they cannot

use section 1927.

## **Bankruptcy Judge assuming Jurisdiction on 1927 and claiming inherent**

## **power violates Appointment clause.**

The role of Appointment Clause in our constitutional cannot be underestimated.

The structural principles embodied in the Appointment Clause do not speak

only, even primarily, of Executive prerogatives simply because they are

located in article II. The Appointment Clause prevents Congress from

dispensing power too freely; it limits the universe of eligible recipients of the

power to appoint . . . . For example, the Clause forbids Congress from granting

the appointment power to inappropriate members of the Executive Branch. . . .

51

The structural interests protected by the Appointment Clause are not those of any branch of Government but of the entire Republic.

*Freytag v. Commissioner of Internal Revenue,* 501 U.S. 868, 880 (1991).

Two dominant principles guided the policy behind the formulation of Appointments Clause—accountability for appointments and a check on concentrated power. 2 James Madison, The Debates in the Federal Convention of 1787 which framed the constitution of the United States of America 294-303 (Gaillard Hunt & James Brown Scott eds., 1920). As reflected by Alexander Hamilton, Appointment Clause ensures accountability:

> In the act of nomination, [the President's] judgment alone would be exercised; and as it would be his sole duty to point out the man who, with the approbation of the Senate, should fill an office, his responsibility would be as complete as if he were to make the final appointment.

THE FEDERALIST NO. 76, AT 456-57 (Alexander Hamilton) (Clinton Rossiter ed., 1961).

A bankruptcy judge is an officer of the United States, as she is an appointee, "exercising significant authority pursuant to the laws of the United States." See *Buckley*, 424 U.S. at 126 defining officer of United States. In regards to the present setup, the bankruptcy judges are "inferior officers" pursuant to the Appointment Clause, as the appointment of these auxiliary judicial officers are not done pursuant to

"Advice and Consent of the Senate" and Presidential nomination. It is clear that if a bankruptcy judge were a "principal" officer of the United States, then the appointment done without recourse to presidential nomination and senate involvement would plainly be unconstitutional. However, Congress is free to vest the power to appoint "inferior" officers in the President alone, in the Courts of Law, or in the Heads of Department." Art. II, §2, cl. 2.

However, labeling an officer as "inferior" or "principle" solely on the basis of manner of appointment might not reflect the true powers or identity of such officer and thus constitutionality of such appointment might not be foreclosed. "The line between 'inferior' and 'principal' officer is one that is far from clear, and the Framers provided little guidance into where it should be drawn." *Morrison v. Olson*, 487 U.S. 654, 671 (1988). *But see Buckley*, 424 U.S. at 125 ("inferior officers" are "officer inferior to those specially mentioned in the Appointment Clause).

Looking at the judicial powers granted to the bankruptcy judge under the 1978 Act and as qualified by BAFJA, the bankruptcy judgeship or its appointments by the Circuit Courts runs afoul of Appointment Clause.

Applying four factors of Morrison case, a bankruptcy judge is not an "inferior officer."

First, she is not subject to removal by a higher judiciary without cause—is indeed more safeguarded than the removal of compared independent counsel—

53

further, it is only upon the majority of the circuit judges that termination or removal shall be effective.

Second, she is not granted "only certain, limited duties" or limited judicial powers, she is granted all powers and presumptively so, under 1334 of title 28 as facilitated by automatic [though scripted as discretionary] referral by section 157. Power includes conducting jury trials, enforcing presence of parties by subpoena and sometimes bankruptcy judges have claimed inherent power, calling its bankruptcy units as independent courts with equity and power to restrain other courts. *See. Manville Corp. v. Equity Sec. Holders Comm,* (In re Johns-Manville Corp.) 801 F.2d 60, 64 (2nd Cir. 1986).

Third, jurisdiction is not limited to the solely allowance and disallowance of claim and adjudicating on bankruptcy petition, it expands to all issues of core proceeding (section 157 (b)(2) not an exclusive list) and non-core, 'related to' proceedings too.

Fourth, it is not a temporary position, i.e. created to meet some ad-hoc demands as in the case. This bankruptcy unit of district court "has an ongoing responsibilities." *See Morrison*, 487 U.S. at 671.

Indeed, the bankruptcy judge who is operational, theoretically only upon referral from the district court, in reality entertains directly, the cases and controversies that are filed and agitated within the bankruptcy unit of a particular district. Such referral endows these judicial officer full fledged power of independent

judges and theoretical subordination is only subservient to such independence and this aspect of adjudicatory powers renders such judges non-inferior. Edmond court had rightly brushed aside Morrison four factors as "not purport[ing] to set forth a definitive test for whether an office [was] 'inferior.' *Edmond*, 520 U.S at 661. As made clear by the Supreme Court, " 'inferior officers' are officers whose work is directed and supervised at some level by others who were appointed by presidential nomination with the advice and consent of the Senate." *Id.* at 663.

However it is clear that only an adjunct like a magistrate has that direction and supervision and not a bankruptcy judge. The idea that the bankruptcy judges are adjunct has been dismissed. See Marathon and Stern. In practice, the powers and jurisdiction granted to the bankruptcy judge is anything but subordinate or inferior to the district court.

Its important to note that in the originally drafted 1978 Act, the bankruptcy judge were supposed to be appointed pursuant to Article II, however this requirement was dropped by subsequent tinkering done by BAFJA, which renders the present scheme of appointment of judges as unconstitutional, as full fledged, un-individuated, complete referral of entire case and controversy is transported to bankruptcy forum. In reality, there is not even an referral, as the case and proceedings are filed in the bankruptcy court. Forms and formalities as adopted by the Supreme Court for formulating rules and procedures for the bankruptcy unit treat it as an independent court. There is no referral to an adjunct as bankruptcy unit functions as an independent court, claiming inherent powers, entertain filing of bankruptcy cases and

issues all kind of judicial decrees without any intervention by the district court. What we have today is the same situation as was confronted by the Supreme Court in *Northern Pipeline*.

Congress labeling the bankruptcy judges as 'inferior officer' might not be the end of query, it is the beginning. How Congress defines a constitutional provision cannot be conclusive, for first that is not the role reserved for the Congress, it is the domain of Judiciary to tell what law is and hence its proper to second-guess. *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803). Legislative deference cannot be proper here as it entails structural issue and contains a constitutional value of political accountability. Appointment by president, upon senate confirmation ensures some level of political accountability, a cardinal aspect of our democratic institutions. However, an appointment as in here, where the appointing authority, as by circuit court, the judicial department of United States, which itself is not politically accountable leaves a dramatic vacuum.

Appointment Clause in itself does not restrict inter-branch appointment, however congressional discretion to permit such appointment was not "unlimited" if such appointment created "inherent incongruity" between the appointing power and the functions of the inferior officers being appointed. *Morrison*, 487 U.S. at 675-76 (citing *Ex Parte Siebold,* 100 U.S. at 398). However, intra-branch appointment as here is very broad.

Separation of the power guided the Court in *Edmond v. United States* when it reinforced, "[b]y vesting the President with the exclusive power to select the principal (non-inferior) officers of he United States, the Appointment Clause prevents congressional encroachment upon the Executive and Judicial Branches." *Edmond*, 520 U.S at 659.

Under the Appointment Clause, the present scheme of manner of appointment of bankruptcy judges is unconstitutional if not per se but as applied.

District courts are authorized, but not required, to refer to bankruptcy judges cases under title 11, and proceedings arising under title 11, or arising in or related to cases under title 11. 28 U.S.C. § 157(a). Upon transfer of a case, the bankruptcy judge and her orders are not less in any manners than that of an Article III—this power is further heightened looking at the ambit of "core proceedings" under section 157 of title 28 and upon authority granted to her under section 157 (b)(3) to decide her own jurisdiction.

The wholesale transfer of bankruptcy cases and controversies, without any individuated checks on such transfer, results in impermissibly vesting principle officer's powers in inferior officer and thus it violates the Appointment Clause.

All bankruptcy cases and attendant controversies are not even transported from district court to bankruptcy units, they are filed in separate distinct unit/court with its own rules and regulations and is thus unconstitutional under the guise of discretionary

referral as claimed under section 157(a). However **judicial discretion cannot be exercised without exercising discretion**—it must have an individuated reference and application. Discretion is a reality only when it is applied case by case basis. Such a transfer of jurisdiction, lock, stock and barrel, is not only an abuse of discretion it is unconstitutional. Thus such a bankruptcy Act providing such blanket referral cannot stand. As Justice Field declared in *Norton v. Shelby County*: "An unconstitutional act is not a law; it confer no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed." 118 U.S. 425, 442 (1886).

Further, "[t]he 'fact that a given law or procedure is efficient, convenient, and useful in facilitating functions of the government, standing alone, will not save it if it is contrary to the Constitution," for 'convenience and efficiency are not the primary objectives—or the hallmarks—of democratic government." *Bowsher*, 478 U.S. at 726 (quoting *Chadha*, 462 U.S. at 954-55).

## Barton Doctrine Application.

Kramer and her team asserts that the Barton doctrines is a total shield or immunity to any of their conduct. They claim that they cannot be sued without bankruptcy court permission and that if they are sued that are entitled to sanctions under section 1927 and inherent power of the bankruptcy court.

The "Barton Doctrine" originated in *Barton v. Barbour*, 104 U.S. 126, 129 (1881) in which the Supreme Court held that a suit could not be maintained against a

receiver for an act in his official capacity without first obtaining leave from the court which had appointed him.

In 1932 Judge Learned Hand applied the rule to trustees in bankruptcy, and since that time, "it has been well settled that the rule of *Barton v. Barbour* applies in bankruptcy proceedings." *Id.* (citing *Vass v. Conron Bros. Co.*, 59 F.2d 969, 971 (2d Cir. 1932).

*Barton v. Barbour*, laid it down that a judgment against a receiver as such upon a liability arising out of his conduct of the business establishes a claim against the estate; and it is for this reason that, not only may the action be enjoined, but it does not lie at all, unless by leave of the court which appoints the receiver. *Barton* 104 U.S. at 126. However these trustee operating title 11 now are not court appointed receiver, they are statutorily appointed and might not be eligible for equitable protection by the Courts as are the receivers. 11 U.S.C. 701. Further, by fact of their not being appointees of the court and but that of United States Trustee's Offices, they are a part of the executive and do not have judicial color to their acts.

Further even if the *Barton* doctrine applies, it is a forum based immunity and it does not immunize them from tort liability. It does not override or immunizes them from Constitution tort or where their actions are motivated by ulterior motives. Constitutional torts override such Barton immunities. Today, *Bivens* provides the only generally available basis on which individuals can seek an award of damages for federal violations of constitutional rights. Further, the immunity issue of these federal

employee or their agents is no different than those of the state officials while

confronting section 1983 actions. It would be "untenable to draw a distinction for

purposes of immunity law between suits brought against state officials . . .. and suits

brought directly under the Constitution against federal officials." *Butz v. Economou*,

438 U.S. 478, 504 (1978).

Here the allegation is that there is a abuse of the office, and in such a

circumstance, an action for damages may offer the only realistic avenue for

vindication of constitutional guarantee. The purpose of Bivens is to deter individual

federal officers from committing constitutional violations. *Correctional Services*

*Corp. v. Malesko*, 534 U.S. 61, 122 S. Ct. 515, 521, 151 L. Ed. 2d 456 (2001). The

threat of litigation and liability, the Court reasoned, will adequately deter federal

officers for Bivens purposes no matter that they may enjoy qualified immunity, are

indemnified by the employing agency or entity, or are acting pursuant to an entity's

policy. *Id.*

The foundation of the Barton doctrine rests on the premise that the bankruptcy

court retains exclusive in rem jurisdiction over the property of the estate. *In re Crown*

*Vantage, Inc.*, 421 F.3d 963, 971 (9th Cir. 2005). A corollary purpose of the Barton

doctrine is "to prevent a party from obtaining, some ad-vantage over the other

claimants upon the assets" in the trustee's hands." *Muratore v. Darr*, 375 F.3d 140,

147 (1st Cir. 2004). Barton doctrine has only been applied to require leave to be

granted prior to the filing of lawsuits against a trustee in a non-appointing court and

not for claims against the trustee in this court. The counter claim was brought in this

District in the District Court, though technically the said claim was filed with in the

bankruptcy unit of the district court.

## **Learned Bankruptcy Judge Allan Trust Ruling and Abuse of Process**

Trustee and her counsels in order to extract monetary damages from the undersigned

state:

> "It is black letter law that an action for abuse of process cannot be
>
> brought until the complained of action has been determined in the
>
> defendant's favor.  Despite that fact, Dahiya and DLO  ave sued trustees
>
> on at least five (5) occasions for "abuse of process" as counterclaims in
>
> actions to recover either preferences or fraudulent conveyances.  This is
>
> done without any legal basis for the actions.  Indeed, as is discussed infra,
>
> Dahiya and DLO have already lost on this precise issue before the
>
> Honorable Alan S. Trust. *See Pryor v. Satangelo*, Adv. Pro. No. 119096
>
> (Decision of Judge Trust), annexed hereto as Exhibit "A".

However the black letter law is just contrary to what the panel trustee asserts.

Abuse of process differs from malicious prosecution in that the gist of the

tort is not commencing an action or causing process to issue without

justification, but misusing or, or misapplying process justified in itself for

an end other than that which it was designed to accomplish.  Consequently,

in an action for abuse of process, <u>it is unnecessary</u> for the plaintiff to prove

that the proceeding <u>has terminated</u> in his favor, or that the process was

obtained without the probable cause or in the course of a proceeding begun

without probably cause.

Prosser and Keeton on Torts, Fifth Edition, Page 897-898 citing *Assets Collecting Co.*

*v. Myers*, 1915, 167 App. Div. 133, 152 N.Y.S. 930.


Movants did not lose in front of Learned Judge Alan S. Trust as the decision

was incorrect and unconstitutionally entered.


First there was no consent to his jurisdiction and he improperly assumed

jurisdiction on that matter, especially in light of the fact that the defendant there had

properly invoked the right to be heard by an Article III court and filed motion to

withdraw the reference.


Second, Learned Judge Trust had confused "abuse of process" claim with

"Malicous prosecution." It is true that for malicious prosecution, one must wait for

the termination of proceeding and not for abuse of process. Supra, Prosser and Keeton

on Torts.


Third, Judge Trust ruling on common law cause of action is unconstitutional.

He did not have the authority to enter a decision on state law cause of action and

hence it could not have any precedential value. *Stern v. Marshall*, 131, S. Ct. 2594

(2011).

Panel Trustee further asserts:

> Dahiya and DLO also ignore the fact that an essential element of "abuse
> of process" in a civil matter is the pleading of special damages.   The
> counterclaim in this case is devoid of any special damages.  Indeed, it
> alleges only the sort of damages which are expressly not recoverable
> under such a claim. In re: Eerie World Entertainment, L.L.C. 2006 Bankr.
> LEXIS 770. As Judge Gropper held:
>
>> The third element that must be pleaded in an action for
>> malicious prosecution in New York is special damages. New
>> York courts have defined special damages as injury or
>> interference with the plaintiff's person, property or business
>> that entails "some concrete harm that is considerably more
>> cumbersome than the physical, psychological, or financial
>> demands of defending a lawsuit." *Engel v. CBS, Inc.*, 93
>> N.Y.2d 195, 205, 711 N.E.2d 626, 631, 689 N.Y.S.2d 411,
>> 417 (1999). Special damages must exceed "the damages
>> normally attendant upon being sued." *Honzawa*, 268 A.D.2d
>> at 329; see also *Campion Funeral Home*, 569 N.Y.S.2d at
>> 521. Cases in New York hold that where the prior action is
>> civil rather than criminal, the complaint must allege special
>> damages in the form of "some interference with plaintiff's
>> person or property, for example, by way of some remedy

such as attachment, arrest or injunction." *Molinoff*, 99

A.D.2d at 529.


Once again the Trio makes the same fatal mistake and they are comparing

apples to oranges. Special damages is a requirement for malicious prosecution and not

for abuse of process—extortion or unfairness is an element of abuse of process. The

trustee  and her counsels knew that the debtor and the defendant live together and

they are a joint family and that they would not be able to afford an attorney. Here the

trustee brought this action, deliberately abstaining from investigating the factual basis

of the underlying fraudulent transfer lawsuit, for they knew that if they had

investigated diligently as expected under Rule 11, they would not have been able to

bring the underlying action. They filed the lawsuit they knew that the debtor family

and son, the defendant will not have a legal representation and their vulnerability

could be exploited to extract settlement.  Indeed, this is an abuse of process.

Similarly one court had permitted  the jury to conclude that  lawyer's unfounded and

uninvestigated medical malpractice claim, followed by a low-figure demand for

settlement and a trial in which no expert testimony  was produced, reflected an

attempt  to extort  a nuisance settlement for which the lawyer would be liable. *Bull v.*

*McCuskey*, 1980, 96 Nev. 706, 615 P.2d 957.


Indeed it is a perversion of the process when it is used to extort money, *Foy v*

*Barry*, 87 AD 291, 84 NYS 335, to coerce the withdrawal of a civil action, id., or

criminal action, *see Goldstein v Siegel*, 19 AD2d 489, 244 NYS2d 378, or compel the

payment of a debt, *Dishaw v Wadleigh*, 15 AD 205, 44 NYS 207; *Lader v Benkowitz*,

188 Misc 906, 66 NYS2d 713, even though the amount sought is lawfully due, *Cardy*

*v Maxwell*, 9 Misc2d 329, 169 NYS2d 547.


Further looking for special damages in abuse of process would be tantamount

to abrogating the Abuse of Process as a cause of action or it would result in merging it

with malicious prosecution. New York has not merged these two cause of action as it

has been done in some states like Pennsylvania and Georgia.  Trustee knew about the

relationship of the debtor with the defendant, they are mother and son.  It is clear that

the law of torts is concerned not only with the protection of interests of personality

and of property, tangible or intangible, but also with what may be called "relational

interest" founded upon the relation in which the persona stands towards on or more

third persons. It is the joint family that was impacted and Trustee knew about the

sensitivities of the family.


Because a trustee has greater power and authority than an ordinary private

litigant, the trustee should be held to a higher standard of care. Accordingly, the

requirement that the trustee have used a provisional remedy and the requirement for

special damages should not apply in the case of a trustee. They are quasi government

actors, they have partial immunity from personal liability unless confronted with

constitutional tort. They are not required to invest their personal funds in any

litigation and in consumer bankruptcy cases, there is no effective check on a trustee's

actions by the creditors because creditor rarely if ever show up in a consumer

bankruptcy case. Therefore, the requirements that there have been a provisional remedy and special damages are unduly burdensome and should not apply where, a trustee brings an adversarial proceeding against the third party to recover assets, the trustee claims belong to the estate.

Judge Trust ruling on common law cause of action is unconstitutional.  He did not have the authority to enter a decision on state law cause of action and hence it could not have any precedential value. *Stern*, 131, S. Ct. at 2594.  Learned Judge Trust confused "Abuse of Process" with "Malicious Prosecution". It is clear that malicious prosecution would not lie because the proceeding had not been terminated, however abuse of process claim does not need to wait for the termination of the proceedings.

It is cleat that honest litigants are to be encouraged  to seek justice and not to be deterred by fear of an action in return. Of course, here the defendant could have used both the malicious prosecution or abuse of process.

The irony is that they blame the undersigned for bringing frivolous lawsuit and with themselves they could get away with anything.  It is not just the initiation of the proceeding, it is the platform that it creates for the trustee that become a launching pad for getting all kind of favorable settlement under the threat of judgment, even after knowing that the only strength the trustee had was that the defendant was unrepresented.

## Constitutional Claim—Bivens

Panel trustee and her team regarding constitutional tort makes the following observation:

> For this alleged Constitutional Tort, Dahiya sought an award of legal fees and undefined punitive damages to be determined by a jury. This cause of action simply does not state any cognizable claim. The debtor voluntarily filed bankruptcy and submitted herself and her property to the jurisdiction of this Court.

Panel trustee disregards the major tenet of *Bivens* law as developed by the Court. She and her counsel thinks that all rights have to be named and must be created by the Congress. Not all rights or causes of actions have to be created by the Congress. Thus, in *Bivens* itself, Chief Justice Burger and Justice Black both dissented on the ground that the creation of rights of action was a matter for Congress. *See Bivens*, 403 U.S. at 411 (Burger, C.J., dissenting); id. at 427–28 (Black, J., dissenting). It is clear where Constitution is the source of a claim then no statutory backup is necessary to assert such claims.

It's primarily a civil rights or a tort action against federal agents where 42 U.S.C. § 1983 is not applicable, though Court has already described as the "analog[ous]" relationship between the Bivens action and § 1983 claims. *Hartman v.*

*Moore*, 547 U.S. 250, 254 n.2 (2006) (specifying elements of malicious prosecution

claims in the context of Bivens litigation and describing the Bivens action as the

"federal analog to suits brought against state officials" under § 1983).


The right to be left alone, in peace with family, ailing mother being taken care

of by the son, is the most fundamental value that could ever be protected by the

constitution.  Constitutional values are not always emblazoned in black letter law,

they are there and adhered to by the courts and other institutions.   Further, a

"deprivation of a constitutional right is significantly different from and more serious

than a violation of a state right."  *Monroe v. Pape*, 365 U.S. 167, 196 (1961). The

Supreme Court has held that a "damages remedy against the offending party is a vital

component of any scheme for vindicating cherished constitutional guarantees."

*Gomez v. Toledo*, 446 U.S. 635, 638-39 (1980).


When constitutional rights are hurt, applying common law principles, as

suggested by Supreme Court in *Carey v. Piphus*, 435 U.S. 247 (1978), *Bivens*

plaintiffs could establish what may be termed "psychological injury" or injury to

"dignitary interests." And these could include impairment of reputation, humiliation,

embarrassment, and mental and emotional distress—although, such injuries are not

the typical common law variety, they are compensable in a constitutional tort action.

*See Stachura*, 477 U.S. at 306—07; *Carey*, 435 U.S. at 264; *Baskin v. Parker*, 602

F.2d 1205, 1209 (5th Cir. 1979) (per curium). The observations in Baskin case merits

consideration:

Emotions are intangible but they are none the less perceptible. The hurt done

to feelings and to reputation by an invasion of constitutional rights is no less

real and no less compensable than the cost of repairing a broken window pane

or a damaged lock. Wounded psyche and soul are to be salved by damages as

much as the property that can be replaced  at the local hardware store.

*Id.*

Further, a Biven's claimant could also be entitled punitive damages, when the

respondent conduct is wanton, malicious or reflects a reckless or callous disregard for

the plaintiff's rights. *Smith v. Wade*, 461 U.S. 30, 51 (1983).  It is not necessary that

for such damages they are to very tangible and that it must be quantified in concrete

terms for ascertaining entitlement under constitutional tort, damages could still be

given  even when it is extremely difficult to measure.  *See Hobson v. Wilson*, 737

F.2d 1, 57-63 (D.C. Cir. 1984), cert. denied sub. nom. *Breenan v. Hobson*, 470 U.S.

1084 (1985); *Kincaid v. Rusk*, 670 F.2d 737, 745-46 (7th Cir. 1982); *Dellums v.

Powell*, 566 F.2d 167, 194-96 (D.C. Cir. 1977)

The right to cherish life and privacy without being dragged involuntarily in

litigation or family member pitted against each other is one most fundamental aspect

of  civilized society. Forced to defendant a lawsuit is a form of tyranny.

Judicial consideration of this right is presently not very structured, for all

rights so far have entailed assertion of some facts, issues, act or agenda. This right is

of no less importance, perhaps more in reality, than the other enumerated ones. As this right is an integral part of those enumerated right. Right to be or left alone is mark of civilization, its an ultimate respect for a person as a human being. This right could be traced not only from the ninth amendment but from the due process clause of fifth amendment.  Supreme court has stated that, "Although the Court has not assumed to define "liberty" with any great precision, that term is not confined to mere freedom from bodily restraint. Liberty under law extends t the full range of conduct with the individual is free to pursue, and it cannot be restricted except for a proper governmental objective. *Bolling v. Sharpe*, 347 U.S. 497, 499-500 (1954).

## **Impartial Judge Issue:**

The danger of allowing such bankruptcy judge to rule on such matter is broad and as fairness is not only to be done, it should also seen to be done.  These bankruptcy judge clearly are vulnerable to adopt a risk averse strategy of adjudication by the pressure of judicial scrutiny in regards to reappointment, when the Circuit Court will invite comments from the bankruptcy bar. The judicial reappointment of these bankruptcy judges heavily on the bankruptcy bar and its opinions about judicial performance are strongly considered by courts of appeals in such reappointment process. There is indeed undue political or bar influence in such reappointment and thus current practice of reappointment does affect the neutrality of the decision-maker.  Neutrality is core aspect of Article III value.  The comments and suggestions

70

of those who are more regular in appearance before the bankruptcy judges shall carry more weight, and these panel trustee appearance is far more numerous and influential.

This influence of the bankruptcy bar was clearly felt in the case of bankruptcy judge David A. Schol of Eastern District of Pennsylvania. He sought reappointment and, at first, it appeared that the Third Circuit would reappoint him. The Third Circuit initially voted, in accordance with the regulations promulgated by the Judicial Conference at that time, to proceed to a public comment period after determining that Scholl "appear[ed] to merit reappointment subject to public notice." *Scholl v. United States*, 54 Fed. Cl. 640, 643 (2002) The Third Circuit targeted bankruptcy lawyers in the circuit. The court requested detailed response from the bankruptcy bar members. The questionnaire asked recipients to rate the judge's performance. Id at 64. The response had several negative comments which derail the process of reappointment of the bankruptcy judge. Judge Scholl's case has been cited as an example of the "corrupting" influence of the bankruptcy bar over bankruptcy judges. See, e.g., Lynn M. Lopucki, COURTING FAILURE: HOW COMPETITION FOR BIG CASES IS CORRUPTING THE BANKRUPTCY COURTS 97-122 (2005)

It is a matter of clear record here, there has, seldom been a panel trustee who has had any sanctions against him or her. Panel trustees are very powerful in the bankruptcy forum. Not only do they have the statutory powers granted by the bankruptcy code, their comments to the circuit court clearly carries meaning and which are clearly potent enough to influence the reappointment of such judges. No

71

doubt because of the influence they have on the bankruptcy judge, they fight tooth and nail to avoid withdrawal of reference. The freedom to decide a case without fear of consequences/retribution is the hallmark of judiciary, however the value of that impeccable neutrality can't be stated with certainty under such circumstances as are existing here. It is only Article III that guarantees federal adjudicatory powers with independence, for a judge of such a forum is insulated from pressures or attacks of any kind.

The first tier decision makers, bankruptcy judges, have enormous powers to shape records and to protect their own decisions. And it is true that the appellate review of records made and facts found by non-Article III judge is a weak substitute for Article III judging. We have to be mindful of what the Court's concerns were *Stern v. Marshal.*

Article III protects liberty not only through its role in implementing the separation of powers, but also by specifying the defining characteristics of Article III judges. The colonists had been subjected to judicial abuses at the hand of the Crown, and the Framers knew the main reasons why: because the King of Great Britain "made Judges dependent on his Will alone, for the tenure of their offices, and the amount and payment of their salaries." The Declaration of Independence ¶ 11. The Framers undertook in Article III to protect citizens subject to the judicial power of the new Federal Government from a repeat of those abuses. By appointing judges to serve without term limits, and restricting the ability of the other branches to remove judges

or diminish their salaries, the Framers sought to ensure that each judicial decision would be rendered, not with an eye toward currying favor with Congress or the Executive, but rather with the "[c]lear heads ... and honest hearts" deemed "essential to good judges." 1 Works of James Wilson 363 (J. Andrews ed. 1896).

Article III could neither serve its purpose in the system of checks and balances nor preserve the integrity of judicial decision making if the other branches of the Federal Government could confer the Government's "judicial Power" on entities outside Article III. That is why we have long recognized that, in general, Congress may not "withdraw from judicial cognizance any matter which, from its nature, is the subject of a suit at the common law, or in equity, or admiralty." *Murray's Lessee v. Hoboken Land & Improvement Co.,* 59 U.S. 272, 18 How. 272, 284, 15 L.Ed. 372 (1856). When a suit is made of "the stuff of the traditional actions at common law tried by the courts at Westminster in 1789," *Northern Pipeline,* 458 U.S., at 90, 102 S.Ct. 2858 (Rehnquist, J., concurring in judgment), and is brought within the bounds of federal jurisdiction, the responsibility for deciding that suit rests with Article III judges in Article III courts. The Constitution assigns that job—resolution of "the mundane as well as the glamorous, matters of common law and statute as well as constitutional law, issues of fact as well as issues of law"—to the Judiciary. *Id.,* at 86–87, n. 39, 102 S.Ct. 2858 (plurality opinion).

## Conclusion

Thus a bankruptcy judge, claiming to be an adjunct cannot encroach upon power reserved to the Judicial Branch of the Constitution. The limitations of the judicial power in Article III are just as much a part of the Constitution as any constitutional right, like right to an Article III adjudication. The compelling conclusion where important interests are stake , and the nature of the judicial proceeding has a significant effect upon the rights and liberties, as herein the undersigned, that the bankruptcy judge can only assume control and adjudicate only if there is express consent of the parties and there is a  direct supervision over the exercise of such judicial power by an Article III judge.

Withdrawal of reference here is the only way, that the constitutionality of the existing structure of bankruptcy jurisdiction that could be maintained only thus if it would prevent the dissipation of "essential attributes" of the judicial power as it has to stay fastened with the Article III court. It is the functionality and not mere potentiality of withdrawal of reference that saves the constitutionality of existing bankruptcy jurisdictional structure.

This motion requisitions, novel interpretation of law, re-analysis of the bankruptcy code, evaluation of the Barton doctrine as there is no receiver or court appointee here now,  application of *Bivens* to such government agents as panel trustee, abuse of process, separation powers doctrine, definition of the courts of the united States. E.g. *In re Ionosphere Clubs,0 Inc.* 922 F.2d 984 (2nd Cir. 1990).

74

Wherefore, this court is requested to withdraw the reference and schedule a

hearing on the merits of the controversy.


Dated: New York New York
November 19, 2012

_____
Karamvir Dahiya, Esq. Pro Se

The Law Offices of Avrum J. Rosen, PLLC
Proposed Attorneys for Debra Kramer, Trustee
38 New Street
Huntington, New York 11743
631 423 8527
Fred S. Kantrow

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re:

                                                        Chapter 7

      SHAHARA KHAN,                             Case No.: 10-46901-ess

                       Debtor.
-----------------------------------------------------------------x
DEBRA KRAMER AS TRUSTEE OF THE ESTATE
OF SHAHARA KHAN,

                     Plaintiff,

                                        Adv. Pro. No.: 11-

    -against-

TOZAMMEL H. MAHIA,

                     Defendant.
-----------------------------------------------------------------x

## COMPLAINT

        Debra Kramer, the plaintiff and the trustee (the "Plaintiff" or the "Trustee"), by and

through her attorneys, The Law Offices of Avrum J. Rosen, PLLC, respectfully submits this as

and for her complaint (the "Complaint") as against Tozammel H. Mahia ("Mahia" or the

"Defendant") and states as follows:

## PRELIMINARY STATEMENT

        1.      This adversary proceeding seeks to recover alleged fraudulent conveyances from

Mahia as a result of the Defendant's receipt of $106,761.00 as a result of the sale of the real

property commonly known as 87-27 110th Street, Richmond Hill, New York 11418 (the

1

"Richmond Hill Property"), in which the Defendant, along with the Debtor and a third party, each held a one third (1/3) interest, as of April 3, 2007.

## THE PARTIES

2.      Mahia is an individual with a mailing address of 101-14 102nd Street, Ozone Park, New York 11416-2620.

3.      Debra Kramer is the Trustee herein.

## JURISDICTION

4.      This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 (a) and 1334.

5.      The United States Bankruptcy Court for the Eastern District of New York is the proper venue for this proceeding in accordance with 28 U.S.C. §§ 1408 and 1409 (a).

6.      The statutory predicates for the relief sought herein are 11 U.S.C.§§ 542, 544, 550 and 551 and 12 N.Y. Debt. & Cred. Law §§ 270 et seq. ("Debtor and Creditor Law"); Bankruptcy Rules 7001 *et. seq.,* and common law principles of fraud and unjust enrichment.

7.      This adversary proceeding relates to the above-captioned bankruptcy proceeding pending in the Bankruptcy Court for the Eastern District of New York and is a "core proceeding" as that term is defined in 28 U.S.C. § 157 (a), (b)(2)(A), (E), (H), (N), and (O) and Bankruptcy Rules 7001 *et. seq.*

8.      In the event that this Court determines that this cause of action, as alleged herein, is not a core proceeding, the Plaintiff consents to the entry of final orders and judgment by this Court determining such causes of action.

## BACKGROUND

9.      On July 22, 2010, (the "Petition Date") the Debtor filed a voluntary

petition for relief from her creditors pursuant to chapter 7 of the Bankruptcy Code.

10.      Debra Kramer was appointed as the interim Trustee and thereafter did duly qualify

as the permanent case Trustee.

11.      Prior to the commencement of the instant chapter 7 case, the Debtor, along with

the Defendant and a third party, Shamsum N. Rimi (collectively, the "Sellers") , conveyed their

interest in the Richmond Hill Property, via deed dated April 5, 2007, to Jany Sikder.

12.      Upon information and belief, and upon a review of the closing documents from

the closing of the sale of the Richmond Hill Property, the Sellers realized net proceeds in the

amount of $106,761.00.

13.      Upon information and belief, and based upon the review of the deed, the Debtor

held a one third (1/3) interest in the Richmond Hill Property.

14.      Accordingly, the Debtor should have received $35,587.00 as her respective share

of the sale proceeds.

15.      Upon information and belief, and based upon the review of the closing documents

from the sale of the Richmond Hill Property, the Debtor did not receive any proceeds from the

sale.  Instead, the Defendant received all of the net sales proceeds.

## AS AND FOR A FIRST CAUSE OF ACTION

_____16.      The Trustee repeats and realleges each and every allegation contained in

paragraphs "1" through "15" as if each were more fully set forth herein.

17.      Section 542(a) of the Bankruptcy Code provides, in pertinent part, that, "an entity

3

in possession, custody or control, during the case, of property that the trustee may use, shall

deliver to the trustee, and account for, such property or the value of such property, unless such

property is of inconsequential value or benefit to the estate".

18.     The Defendant is in possession, custody or control, during the case, of the

Debtor's share of the net sales proceeds in the amount of $35,587.00.

19.     The Defendant has not delivered this amount to the Trustee.

20.     The Defendant has not accounted to the Trustee.

21.     The property made be used by the Trustee to pay creditors of this estate.

22.     The property is not of inconsequential value to the estate.

23.     Accordingly, the Trustee is entitled to a judgment against the Defendant directing

him to account for and to deliver to the Trustee the sum of $35,587.00.

## AS AND FOR A SECOND CAUSE OF ACTION

24.     The Trustee repeats and reallages each and every allegation contained in

paragraphs "1" through "23" as if each were more fully set forth herein.

25.     To the extent that the claims herein arise under Bankruptcy Code § 544(b), the

Trustee is asserting the rights of a creditor with an unsecured claim allowable in the bankruptcy

case.

26.     Upon information and belief, at the time the Defendant received the Debtor's

interest in the net sales proceeds, she was insolvent or the transfer rendered the Debtor insolvent.

27.     The Debtor did not receive fair consideration for the transfer made to the

Defendant.

28.     The Defendant benefitted from the transfer made by the Debtor.

4

29.    The transfer is voidable under Debtor and Creditor Law § 273 as a fraudulent conveyance.

30.    By reason of the foregoing, the Plaintiff is entitled a declaratory judgment setting aside the transfer made by the Debtor and determining that the transfer is a fraudulent conveyance under Debtor and Creditor Law §273.

## AS AND FOR A THIRD CAUSE OF ACTION
## UNDER SECTION 278 OF DEBTOR AND CREDITOR LAW
## AND SECTION 550 OF BANKRUPTCY CODE

31.    Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "30".

32.    Under Debtor and Creditor Law § 278 and Bankruptcy Code § 550 (a), the Plaintiff may recover the transfer that was made and/or the value thereof.

33.    The Defendant benefitted from the Debtor's transfer to him in the amount of $35,587.00.

34.    By reason of the foregoing, the Plaintiff is entitled to a judgment against the Defendant in the amount of $35,587.00 pursuant to Sections 273 and 278  of Debtor and Creditor Law and Section 550 of the Bankruptcy Code.

## AS AND FOR A FOURTH CAUSE OF ACTION
## PURSUANT TO NEW YORK DEBTOR & CREDITOR LAW SECTION 274

35.    The Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "34" as if each were more fully set forth herein.

36.    Upon information and belief, the transfer was made without fair consideration and the property remaining with the Debtor after the transfer was an

unreasonably small capital.

37.     The transfer is voidable under Debtor and Creditor Law § 274 and

Bankruptcy Code § 544 (b).

38.     By reason of the foregoing, the Plaintiff is entitled a declaratory judgment

setting aside the transfer made and determining that the transfer is a fraudulent conveyance

under Debtor and Creditor Law §274.

**AS AND FOR A FIFTH CAUSE OF ACTION**
**UNDER SECTION 278 OF DEBTOR AND CREDITOR LAW**
**AND SECTION 550 OF BANKRUPTCY CODE**

39.     The Plaintiff repeats and realleges each and every allegation contained in

paragraphs "1" through "38" as if each were more fully set forth herein.

40.     Under Debtor and Creditor Law § 278 and Bankruptcy Code § 550(a), the

Plaintiff may recover the transfer or the value thereof.

41.     By reason of the foregoing, the Plaintiff is entitled to set aside the transfer

made and recover the value thereof.

42.     The Defendant benefitted from the Debtor's transfers to him in the amount of

$35,587.00.

43.     By reason of the foregoing, the Plaintiff is entitled to a judgment against

the Defendant in the amount of $35,587.00 pursuant to Sections 274 and 278 of Debtor and

Creditor Law and Section 550 of the Bankruptcy Code.

**AS AND FOR A SIXTH CAUSE OF ACTION**
**PURSUANT TO NEW YORK DEBTOR & CREDITOR LAW SECTION 275**

44.     The Plaintiff repeats and realleges each and every allegation contained in

6

paragraphs "1" through "43" as if each were more fully set forth herein.

45. The transfer was made without fair consideration when the Debtor intended and believed that she would incur debts beyond her ability to pay them as they became due.

46. The transfer is voidable under Debtor and Creditor Law § 275 and Bankruptcy Code § 544(b).

47. By virtue of the foregoing, Plaintiff is entitled to judgment setting aside the transfer as a fraudulent conveyance under Debtor and Creditor Law § 275 and Bankruptcy Code § 544(b).

## AS AND FOR A SEVENTH CAUSE OF ACTION
## PURSUANT TO NEW YORK DEBTOR & CREDITOR LAW SECTION 276

48. The Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "47" as if each were more fully set forth herein.

49. Upon information and belief, the transfer was made with actual intent to hinder, delay, or defraud either present or future creditors of the Debtor.

50. The transfer is voidable under Debtor and Creditor Law § 276 and Bankruptcy Code § 544(b).

51. By virtue of the foregoing, Plaintiff is entitled to judgment setting aside the transfer as a fraudulent conveyance under Debtor and Creditor Law § 276 and Bankruptcy Code § 544(b).

## AS AND FOR AN EIGHTH CAUSE OF ACTION
## UNDER SECTION 276-a OF DEBTOR AND CREDITOR LAW

52. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "51" as if each were more fully set forth herein.

53.     The Plaintiff is also entitled to recover attorneys' fees under Debtor and Creditor Law § 276-a.

54.     By virtue of the foregoing, Plaintiff is entitled to judgment equal to attorneys' fees incurred in connection with this action pursuant to Section 276-a of Debtor and Creditor Law.

## AS AND FOR A NINTH CAUSE OF ACTION FOR UNJUST ENRICHMENT

55.     Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "54" as if each were more fully set forth herein.

56.     The Defendant's actions has caused him to be unjustly enriched.

57.     By virtue of the foregoing, Plaintiff is entitled to judgment against the Defendant in the amount of $35,587.00.

**WHEREFORE,** the Plaintiff respectfully demands judgment as follows:

(A) On the First Cause of Action, Plaintiff is entitled to a judgment against the Defendant directing him to deliver the sum of $35,587.00 to the Trustee pursuant to section 542 of the Bankruptcy Code;

(B) On the Second Cause of Action, a declaratory judgment setting aside the transfer made as a fraudulent conveyance under Debtor and Creditor Law §273;

(C) On the Third Cause of Action,  judgment against the Defendant in the amount of $35,587.00 pursuant to Section 278 of Debtor and Creditor Law and section 550 of the Bankruptcy Code;  and

(D) On the Fourth Cause of Action, judgment against the Defendant in the amount of

8

$35,587.00 pursuant to Section 274 of Debtor and Creditor Law and Section 550 of the

Bankruptcy Code; and

 (E) On the Fifth Cause of Action, a declaratory judgment setting aside the transfer

made as a fraudulent conveyance under Debtor and Creditor Law §278;

 (F) On the Sixth Cause of Action, a judgment against the Defendant in the amount of

$35,587.00 pursuant to Sections 275 and 278 of Debtor and Creditor Law and Section 550 of

the Bankruptcy Code; and

 (K) On the Seventh Cause of Action, a declaratory judgment setting aside the transfer

made as a fraudulent conveyance under Debtor and Creditor Law §276;

 (L) On the Eighth Cause of Action,  judgment equal to attorneys' fees incurred in

connection with this action pursuant to Section 276-a of Debtor and Creditor Law;

 (M) On the Ninth Cause of Action, judgment against the Defendant in the amount of

$35,587.00 based upon unjust enrichment; and

 (N) together with such other and further relief as this Honorable Court determines

appropriate under the facts and circumstances herein.

Dated: Huntington, New York
   December 3, 2011

       The Law Offices of Avrum J. Rosen, PLLC
       Attorneys for Debra Kramer, Esq.

     BY: S/Fred S. Kantrow
       Fred S. Kantrow
       38 New Street
       Huntington, New York 11743
       631 423 8527
       Fkantrow@avrumrosenlaw.com

9

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------X       Case No. 10-46901-ESS
IN RE:
      **SHAHARA KHAN**

           Debtor.
-------------------------------------------------X

      **DEBRA KRAMER**
(Trustee of the Estate of Shahra Khan)

           Plaintiff,

-against-                                                              Adv. Pr. No. 11-1520-ess

      **TOZAMMEL H. MAHIA,**

           Defendant.
-------------------------------------------------X       **ARTICLE III-JURY TRIAL DEMANDED ON ALL ISSUES**


**DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES WITH COUNTER CLAIMS TO PLAINTIFF'S COMPLAINT**
**FOR**
**THE PURPOSE OF ARTICLE III ADJUDICATION AND JURY TRIAL THEREIN**


      Subject to the Withdrawal of Reference and without submitting to the jurisdiction of this Court, Defendant, Tozammel H. Mahia ("Mahia") files the following answer to the Complaint and asserts Counter Claims against the Trustee, Debra Kramer ("Kramer") for abuse of process and constitutional torts as follows:

A.     This answer must NOT be deemed as submission to the Jurisdiction of the Bankruptcy Court

B.     This Answer must NOT be deemed as waiver of right to adjudication by an Article III judge, rather the Answer is posited for the purposes of Article III adjudication and jury trial therein;

C.     This Answer with counter claims must NOT be deemed as request to the Bankruptcy Court for adjudication to claims of answering defendant, the same here are posited for Article III adjudication and jury trial therein; and

D.     Submission of this answer to this bankruptcy court is purely to meet the technical requirement of filing an answer. However, upon withdrawal, the defendants request that this Answer be deemed as proper.

1

# I.
## ANSWER

1.    Mahia admits, paragraphs numbered "2", "3", "9", "10", & 11 of the Complaint.

2.    In Answer to the allegation to Paragraphs numbered 4 and 5 it is denied that this court has jurisdiction over this dispute.

3.    Paragraph numbered 6 Complaint needs no response and is in admitted only to the extent that the Trustee is predicating causes of action on the said provisions.

4.    Paragraph numbered 7 of the Complaint is denied to the extent that not all aspects of the complaint are core proceeding.

5.    To the allegation/suggestion made in paragraph numbered "8" of the Complaint, it is stated that the said consent is immaterial and does not grant jurisdiction when it did not have any constitutionally.

6.    Paragraphs numbered 1, 12, 13, 14, 15, 16,  17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56 & 57 of the Complaint are denied.

# II
## AFFIRMATIVE DEFENSES

7.    Defendant by way of affirmative defense, Mahia pleads accord and satisfaction.

8.    Additionally, and/or alternatively, and by way of affirmative defense, Mahia pleads payment.

9.      Additionally, and/or alternatively, and by way of affirmative defense, Mahia pleads release.

10.     Additionally, and/or alternatively, and by way of affirmative defense, Mahia pleads res judicata.

11.     Additionally, and/or alternatively, and by way of affirmative defense, Mahia pleads judicial estoppel.

12.     Additionally, and/or alternatively, and by way of affirmative defense, Mahia pleads estoppel by contract.

13.     Additionally, and/or alternatively, and by way of affirmative defense, Mahia pleads quasi-estoppel.

14.     For lack of proper parties, this case is dismissible.

15.     The Complaint fails to state any claims upon which relief can be granted.

16.     Plaintiff's claims(Trustee alone)  are barred by the doctrine of unclean hands.

17.     Plaintiff's claims are barred by the doctrine of fair use.

18.     Plaintiff's claims are barred by the doctrine of lache.

19.     Plaintiff's claims are barred by the doctrine of acquiescence.

20.     Plaintiff's claims are barred by waiver.

21.     The Debtor did not have any real ownership.  The bank at the purchase of property inserted the name of the debtor as she was of mature age and defendant was not an adult at the

time of transaction. Debtor did not put any down-payment for the house. Debtor did not make any mortgage payment. Debtor did not have any money towards purchase of the house. Debtor did not make contribution. It was actually the defendant and his sister that took care and provided the necessities of their mother, debtor.

III

FIRST COUNTER-CLAIM AGAINST TRUSTEE FOR ABUSE OF PROCESS.

22.    Mahia incorporates by reference its responses to paragraphs 1-57 of the Complaint.

23.    Trustee conduct in bringing this action without basis, in fact or law has caused and continues to cause harm to defendant and the family including the mother, debtor herein. It is clear that the Trustee has used the law, without going into the details and merits of the positions adopted by the debtor and defendant regarding their finances. Trustee was under an obligation to make inquiries into the finances of the debtor and find in details the realities of transaction and family as a unit. However she did not do that, rather she chose this path to intimidate the family to extract a settlement from the helpless family. Section 341 provided ample opportunity for the trustee to examine the debtor, or she could have used other process to examine the debtor, however she deliberately did not do that, for a due diligence would have revealed that the debtor did not have any claims against the defendant and she would not have had the opportunity to sue a family and put them in fear. She wants money. Trustees in this District have started playing havoc with families. This law suit was not a recklessly filed one, but a deliberate attempt to put a family in fear, so that they could be forced to have settlement. Helpless debtor here is sick and has no money to engage lawyers and is entirely dependent on his son defendant for day to day living. Since the debtors or defendants like here have no financial wherewithal to hire attorneys, they are forced to settle eroding all rights and defenses. Trustee here, has abused her power and so did the counsel for this trustee—they have indulged in an act that is contemptible from all aspects.

24.    Debra Kramer Trustee, the plaintiff herein is further subject to the Court's inherent power to award costs and attorneys' fees as it sees fit and just.

4

25.     Given the egregious nature of Trustee's aforementioned conduct, the Court should do so in this instance, and award Mahia his costs and attorneys' fees.

26.     As a proximate result of Plaintiff's conduct, plaintiff has sustained damages in an amount to be determined at trial.

27.     In doing so the acts herein alleged, the plaintiff along with her counsel acted deliberately, willfully, maliciously, oppressively and with callous and intentional disregard of their duties under the bankruptcy code and subjected defendant to unjust and extreme hardship, knowing that her conduct was substantially likely to vex, annoy, and injure defendant. As a result of this conduct, defendant is entitled to punitive damages.

## SECOND COUNTERCLAIM AGAINST TRUSTEE FOR CONSTITUTIONAL TORTS

28.     Mahia re-alleges the allegation set forth in paragraphs 1 through 27 of this Answer with counterclaims as though fully set forth herein.

29.     The trustee deliberately hurts the family composition here, undertakes to sue the son defendant on behalf of mother debtor.   The trustee law suit without ascertaining the real facts erodes our constitutional principle—"the family unit does not simply co-exist with our constitutional system" but "is an integral part of it," for our "political system is superimposed on and presupposes a social system of family units, not just of isolated individuals.  No assumption more deeply underlies our society . . ."[1]  The debtor living has been put to a jeopardy[2]—the very son who is supporting his mother has been sued and this is a tortious interference with the family. The defendant-son is under religious duty to support his mother, the debtor here and now because of fear of this lawsuit, his spiritual duty to maintain his family has been negatively

---

[1] Heymann & Barzelay, "The Forest and The Trees: Roe v. Wade and its Crticis," 53 B.U.L.Rev. 765, 772-73 (1973). See Moore v. East Cleveland, 431 U.S. 494 (1977).
[2] The debtor is planning to join this law suit for raising independent counterclaims under Fifth Amendment, as her source of livelihood and shelter has been put to stake by the Trustee's deliberate action.

impacted.    The trustee ignore this, and decides to file this law suit, incurring expenses for the defendant already going through very tough times. Trustee did not do her homework. Had she done her homework, she would not or rather could not have brought this action. Trustee abused her powers. Wherefore we demand legal fees and punitive damages to be ascertained at the jury trial under an Article III tribunal.

WHEREFORE, defendant prays for relief as follows:

1.    Dismiss with prejudice the claims brought by Trustee, the plaintiff;

2.    Find that the claims alleged by defendant render this an "exceptional case" for the purposes of awarding costs and fees;

3.    Award actual and punitive damages on stated claims against plaintiff;

4.    For compensatory damages in an amount to be determined at trial;

5.    For an Order preliminary and permanently enjoining the plaintiff and their representative and agents, and each of them, from instituting and proceedings against defendants or similarly situated defendants (intra-family) in this district, unless the Trustee has filed an independent sheet along with the summons and complaint delineating the steps the trustee has undertaken to ascertain the facts alleged in the complaint and a minimum one page summary of arguments as to why there is a probable cause action for allegation in the complaint.[3] This is important to check abuse.  It is respectfully prayed that such requirement could be incorporated in the Local Rules of EDNY as applicable to the bankruptcy court.

---

[3] This is very important to check the abuse perpetrated by the trustees in this district, innocent parties have been sued and out of fear people settle, suppressing their defense or right to be left alone. This is especially more poignant when the family members are drawn in and such members are pitted against each other and these members have no financial capacity to engage legal help. There is a cry for help. Trustee abuse needs to be checked.

6.      Directing the United States Trustee Office to conduct an enquiry into filings of such lawsuits by the panel trustees and initiating such action including removal from the panel if any law suit was found to have been abusive.

Dated: January 31, 2012
New York New York 10013                           /s/karamvir S. Dahiya

                                                  _____
                                                  Karamvir S. Dahiya , Esq.



Law Office of Castiglia-Rubinstein and Associates
445 Broadhollow Road, CL 10
Melville, New York 11747
www.bestnyattorney.com
Phone: (631) 414-7516
Fax: (877) 884-5574

April 23, 2012

United States Bankruptcy Court
Eastern District of New York
271 Cadman Plaza East, Suite 1595
Brooklyn, New York 11201

Re:     DEBRA KRAMER AS TRUSTEE FOR THE ESTATE OF SHAHARA KHAN
        v. TOZAMMEL H. MAHIA
        Adversary Proceeding No.: 1-11-01520-ess

Dear Clerk:

Please be advised that the undersigned firm is proposed counsel for defendant Tozammel
Miah in the above referenced Adversary Proceeding.

As no answer has been filed to the counterclaim in the proceeding, we hereby withdraw
the counterclaim on behalf of the named defendant.

Thank you.

Respectfully,

Christine Rubinstein, Esq.


cc:     Via Email to ajrlaw@aol.com and fkantrow@avrumrosenlaw.com
        The Law Offices of Avrum J. Rosen, PLLC
        Attorneys for Plaintiff, Debra Kramer, Trustee
        38 New Street
        Huntington, New York 11743



Law Office of Castiglia-Rubinstein and Associates
445 Broadhollow Road, CL 10
Melville, New York 11747
www.bestnyattorney.com
Phone: (631) 414-7516
Fax: (877) 884-5574

April 24, 2012

United States Bankruptcy Court
Eastern District of New York
271 Cadman Plaza East, Suite 1595
Brooklyn, New York 11201

Re:    DEBRA KRAMER AS TRUSTEE FOR THE ESTATE OF SHAHARA KHAN
       v. TOZAMMEL H. MAHIA
       Adversary Proceeding No.: 1-11-01520-ess

Dear Clerk:

Please be advised that the undersigned firm is proposed counsel for defendant Tozammel
Miah in the above referenced Adversary Proceeding.

As no answer has been filed to the multiple counterclaims of the defendant in the
proceeding, we hereby withdraw the counterclaims on behalf of the named defendant.

Further, defendant reserves the right to modify and amend the previously filed Answer
and to interpose amended or additional defenses herein

Thank you.

Respectfully,

Christine Rubinstein, Esq.


cc:    Via Email to ajrlaw@aol.com and fkantrow@avrumrosenlaw.com
       The Law Offices of Avrum J. Rosen, PLLC
       Attorneys for Plaintiff, Debra Kramer, Trustee
       38 New Street
       Huntington, New York 11743

**341 MEETING OF CREDITORS – SHAHARA KHAN**

**August 27, 2010**

**[Kramer]** – This is a 341 meeting of Sahara Khan, case no. 10-46901, are there any creditors of the debtor present?  I have received no response.  Deborah Kramer, elected trustee and the request is for Bengali Translator.

**[Interpret Talk]** – Thank you for calling interpret talk.  (ringing) Hi this is Cara can I have the location?

**[Kramer]** Brooklyn.

**[Interpret Talk]** And your last name?

**[Kramer]** Kramer.

**[Interpret Talk]** And the language?

**[Kramer]** Bengali.

**[Interpret Talk]** I'm sorry?

**[Kramer]** Bengali.

**[Interpret Talk]** Bengali – One moment please (wait music)

**[Interpreter]** Bengali interpreter 217211 on the line.  Hello.

**[Kramer]** Hello.  Yes, hi this is a meeting of creditors in bankruptcy case I need to swear you in.

**[Interpreter]** Okay

**[Kramer]** Can you hear me?

**[Interpreter]** Yes, I do.

**[Kramer]** If you can please raise your right hand?  No, no, it's to you I need to swear you in as translator

**[Interpreter]** Ok.

**[Kramer]** Are you on speakerphone?

**[Interpreter]** No, I am not.

**[Kramer]** Ok, you sound a little far away, that's why.  Alright, please raise your right hand.  Do you swear to tell the truth and to faithfully discharge the duties of the translator and to translate what the debtor says?

**[Interpreter]** Yes, I do.

**[Kramer]** Ok, if you could please state your first name and id number for the record?

**[Interpreter]** My first name is M-A-T-H-U and my ID number is 217211.

**[Kramer]** Thank you very much.  And the first Question being asked of the debtor is are you being represented by an attorney?

**[Khan]** Yes

**[Kramer]** I need your appearance.

**[Benta]** Oh, I am sorry. I am sorry Maryann Benta of Counsel for Eugene Banta.

**[Kramer]** I have your NYS identification card and I have your SS card and the number on the SS car matches on the notice of meeting of creditors so I am returning it to you.  Thank you very much. If you would please raise your right hand.  Do you swear to tell the truth, nothing but the truth, so help you god?

**[Khan]** Ok, I do.

**[Kramer]** Ok, you can lower your hand.  If you can pleases state your name and current address for the record.

**[Khan]** My name is Shahara Kahn.  102nd street 11 avenue.

**[Kramer]** Where is that?

**[Khan]**  Ozone Park.

**[Kramer]** Ozone Park, New york?

**[Khan]**  Yes.

**[Kramer]** Have you read the bankruptcy info sheet provided by United States trustee?

**[Khan]**  Yes.

**[Kramer]** Did you sign the petition schedule statement and related documents filed with the court?

**[Khan]**  Yes.

**[Kramer]** Did you read those documents before you signed them?

**[Khan]**  Yes.

**[Kramer]** I am going to show you a signature on the petition, please tell me if this signature is yours.  Is this your signature?

**[Khan]**  Yes.

**[Kramer]** The petition is dated October 13, 2009 but filed on July 22, 2010, is the information contained in the petition true and accurate as of the filing date of the petition?

**[Khan]**  Yes.

**[Kramer]** Are you personally familiar with the information contained in the petition schedule statement and related documents?

**[Khan]** Yes.

**[Kramer]** To the best of your knowledge, is the informati0on contained in those documents true and correct?

**[Khan]** Yes.

**[Kramer]** Are there any mistakes in the petition?

**[Khan]**  No.

**[Kramer]** Is there any info left out of the petition?

**[Khan]** No. Everything is included.

**[Kramer]** Do you wish to make any changes to your petition at this time?

**[Interpreter]** Ma'am can you repeat it please?

**[Kramer]** Yes, do you wish to make any changes to your petition at this time?

**[Khan]** No.

**[Kramer]** Have you listed all of assets on the schedules?

**[Khan]**  Yes.

**[Kramer]** Have you listed all of your creditors on the schedules?

**[Khan]** Yes.

**[Kramer]** Have you ever filed for bankruptcy before this time?

**[Khan]** No.

**[Kramer]** Do you have any domestic support obligations?

**[Khan]** No.

**[Kramer]** Are you currently working?

**[Khan]** No, I am sick.

**[Kramer]** And umm…is the copy of the tax return that you provided a true copy of the most recently filed tax return?

**[Khan]** Yes.

**[Kramer]** Have you ever owned or now own a house?

**[Khan]** No.

**[Kramer]** Have you ever owned or now own any undeveloped land, time share, cooperative, or condominium?

**[Khan]** No.

**[Kramer]** Has your name ever appeared on any deed or mortgage with respect to any property?

**[Khan]** No

**[Kramer]** I'm looking at a copy of a deed dated April 5, 2007 . . .

**[Benta]** If you give her the address, I am sure she remember what the situation is. . .

**[Kramer]** 2007, I am going to show it to you and to your counsel . . .

(interruption by someone trying to talk in the background)

**[Kramer]** Excuse me, no no. This is her examination; we cannot have someone in the audience interrupt. Ok?  Ummm. What is your name sir?

**[3Rd Party]**  Mahia.

**[Kramer]** Mahia?  Are you related to her?

**[3Rd Party]**  Yes.

**[Kramer]** In what way?

**[3Rd Party]** Yes, I am the husband.

**[Kramer]** You are the husband?  Ok.  I am going to show you a copy of a deed dated April 5, 2007 to you and to your counsel and it is regarding the transfer of an ownership interest in a house located at 87-27 110th Street, Richmond Hill, New York, if you can please take a look at this deed and tell me if the signature on the bottom of the deed is yours?

**[Khan]** Yes.

**[Kramer]**  Ok did you receive any money from the sale of the house located at 87-27 110th Street, Richmond Hill, New York.

**[Khan]** No.

**[Kramer]** Did any of the other owners of the house receive any money from the sale of the house?

**[Khan]** Landlord? I don't know.

**[Kramer]** Not the landlord, did any of the owners, owners of the house located at 87-27 110th Street, Richmond Hill, New York, receive any money from the sale of the house?

**[Khan]** It's not my house.  My daughter and son were there.

**[Kramer]** Who is Shabsim Rimi?

**[Khan]** My daughter.

**[Kramer]** And who is Tozemal Mahia?

**[Khan]** My son.

**[Kramer]** I want to get a copy of the HUD statement.

**[Benta]** Ok, I do have some other stuff there ummm form 4797, I will put down the HUD needed (something inaudible)

**[Kramer]** Was this given to me already?

**[Benta]** I don't know if it was, it should have been.

**[Kramer]** I do want a copy of the HUD.

**[Benta]** Alright.

**[Kramer]** Has your name ever appeared on any deed with respect to another property?

**[Khan]** No.

**[Kramer]** And did your son and daughter receive money from the sale of that house?

**[Khan]** No.

**[Benta]** She doesn't know.

**[Kramer]** We need to take a look at the HUD.

**[Benta]** Ok.

**[Kramer]** Who is Farhana Choudury?

**[Khan]** My daughter in law – my sons wife.

**[Kramer]** And who lived at the house, at umm?

(Pause)

**[Kramer]** Hmm, who lived at the house located at 87-27 110th Street, Richmond Hill, New York?

**[Khan]** Recently no body lives there.

**[Kramer]** Before that though, who lived there?

**[Khan]** Everybody lived there, my son, my daughter.

**[Kramer]** Have you ever provided any money for the purchase of any real property, undeveloped land, time share, cooperative, or condominium?

**[Khan]** No.

**[Kramer]** Have you ever paid any mortgage, real property taxes, or property insurance?

**[Khan]** No.

**[Kramer]** Have you transferred any property in the past year?

**[Khan]** No.

**[Kramer]** Have you transferred any property in the last 6 years other than the interest in the house on 110th street?

**[Khan]** No.

**[Kramer]** Does anyone hold any property belonging to you?

**[Khan]** No.

**[Kramer]** Do you have a claim against anyone or any business for personal injury?

**[Khan]** No.

**[Kramer]** Do you have a claim against anyone or any business for loss of property as a result of fire, theft, or otherwise?

**[Khan]** No.

**[Kramer]** Have you sued or are you thinking of suing anyone?

**[Khan]** No.

**[Kramer]** Are you entitled to receive any money or property or insurance proceeds or inheritance as a result of someone's death?

**[Khan]**  No.

**[Kramer]** Does anyone owe you money?

**[Khan]**  No.

**[Kramer]** Do you have a bank account?

**[Khan]**  no.

**[Kramer]** When did you last have bank account

**[Khan]**  In 2005.

**[Kramer]** When was the last time you used your credit card?

**[Khan]**  2008

**[Kramer]** Did you transfer any balances from one credit card to another in the past 6 months?

**[Khan]**  No.

**[Kramer]** Did any friend or relative loan you money that you repaid in the last 12 months?

**[Khan]**  No.

**[Kramer]** Have you loaned any money to a personal business in the last 12 months?

**[Khan]**  No.

**[Kramer]** Has any personal business repaid you a loan to you after you filed for bankruptcy?

**[Khan]**  No.

**[Kramer]** Have you paid any creditors more than $600 in the last 6 months?

**[Khan]**  No.

**[Kramer]** When you filed for petition did you have any cash on hands or any savings bank?

**[Khan]**  No.  Just $100 or $150 in the bank

**[Kramer]** Did you have any stocks or bonds?

**[Khan]**  No.

**[Kramer]** Did you have any U.S. savings bonds?

**[Khan]**  No.

**[Kramer]** Did you have any mutual funds or certificates of deposit?

**[Khan]** No.

**[Kramer]** Did you have a safe deposit box in your name or anyone else's name?

**[Khan]** No.

**[Kramer]** Do you own a car?

**[Khan]** No.

**[Kramer]** Did you win any lottery tickets?

**[Khan]** No.

**[Kramer]** Are you entitled to receive any money or property as a result of divorce?

**[Khan]** No, there is no divorce.

**[Kramer]** Do you have any ownership interest in the business in the past 6 years?

**[Khan]** No.

**[Kramer]** Have you engaged in any business in the last 6 years?

**[Interpreter]** Can you repeat ma'am.

**[Kramer]** Have you operated any business in the last 6 years?

**[Khan]** No.

**[Kramer]** I'm looking into the value for the transfer of the house because if you look at what you just gave me, the tax returns, the house sold for like 700 and…the house sold for $763,000 In 2007 and this is…this says gross sales price of 381,500, I don't know if it is for the same house

**[Benta]** Oh, I think that's both of them. It was the two of them together, is that it?

**[Kramer]** I don't know.

**[Benta]** I think that is what it was – its half for each couple.

**[Kramer ]**Oh, half for each.

**[Kramer]** Ok so I also need the 2007 tax returns as well

**[Benta]** 2007 tax returns?

**[Kramer]**  2007 tax returns, federal and state and I will let you know if there are any other documents, but you know, we will look into the transfer.  Umm so let me put this over to October 7, 2010 of 3pm..umm call before.

**[Benta]** 3pm

**[Kramer]** Yea call before I may have other questions depending on the documents so she may be coming back.

**[Benta]** Do you have phone number?

**[Kramer]** Sure, its 56-482-6300.

**[Kramer]** Alright we are adjourning the meeting for October 7, 2010 3pm and you will call before to confirm if she needs to appear that day and provide the documents beforehand.

**[Benta]** Ok thank you Ms. Translator.