**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

--------------------------------------------------------X Case No. 13-CV-03079

IN RE:

    **SHAHARA KHAN**

                  Debtor         Chapter 7 Case No. 10-46901

-------------------------------------------------------X

**DEBRA KRAMER, PANEL TRUSTEE**
**Of ESTATE OF SHAHARA KHAN**

                  Plaintiff

v.

TOZAMMEL H. MAHIA

               Defendant    Adv. Pro. No. 11-01520

-------------------------------------------------------X

**DAHIYA LAW OFFICES LLC**
**KARAMVIR DAHIYA**
               Appellants

v.

**DEBRA KRAMER, PANEL TRUSTEE**     **ORAL ARGUMENTS RQUESTED**

               Appellee

-------------------------------------------------------X

BRIEF MEMORANDUM IN SUPPPORT OF APPEAL

KARAMVIR DAHIYA, ESQ.
DAHIYA LAW OFFICES LLC
75 MAIDEN LANE SUITE 506
NEW YORK NY 10038
TEL: 212 766 8000
FAX: 212 766 8001

## Cases

*Ball v. A.O. Smith Corp.*, 451 F.3d 66, 70 (2d Cir. 2006) ........................................................... 14

***Bellefonte Reins. Co. v. Aetna Cas. and Sur. Co.*, 903 F.2d 910, 912 (2d Cir.1990)** ...................................... 6

*Brown v. Mitchell*, 827 F.2d 1219, 1221 (8th Cir. 1987) .......................................................... 12

*Buckley v. Valeo*, 424 U.S. 1 (1976) ..................................................................................... 6

*Carey v. Piphus*, 435 U.S. 247 (1978) ................................................................................... 21

*Chambers v. NASCO, Inc.*, 501 U.S. 32(1991) ........................................................................ 14

*Cohoes Industrial Terminal, Inc. v. Latham Sparrowbush Associates* ........................................ 13

*Commodity Futures Trading Commission v. Schor*, 478 U.S. 833 (1986) ................................... 6

**Crowell v. Benson, 285 U.S. 22 (1932)** .................................................................................. 5

*Edmond v. U.S.*, 520 U.S. 651 (1997) ..................................................................................... 13

*Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F.Supp. 2d 458 ............................................ 22

*Frost v. Railroad Comm'n*, 271 U.S. 583 (1926) ..................................................................... 7

*Glidden Co.* v. *Zdanok*, 370 U. S. 530 (1962) ........................................................................ 6

*Gower v. Farmers Home Admin.*, 899 F.2d 1136 (11th Cir. 1990) .......................................... 12

*Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989) .......................................................... 6, 9

*Hanna v. Plumer*, 380 U.S. 460 (1965) .................................................................................. 7

*Hudson Motors Partnership v. Crest Leasing Enterprises*, 845 F. Supp. 969, 978 (E.D.N.Y. 1994) ........ 13

*In re Becker's Motor Transp., Inc.*, 632 F.2d 242 (3d Cir. 1980) ............................................. 12

**In re Colony Hill Assoc., 111 F.3d 269, 273 (2d Cir. 1997)** ..................................................... 6

*In re DPH Holdings Corp*, 448, F. App'x 134, 136 (2nd Cir. 2011) ............................................. 9

*In re Ennis*, 178 B.R. 192, 197 (Bankr. W.D. Mo. 1995) .......................................................... 12

*In re Howard's Appliance Corp.*, 874 F.2d 88 (2d Cir. 1989) .................................................. 29

*In re Men's Sportswear, Inc.*, 834 F.2d 1134 (2d Cir.1987) ..................................................... 8

*In re Quality Holstein Leasing*, 752 F.2d 1009 (5th Cir.1985) ................................................. 29

*In re Yagman*, 796 F.2d 1165, 1187 (9th Cir. 1986) ............................................................... 28

*In re: Eerie World Entertainment*, 2006 Bankr. Lexis 770 ...................................................... 18

*Inteli-Check, Inc. v. Tricom Card Technologies, Inc.*, 2005 WL 3533153 * 10 (E.D.N.Y. 2005) ............. 22

*IRS v. Brickell Inv. Corp.*, 922 F.2d 696 (11th Cir. 1991) ....................................................... 12

*Jones v. Bank of Santa Fe*, 40 F.3d 1084 (10th Cir. 1994) ...................................................... 12

*Klass v. Frazer*, 290 F. Supp. 2d 425 (S.D.N.Y. 2003) ............................................................ 15

*Landis v. N. Am. Co.*, 299 U.S. 248, 256 (1936) ..................................................................... 11

*Lauber v. Gremli*, 179 B.R. 712 (Bankr. M.D. Fla. 1995) ....................................................... 12

*Lauf v. E.G. Shinner* & Co. 303 U.S. 323 (1938) .................................................................... 7

*Martin v. Hunter's Lessee*, 14 U.S. 304 (1816) ..................................................................... 7

*Memphis Community School Dist. v. Stachura*, 477 U.S. 299 ................................................... 21

*Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 816(1986) ............................. 9

**Ng Fung Ho v. White, 259 U.S. 276 (1922)** ........................................................................... 5

*Perroton v. Gray*, 958 F.2d 889 (9th Cir. 1992) .................................................................... 12

*Regensteiner Printing Co. v. Graphic Color Corp.*, 142 B.R. 815, 818 (N.D. Ill. 1992) ................ 12

*Revson v. Cinque*, 221 F.3d 71 (2d Cir. 2000) ....................................................................... 22

*Romeo v. Sherry*, 774 F.2d 570, 574 (2d Cir. 1985) ..............................................................13

*S.A. v. Nordberg*, 492 U.S. 33 (1989) .................................................................................9

*Silverman v. A-Z RX LLC (In re Allou Distribs.)*, 2012 WL 6012149 .......................................8

*States v. Will*, 449 U.S. 200 (1980) ....................................................................................6

*Stern v. Marshall*, 131 S.Ct. 2594 (2011) .......................................................................6, 8

*Sussman v. Bank of Isreal*, 154 F.R.D. 68, 71 n.2 (S.D.N.Y. 1994) ......................................28

**Thomas v. Union Carbide, 473 U.S. 568 (1985)** ...........................................................5, 6

*U.S. v. Int'l Broth. Of Teamsters*, 948 F.2d 1338 (2d Cir. 1991) ..........................................14

*U.S. v. Whiting Pools, Inc.*, 462 U.S. 198 (1983) ...............................................................29

*Veneziano v. Pipeline Fabrication*, 238 F.Supp.2d 683 .................................................22, 26

*Veneziano v. Long Island Pipeline Fabrincation & Supply Corp.*, 238 F.Supp. 2d 683, 693 (D.N.J. 2002)14

*Zaldivar v. City of Los Angeles*, 780 F.2d 823, 831 (9th Cir. 1986) ......................................28

## Statutes

11 U.S.C. § 341 ...................................................................................................................3

11 U.S.C. § 548 ...................................................................................................................9

28 U.S.C. § 151 ...........................................................................................................10, 12

28 U.S.C. § 157 ...................................................................................................................6

28 U.S.C. § 1927 ..................................................................................................11, 12, 13, 14

28 U.S.C. § 451 .................................................................................................................11

28 U.S.C. §1927 ...................................................................................................................4

*In re Memorial Estates, Inc.*, 950 F.2d 1364, 1369-70 (7th Cir. 1991) .................................12

*Rates Technology, Inc. v. Mediatrix Telecom, Inc.*, 2012 WL 948661 (E.D.N.Y. 2012) ...........28

U.S. Const. art. III, § 1 .......................................................................................................10

# TABLE OF CONTENTS

1. STATEMENT OF THE CASE AND FACTS............................................1

2. APPLICABLE STANDARD OF REVIEW.............................................3

3. JURISDICTIONAL ISSUES..............................................................4

4. REFERRAL ORDER....................................................................5

5. SUBJECT MATTER JURISDICTION.................................................6

6. INHERENT JUDICIAL POWERS.......................................................7

7. COURTS OF U.S. UNDER 1927......................................................9

8. APPOINTMENT CLAUSE VIOLATION.............................................10

9. APPELLANT SHOULD NOT HAVE BEEN SANCTIONED

    UNDER 1927 OR THE COURTS INHERENT POWER.........................11

10. COLORABLE CLAIM...............................................................12

11. ABUSE OF PROCESS................................................................13

12. SUBJECTIVE BELIEF...............................................................15

13. CLEARLY ERRONEOUS FINDINGS..............................................17

14. CONSTITUTIONAL TORT..........................................................18

15. BAD FAITH..........................................................................19

16. MULTIPLICATION OF PROCEEDINGS...........................................24

17. COURT DID NOT CONSIDER ABILITY TO PAY................................24

18. LAW FIRMS SHOULD NOT BE SANCTIONED UNDER 1927..................25

19. CONCLUSION.......................................................................25

## I.   STATEMENT OF THE CASE AND FACTS

The Debtor, mother of the Defendant Mahia, sought bankruptcy protection under Chapter

7 of Title 11 ("Bankruptcy Code") on July 22, 2010. Debra Kramer ("Kramer") the plaintiff was

appointed trustee in this case. During § 341 meeting and in her petition the Debtor declared that

she has no house, no claims, no income (other than $1,290 of husband income) and that she had

her name on the property deed, located at 87027 110th street, Richmond Hill, NY 11418, which

was sold on April 5th, 2007. During the 341 meeting, Debtor's husband tried to explain to

Kramer about the house, but he was not allowed to speak. In that crucial 341 meeting, Kramer

failed to investigate the details of ownership and transaction. Debtor's attorney gave all material

information about the house, including tax information. Kramer possessed all statutory tools

under Federal Rules of Bankruptcy Procedure, such as, Rule 2004 examination, another 341

meeting with the Debtor to explore the sale of the house and Debtor's interest. But, at the 341

meeting, Kramer failed to "orally examine the debtor to ensure that the debtor in a case under

chapter 7 of this title is aware of . . . (2) debtor's ability to file a petition under a different chapter

of this title," including reorganization under chapter 13. 11 U.S.C. § 341.

On December 3rd, 2011, Kramer commenced an adversary proceeding, suing Mahia,

claiming that Debtor had one third (1/3) interest in the house which was sold. Mahia retained the

appellant and paid $250.00 as he could not afford more. Appellant reviewed petition, Debtor's

tax returns, her husband's, son Mr. Mahia and daughter and the mortgage papers. After meeting

family members Appellant found Debtor did not: (1) contribute to the down payment or

mortgage on the house; (2) depended on Mahia for shelter and livelihood; (3) and claimed no

mortgage payment interest deductions on her tax returns, which Mahia did. Having done due

diligence, appellant discovered that she was only a bare legal title holder at the time of the

1

purchase of the house and its sale in 2007 and that she had no interest or claim in the property. After having investigated the facts, appellant concluded that this was a bad faith lawsuit filed solely to extort money from a helpless family. Had Trustee conducted similar due diligence and have spoken to the debtor, this lawsuit would not have commenced.

In appellant's experience, it is a common practice for Trustees to file premature lawsuit without reasonable investigation. Debtors and her family members cannot afford to fight because they are already in bankruptcy; and attorney representing the debtors seldom assist Debtor's family members because adversary proceeding is a distinct and separate plenary proceeding. Defenses make no difference if they cannot afford legal representation. Having realized the impact of this abuse on the families, appellant brought "abuse of process" and Bivens constitutional tort claims. Also, Rule 13 of the Federal Rules of Civil Procedure provide procedural ground to assert the counterclaim because the lawsuit by trustee was unjustified, and in bad faith without color of right [house not being property of estate] and with the sole object to extract money from the family. On March 24, 2012, Kramer filed a motion for sanctions under 28 U.S.C. §1927. On April 23rd, 2012, Appellant filed his first affirmation in opposition to the sanctions motion where he raised structural issues and Appointment Clause. Further he pointed out that Kramer brought the underlying adversary proceedings in bad faith, whereas appellant brought counterclaims in good faith, to develop law to protect families frequently targeted by Trustees. The bankruptcy judge scheduled an evidentiary hearing for June 13, 2009. On June 13, 2012, the evidentiary hearing was adjourned to July 16, 2012. Wayne Greenwald, Esq. filed notice of appearance on behalf of the Appellant and the hearing was adjourned to September 6, 2012. There was no settlement, as a material term of the proposed settlement was not disclosed to the appellant. Kramer pushed for a settlement to restrict appellant's ability to represent clients.

2

Thereafter, the Defendant asked appellant to represent him again. He said that Rubinstein pressured him to settle the case, and that Kramer threatened to take this case to the District Attorney for criminal prosecution.  Mahia further stated that his parents and other family are in deep fear and they want to be protected. In all hearings before the bankruptcy judge, appellee mainly argues that appellant frequently files motions to withdraw the reference to gain leverage. Bankruptcy judge herself phrased the controversy around abuse of process issue, because she knew that the litigants are entitled to an Article III court hearing. Appellant was punished for: (1) asserting the rights of his clients to an Article III hearing and not submitting to the bankruptcy judge's jurisdiction; (2) for challenging bankruptcy judge's power to decide issues of private rights; and (3) for asserting that she violated appointment clause.

**II.**     **APPLICABLE STANDARD OF REVIEW** Federal courts have jurisdiction to hear appeals from final judgments, orders, and decrees of bankruptcy judges. Fed. R. Bankr.P. 8013. Besides statutory appeal, appellant is entitled to a *de novo* hearing for two reasons: (1) "jurisdictional facts" - facts on which the bankruptcy court's jurisdiction depends; and (2) "constitutional facts" - facts on which the adjudication of constitutional rights depends.  The appellant requested to be heard by an Article III court and did not consent to a hearing before bankruptcy judge. Thus, Article III and Due Process Clause require independent judicial decision based on *de novo* hearing.  *Crowell v. Benson*, 285 U.S. 22 (1932), *Ng Fung Ho v. White*, 259 U.S. 276 (1922). Also, the appellant has an independent right to adjudication in a proper forum. *Thomas v. Union Carbide*, 473 U.S. 568 (1985). Under 28 U.S.C. 1927, the Bankruptcy Judge used judicial powers of the U.S. to sanction the Appellant and "inherent powers" a core aspect of plenary court as a "court of record." This appeal raises question of statutory interpretation, constitutional adjudication, institutional separation of power and construction of Article III, thus

3

requiring 'de novo review'. Here, the bankruptcy judge's "assumed discretion" takes on the character of ruling of law. *In re Colony Hill Assoc.,* 111 F.3d 269, 273 (2d Cir. 1997), *Bellefonte Reins. Co. v. Aetna*, 903 F.2d 910, 912 (2d Cir.1990).

**III. JURISDICTIONAL ISSUES-** The Bankruptcy Judge did not have Subject Matter Jurisdiction over the Adversary Proceeding. Established precedent forbids bankruptcy court from adjudicating fraudulent conveyance actions, tort and constitutional issues. *First,* transferring "any or all cases" via 28 U.S.C. § 157 ("157") does not fall within one of the "exceptional" categories identified by the *Northern Pipeline* plurality. *Northern*, 458 U.S. 50 (1982). *Second,* bankruptcy judges are not adjuncts to the district courts. *Stern v. Marshall,* 131 S.Ct. 2594 (2011). *Third,* 157 fails the balancing test as applied in *Commodity Futures Trading Commission v. Schor*, 478 U.S. 833 (1986). *Fourth*, adversary proceedings and previously asserted counterclaims do not relate to an integrated regulatory scheme of public rights doctrine. *Thomas,* 473 U.S. 568. *Fifth*, defendant's Seventh Amendment right to a jury trial is not subject to transfer to non-article III judges. *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989). *Sixth*, when a party invokes his right to be heard by an independent Article III judge, he is not subject to bankruptcy judge's jurisdiction, because it violates his due process rights. *U.S. v. Will*, 449 U.S. 200, 217 -218 (1980); *Buckley v. Valeo,* 424 U.S. 1, 122 (1976). *Seventh*, because litigant is entitled to adjudication in a proper forum, vesting the bankruptcy judge with Article III judicial power violates the Appointment Clause. *Glidden Co. v. Zdanok,* 370 U. S. 530, 370 U. S. 533 (1962). *Eighth*, such transfer of power, under § 158, violates Separation of Powers doctrine. The parties cannot withdraw such referral to the bankruptcy court, because the Bankruptcy Code only allows discretionary withdrawal under 157 (d), and mandatorily under limited circumstances. *Ninth*, Article III does not let Congress deprive the Article III court from deciding matters of

4

private rights. *Martin v. Hunter's Lessee*, 14 U.S. (1. Wheat) 304 (1816). When 157 unintentionally burdens the right to be heard by an Article III judge, that calls for strict scrutiny. *Frost v. Railroad Comm'n,* 271 U.S. 583 (1926). Though 157 is casted as procedural, it abridges important rights, thus it is not procedural. Constitution allows Congress to make procedural rules for Article III courts to apply. *Hanna v. Plumer*, 380 U.S. 460 (1965). The power of the Congress "to define and limit the jurisdiction of the inferior courts of the U.S." is unquestionable. *Lauf v. E.G. Shinner* & Co. 303 U.S. 323 (1938). This procedural power cannot infringe on the substantive rights of an Article III court and its values. Having to suffer default referral to the bankruptcy judge and then expecting the litigant to prove special case and or pass the discretionary test is denial of an important right and violates Fifth Amendment. Once this court takes on a case, it cannot be transferred. Congress cannot waive powers conferred by the Constitution upon other, equal and independent, branches.

**IV. REFERRAL ORDER:** Since bankruptcy courts do not have distinct jurisdiction, all cases are deemed referred by the district court. The August 28, 1986 "Referral Order" signed by Chief Judge Hon. Carol Bagley Amon and qualified by the December 5, 2012 "Order" does not cure the infirmities of "The Bankruptcy Reform Act of 1978" (Pub.L. 95–598,92 Stat. 2549, Nov. 1978) ("1978 Act") (held unconstitutional in *Northern*, 458 U.S. 50 (1982)) as amended by Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub. L. No. 98-353, 98 Stat. 333 (1984) (BAFJA). The 1984 BAFJA amendments did not change the scope of bankruptcy jurisdiction, and is still defined by the same statutory grant of the 1978 Act. The "Referral Order" does what was prohibited by the Supreme Court. It assigns private rights issues to a non-Article III court. District referral cannot be legitimate if Congress could not do so. 157 seemingly provides constitutional allowance *i.e.* withdrawal of reference. 157 (d). But, such withdrawal is

5

misleading, because it is not mandatory, except for "activities affecting interstate commerce." *Id.*
Permissive withdrawal gives district courts tremendous discretion. But, constitutional obligation
to decide issues cannot be left to the discretionary scope of the court. Fraudulent conveyance
actions, state common law torts and other constitutional related matters are private right issues ,
thus indirectly and coercively to be decided by non-Article III judges. "Constitutional
requirements for the exercise of the judicial power must be met at all stages of adjudication, not
only on appeal, where the court is restricted to consideration of law, as well as the nature of the
case as it has been shaped at the trial level." *Northern,* 458 U.S. 50 (1982).

**V. SUBJECT MATTER JURISDICTION:** Here, the bankruptcy judge improperly adjudicated
the state law causes of action, abuse of process and federal claims of constitutional tort. *Stern's*
decision held unconstitutional for Congress to give non-Article III judges the authority to issue a
final judgment over the state law counterclaim. But, the bankruptcy judge's own precedent
carves out an exception. *Silverman v. A-Z RX LLC,* 2012 WL 6012149. She believes she had
jurisdiction, because the underlying trustee's action was under 11 U.S.C. 544, and it was the
bankruptcy law that provided the cause of action. But, § 544 does not provide an independent
basis for jurisdiction. Federal statutory scheme may facilitate it, but it does not create a cause of
action. *In re Men's Sportswear, Inc.,* 834 F.2d 1134, 1138 (2d Cir.1987). The mere fact that
federal law allows state based causes of action does not mean they would lose their character as a
state claim. Supreme Court specifically admonishes such approach: "For if a statutory cause of
action, such as respondent's right to recover a fraudulent conveyance under 11 U.S.C. §
548(a)(2), is not a "public right" for Article III purposes, then Congress may not assign its
adjudication to a specialized non-Article III court lacking "the essential attributes of the judicial
power." Further, " [i]f a statutory right is not closely intertwined with a federal regulatory

6

program Congress has power to enact, and if that right neither belongs to nor exists against the

Federal Government, then it must be adjudicated by an Article III court." *Granfinanciera, S.A. v.*

*Nordberg*, 492 U.S. 33 (1989). The judge misconstrues, *In re DPH Holdings Corp,* 448, F.

App'x 134, 136 (2nd Cir. 2011), which states the contrary "[w]hether a proceeding is core or non-

core is beside the point for determining jurisdiction because "[t]hat allocation [of core and non-

core] does not implicate questions of subject matter jurisdiction." *Id.* at 2607. § 544 (b) alone

does not provide federal subject matter or question jurisdiction. *Merrell Dow Pharmaceuticals,*

*Inc. v. Thompson,* 478 U.S. 804, 816(1986). Federal *jurisdictional* statute, standing on its own,

cannot be the law on which Article III question jurisdiction is premised. *Mesa v. California* 489

U.S. at 136. Framers intended Article III as both the source and limits of the federal judicial

power. Moreover, Article III seems to include only a very narrow class of federal "protective"

jurisdiction over state-law claims, through the Diversity Clause. Article III was meant to restrain

the expansive power of Article I power. Article I can't be a vehicle for the Congress to abrogate

state autonomy over the development and administration of state law.

**VI. INHERENT JUDICIAL POWERS:** Unlike District Courts, Bankruptcy courts do not have

inherent powers and they are not delegable. Bankruptcy judge cannot use "inherent powers", as

it belongs exclusively to the Article III courts. "[T]he judges, both of the supreme and inferior

courts, shall hold their offices during good behavior, and shall, at stated times, receive for their

services, a compensation, which shall not be diminished during their continuance in office." U.S.

Const. art. III, § 1. A crucial feature of Article III is the structural parity of all Article III judicial

officers - Supreme Court justices and lower federal judiciary - all are appointed by the President

and confirmed by the Senate and all enjoy life tenure, and the guarantee against diminution of

7

salary. If Congress creates inferior courts, it must allocate jurisdiction equally among federal courts, but bankruptcy courts are not of this genre, as they do not have inherent powers.

In this case, the bankruptcy judge used inherent powers, which is sourced in the equitable power of the court. But implied powers or "inherent powers" is Article III; § 2, "[t]he judicial power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the U.S.," which in turn depends upon § 1 ordaining that the "judicial power of the U.S. shall be vested" in federal courts. Whereby combined reading of Article III §s shall mean to be repository of the powers related to judicial power exercised in law and equity. This mandate of Article III is not congressional grace, but self-executing. Further, pursuant to § 2, judicial power pertaining to cases in law and equity inheres in these article III courts by virtue of their being "judicial' bodies. Constitution enumerates and limits governmental power and inherent powers are not assignable. Further very important element of "inherent powers" missing from the bankruptcy court is that it is not a court of record. At common law, only courts of record have an inherent power to punish for contempt. The 1978 Act created an adjunct of the district court - a new court of record known as the U.S. Bankruptcy Court. Former 28 U.S.C. § 151. The U.S. Bankruptcy Courts were to be courts of record with the power of a court of law, equity and admiralty. Former 28 U.S.C. § 1481. This set up, later declared unconstitutional by *Northern Pipeline*, could have bankruptcy judges "inherent powers." Thus, bankruptcy courts are not vested with Article III "inherent powers" and cannot create this power on their own.

Inherent power ensures justice's "suppleness of adaptation to varying conditions." *Landis v. N. Am. Co.*, 299 U.S. 248, 256 (1936). The Framers intended to ensure independence of the court, so that it would not become a tool to the external pressure of other branches and that none of the three branches "possess directly or indirectly, an overruling influence over the others in

8

the administration of their respective powers." THE FEDERALIST No. 48, at 250 (James

Madison) (Garry Will ed., 1982). Inherent powers of the court are borne from it being a court

exercising judicial under this article III to assure independence and competence of the federal

judiciary—appointment, confirmation, tenure and salary guarantees, and impeachment—are the

same for all Article III judges, supreme and inferior—but not bankruptcy judges. Thus,

Bankruptcy judges are not article III judges, thus cannot be have inherent powers.

**VII. COURTS OF U.S. UNDER 1927:** Only Courts of U.S. have the power under 28 U.S.C. §

1927 ("1927") to impose sanctions. Bankruptcy Court is not a "court of U.S.." 28 U.S.C. § 451

Legislative history of the bankruptcy code, 1978 and its subsequent amendment is revealing.

The 1978 Code was enacted on November 6, 1978, and codified in scattered §s of titles 11 and

28 of the Code. The 1978 Code amended the definition of "court of the U.S." contained in 28

U.S.C. § 451 to expressly include bankruptcy courts and bankruptcy judges. But, in 1982, the

Supreme Court held, in *Northern Pipeline*, that pervasive jurisdictional grant to the bankruptcy

court was an impermissible delegation of Article III powers to a non-Article III court. Further,

Congress enacted the 'Bankruptcy Amendments and Federal Judgeship Act of 1984' (BAFJA) in

1984 and restructured the title 28 jurisdictional scheme of the US bankruptcy courts making

bankruptcy judges a "unit" of the district court to be known as the bankruptcy court and making

each bankruptcy judge a "judicial officer" of the district court. Majority of courts in various

circuits have held that bankruptcy court is not a court of the U.S.. *See Jones v. Bank of Santa Fe,*

40 F.3d 1084 (10th Cir. 1994); *Perroton v. Gray,* 958 F.2d 889 (9th Cir. 1992); *IRS v. Brickell*

*Inv. Corp.*, 922 F.2d 696 (11th Cir. 1991); *Gower v. Farmers Home Admin.*, 899 F.2d 1136 (11th

Cir. 1990), *In re Becker's Motor Transp., Inc.,* 632 F.2d 242 (3d Cir. 1980), *Lauber v. Gremli,*

179 B.R. 712 (Bankr. M.D. Fla. 1995), *In re Ennis*, 178 B.R. 192, 197 (Bankr. W.D. Mo. 1995), *Regensteiner Printing Co. v. Graphic Color Corp.*, 142 B.R. 815, 818 (N.D. Ill. 1992).

Since bankruptcy court is not an Article III court, they lack power to sanction under 1927. *Brown v. Mitchell*, 827 F.2d 1219, 1221 (8th Cir. 1987) ("it is questionable whether a bankruptcy court falls within the definition of 'courts of the U.S.' for purposes of imposing sanctions against attorneys under [§ 1927]"); *In re Memorial Estates, Inc.*, 950 F.2d 1364, 1369-70 (7th Cir. 1991) (bankruptcy court lacked jurisdiction to sanction under § 1927); *Jones v. Bank of Santa Fe* (40 F.3d 1084 (10th Cir. 1994). Thus, in this case, Appellant was improperly sanctioned by the Bankruptcy Court as it is not a court of the U.S. and lacks power to sanction under 1927.

**VIII. APPOINTMENT CLAUSE VIOLATION:** There is an improper power delegation to bankruptcy judges. 157 allows district court "to provide that any or all cases under title 11 and any or all proceeding arising under title 11 or arising in or related to case under title 11 shall be referred to the bankruptcy judges for the district." § 151 amplifies the scope of power, "[E]ach bankruptcy judge, as a judicial officer of the district court, may exercise the authority conferred under this Chapter with respect to any action, suite or proceeding and may preside alone and hold a regular or special session of the court, except as otherwise provided by law or by rule or order of the district court." Such officer exercising such powers should be appointed by the President and confirmed by the senate. Appointment of bankruptcy judges does not pass constitutional muster even as "inferior judicial officer." "Inferior officers" are directed and supervised at some level by others appointed by presidential nomination with the advice and consent of the Senate." *Edmond v. U.S.*, 520 U.S. 651 (1997). Thus, on these facts, the

appointment clause has been violated, and the judge acted improperly in sanctioning the appellant.

**IX. APPELLANT SHOULD NOT HAVE BEEN SANCTIONED UNDER 1927 OR THE COURTS INHERENT POWER:** The 2nd Cir. ("2nd Cir.") consistently finds that sanctioning an attorney under 1927 is appropriate only under the most *severe* cases. *See Cohoes Industrial Terminal, Inc. v. Latham Sparrowbush Associates*, 931 F.2d 222, 230 (2d Cir. 1991); *Romeo v. Sherry*, 774 F.2d 570, 574 (2d Cir. 1985)(Courts should issue 1927 sanctions "narrowly and with great caution, so not to stifle the enthusiasm or chill the creativity that is the very lifeblood of the law"). In fact, this very Court has upheld sanctions in the most serious misconduct. *Hudson Motors Partnership v. Crest Leasing Enterprises*, 845 F. Supp. 969, 978 (E.D.N.Y. 1994)("Conduct which allows for the imposition of sanctions under §1927 pursuant to the discretion of the court include the following: resubmitting a motion that has been previously been denied, bringing a motion based on 'facts' the opposite of which are previously found by the court; making several insupportable bias recusal motions and repeated motions to reargue"). Considering the whole record, Appellant was sanctioned for simply filing two counterclaims against a Trustee because he had a good faith belief that his clients were harassed. This Court should reverse the decision of the Bankruptcy Court and find that even if Appellant's counterclaims are not popular, they were made with the best intentions.

To impose sanctions under 1927, the moving party must show that an attorney multiplied proceedings unreasonably and vexatiously, and increased the costs of the proceedings with bad faith or intentional misconduct. *Venziano v. Long Island Pipeline Fabrincation & Supply Corp.*, 238 F.Supp. 2d 683, 693 (D.N.J. 2002). "Unreasonably and vexatiously sets a high bar for relief, and has been interpreted by 2nd Cir. that the offending conduct must have been both

unreasonable and for an improper purpose. *See Ball v. A.O. Smith Corp.*, 451 F.3d 66, 70 (2d Cir. 2006). Courts may impose sanctions pursuant to their inherent authority. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). To impose sanctions pursuant to its inherent power, a court must find that: "(1) the challenged claim was without a colorable basis and (2) the claim was brought in bad faith, *i.e.,* motivated by improper purposes such as harassment or delay." *Id.* at 336. Similar to the sanctions power under 1927, the Supreme Court has cautioned that a court's inherent power should be exercised with restrain and discretion. *U.S. v. Int'l Broth. Of Teamsters*, 948 F.2d 1338 (2d Cir. 1991).Sanctioning attorney conduct under 1927 and the court's inherent power requires a finding of bad faith under both analyses. *See Oliveri*, 803 F.2d at 1273 ("an award made under § 1927 must be supported by a finding of bad faith similar to that necessary to invoke the court's inherent power"). Thus, the analyses of these two standards are intertwined and the court must establish that the sanctioned attorney brought a meritless claim which is not colorable and such claim was brought in bad faith. Additionally, a court must also find that the attorney's conduct multiplied the proceedings.

**X. COLORABLE CLAIM:** A claim is "entirely without color when it lacks any legal or factual basis." *Schalifer*, 194 F.3d at 337. The analysis is one of both subjective and objective reasoning. *Id.* (The inquiry is "whether a reasonable attorney . . . could have concluded that the facts supporting the claim might be established, not whether such facts have been established." The court further inquired into the attorney's subjective belief as well.); *Oliveri*, 803 F.2d 1265, 1268 (2d Cir. 1986) (when considering sanctions, the factual focus must be on the information available to the attorney at the relevant times). Here, Appellant asserted two counterclaims against trustee, one for abuse of process and the other for a constitutional tort. To determine whether Appellant's counterclaims were so meritless that they had no colorable basis, following

12

must be considered: (1) whether there was any legal or factual basis which might give rise to a claim – objective standard; (2) information available to Appellant at the relevant times – subjective standard; and (3) how the Bankruptcy Court used the record to determine if in fact there was a colorable basis to bring such counterclaims. Appellant's counterclaims did have a colorable basis as he held a subjective belief at all relevant times that there were factual and legal basis for such claims. Further, considering the facts and circumstances, a reasonable attorney could have brought such counterclaims in order to protect the property rights of his clients.

**XI. ABUSE OF PROCESS:** Under New York State, a plaintiff must satisfy three to successfully bring a claim for abuse of process:(1) regularly issued process, either civil or criminal; (2) intent to do harm without excuse or justification; and (3) use of the process in a perverted manner to obtain a collateral objective. *Klass v. Frazer*, 290 F. Supp. 2d 425, 426 (S.D.N.Y. 2003). In its decision, the Bankruptcy Court relies on *O'Bradovich v. Vill. Of Tuckahoe*, which states that the filing of a service of a summons and complaint, without more, "is not sufficient basis for meeting the first element. . . ." 325 F. Supp. 2d 413, 434 (S.D.N.Y. 2004). Further, the court relies on *Jaroslawicz v. Cohen*, which requires a party to allege special damages under an abuse of process claim. 783 N.Y.S.2d 467, 467 (N.Y. App. Div. 1st Dep't 2004). Bases on these two cases, the Bankruptcy Court held that Appellant did not have a colorable basis to bring an abuse of process counterclaim against trustee because Appellant's abuse of process claim fails under the first element and Appellant failed to allege any special damages. There are three serious mischaracterizations with this Court's analysis. First, the Bankruptcy Court only focused on a portion of the *O'Bradovich* holding - that the filing of a service of a summons and complaint is insufficient to meet the first element. Although this holding is correct, the Bankruptcy Court failed to consider an exception carved out by

13

*O'Bradovich.* A further reading of the case states a "plaintiff must allege misuse of process after it was issued, *or* that the defendant acted to deprive the plaintiff of property 'under color of process.'" 325 F. Supp. 2d at 434. In *O'Bradovic*, the plaintiff's sued the village for abuse of process after the village unsuccessfully tried to file a defamation suit against the plaintiffs. 325 F. Supp. 2d at 420. The court dismissed plaintiff's abuse of process claim since filing of the lawsuit by the village was not sufficient basis for bringing such claim and the "Plaintiff's did not allege that the Defendants interfered with their property or liberty interests under color of process." *Id.* at 434.

Here, Trustee seeks to recover an alleged fraudulent conveyance "from Mahia as a result of the Defendant's receipt of $106,761.00." Trustee tried to recover $35,587.000 under § 542(a) which provides "an entity in possession, custody or control, during the case, of property that trustee may use, shall deliver to trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate." Whether or not such property did in fact belong to the estate or to Appellant's client is a question for the Bankruptcy Court to determine. Until this issue is decided, Trustee was in fact trying to deprive Appellant's client of property: $35,587.00. Unlike the village in *O'Bradovich*, trustee interfered with Mahia's property interest as Mahia could no longer freely use or dispose his real property, until the resolution of this case, especially when being sued for fraudulent conveyance. Since Trustee was trying to deprive Appellant's client of property (and not considering whether trustee had a valid claim), Appellant did have a colorable basis to bring an abuse of process counterclaim against trustee because under *O'Bradovich*, an abuse of process claim is valid either after process has been issued, which in this case it was not, *or* there is a depravation of property. Thus, a reasonable attorney could determine that the facts supporting the claim *might*

14

be established as the case law cited by the Bankruptcy Court which carves an exception to bringing an abuse of process claim. Owing to this lawsuit by trustee, the defendant could not freely transact with the sale of his house or purchase of a new property, as presence of a lawsuit against the seller deters any prospective buyer and title company would not insure such a title. Lawsuit impairs the right to freely transact with the property interest and that is deprivation of a property right, which has been broadly defined including intangible rights. The second mischaracterization of the law by the Bankruptcy Court comes from the belief that special damages must be pleaded in an action in order to prevail under an abuse of process claim in New York State. In New York State, the claims for malicious prosecution and abuse of process are similar but separate claims. Special damages must be pleaded in an action for malicious prosecution. *In re: Eerie World Entertainment*, 2006 Bankr. Lexis 770. Extortion or unfairness is an element of abuse of process. *Foy v. Barry*, 87 A.D. 29. It is a perversion of the process when it is used to extort money in order to coerce the withdrawal of a civil action or to compel the payment is due. *Id.; Dishaw v. Wadleigh*, 15 A.D. 205. Here, the factual basis support that at the very least, if everything taken in the counter-claim as true, there *may* have been a reason to find that trustee abused her power and tried to extort money from Appellant's client in order to bring it back to the estate, thus inflating the pie for bigger commission. There is legal basis under New York State law to determine that the two claims are separate and a possibility that given the circumstances of this case, the interference with Mahia's client's rights was sufficient in leading to a colorable basis of bringing an abuse of process claim.

**XII. Subjective Belief:** The Bankruptcy Court did not focus on the factual information available to Appellant at the relevant times, a subjective standard, considered by the majority of the 2nd Cir. cases. *See, Oliveri*, 803 F.2d at 1268. In *Schlaifer*, an attorney was sanctioned under 1927

15

and the court's inherent authority for bringing a meritless fraud claim against the defendant. 94 F.3d at 329. The claim was meritless because the court found the plaintiffs could not have reasonably relied on the misrepresentations of the defendants. *Id.* As a result, the district court sanctioned the licensing company's attorneys, finding the fraud claim was without a colorable basis. *Id.* at 331. The 2nd Cir. reversed the sanctions finding that although the claim failed as a matter of law, it was not necessarily lacking *any* basis as there was no evidence to suggest that there was utterly no basis for the attorney's subjective belief on the merits of the case. *Id.* at 337. Instead, the attorney discussed the case with his clients and subjectively believed that a case for fraud was warranted, especially since there was some evidence that the estate made misrepresentations. *Id.* Here, the Bankruptcy Court did not consider the factual information available to Appellant at the relevant times as required by *Oliveri.* During the "relevant time," which was while Appellant was answering Trustee's complaint, Appellant had a subjective belief that the Debtor was merely a bare legal title holder and the entire proceeds of the sale belonged to his client. Appellant's belief of the underlying basis resulted from speaking to his client, learning that the client purchased the property in question, the client made all the mortgage payments, the client took all his property tax exemptions, and the Debtor was nothing more than a name on a deed. Appellant, coming from a South-Asian culture, understood that adding the name of a parent to the deed of a house, which is in fact owned by the children, is nothing more than a sign of respect. Finally, Appellant learned that during the 341 meeting there was confusion between Trustee and the Debtor as to whether or not the Debtor in fact owned the property and Trustee ended the meeting by stating she would conduct a further investigation and hold another 341 meeting if necessary. Like *Schlaifer*, Appellant analyzed the case after speaking to his client, and made a determination that Trustee, knowing that the Debtor and her

16

family did not have a lot of money and were immigrants, could have abused the process in filing the lawsuit. In light of these facts and the law it can be concluded both subjectively and objectively under these circumstances there *might* be a basis under which to bring an abuse of process claim and the facts supporting the claim might be established.

**XIII. Clearly Erroneous Findings:** The Bankruptcy Court quoted various documents filed by Appellant in order to support the conclusion that Appellant acknowledged trustee acted reasonably. But, these findings are clearly erroneous as Appellant's statements were taken out of context. Appellant does acknowledge that trustee has a fiduciary duty under the Bankruptcy Court but; all such duties come with limits. On page 23 of the decision, the Bankruptcy Court shows that Appellant "acknowledges that trustee took several steps in order to investigate the basis for the claims asserted in the adversary proceeding. These include conducting the § 341 meeting . . Debtor's name appears on deed . . .asking the Debtor specific questions about the . . . sale of property." Although trustee may in fact have taken such steps, the Bankruptcy Court left out an important argument made by Appellant. During the 341 meeting, the Debtor, who is an illiterate woman that does not speak English and has no understanding of the property rights or laws, did not have an opportunity to even explain her position to trustee. The transcript of the 341 meeting shows that there was serious confusion between the Debtor and Trustee and trustee ended the meeting by stating that she will look into the matter and hold another 341 meeting if necessary. Provided the additional information which was not included in the Bankruptcy Court's determination in sanctioning Appellant, there is some factual basis for Appellant to believe or any reasonable attorney to believe that trustee may have prematurely filed a lawsuit against a third party and tried to interfere with their property rights without conducting a reasonable investigation.

**XIV. CONSTITUTIONAL TORT**: Appellant's second counterclaim of a constitutional tort

also has a colorable basis and there are factual and legal support for Appellant to believe or any

reasonable attorney to believe that the facts supporting the claim might be established. The

Bankruptcy Court dismissed the counterclaim as colorless because Appellant did not identify the

constitutional article or amendment, or other grounds, upon which the claim for constitutional

tort is based. Further, the Bankruptcy Court determined that since Appellant failed to point to

case law that sets forth persuasive grounds to conclude that such a claim exists; the counterclaim

must be without factual and legal basis. The Bankruptcy Court disregards the major tenet of

*Bivens* law as developed by the Supreme Court. All rights do not have to be named. When

constitutional rights are hurt, applying common law principles, as suggest by the Supreme Court

in *Carey v. Piphus*, 435 U.S. 247 (1978), *Bivens* plaintiffs could establish what may be termed

"psychological injury" or injury to "dignitary interests." And these could include impairment of

reputation, humiliation, embarrassment, and mental and emotional distress-although, such

injuries are not the typical common law variety, they are compensable in a constitutional tort

action. *See Memphis Community School Dist. v. Stachura*, 477 U.S. 299, 306-07. The term

"constitutional tort" has been used by the Supreme Court in *Stachura*. Although Appellant may

not have cited to a particular article or amendment under which his constitutional tort is based,

Appellant did assert that his client had the right to be left alone, in peace with his family.

Further, Appellant argued that the right to cherish life and privacy without being dragged

involuntarily in litigation or family members pitted against each other is one of the most

fundamental aspects provided under the Constitution. These arguments fall under the right to

property and privacy. There were alternative remedies which the court could have used instead

18

of sanctioning Appellant.  The Bankruptcy Court could have instructed Appellant to be more specific and cite to a particular amendment or dismissed the counterclaim.

**XV. BAD FAITH:**  A finding of bad faith is a necessary prerequisite in order to impose sanctions under 1927 and the court's inherent authority. *Inteli-Check,* 2005 WL 3533153 * 10 "Bad faith is the touchstone of an award under this [1927] statute." *Int'l Brotherhood of Teamsters,* 948 F.2d at 1345.  The 2nd Cir. has emphasized that, in imposing sanctions, the court must find clear evidence that the offending party acted for improper purposes. *Revson v. Cinque,* 221 F.3d 71 (2d Cir. 2000).  Clear evidence should arise from willful bad faith by the attorney. *Veneziano,* 238 F.Supp.2d at 693.  The 2nd Cir. interprets the bad faith standard restrictively. For instance, courts have refused to sanction an attorney even where the attorney's claim wholly lacked merit. *Energy Brands Inc. v. Spiritual Brands, Inc.,* 571 F.Supp. 2d 458, 472-73 (SDNY 2008) (although motion wholly lacked merit, that by itself if insufficient to prove bad faith). When reviewing the cases relied on by the Bankruptcy Court in its decision to sanction Appellant, most of the cases did not result in sanctions as there was no showing of bad faith. Instead, these cases found that even when a claim is completely meritless or where the attorney's conduct becomes questionable, the bad faith was still missing.  For example, in *Energy Brands,* the defendants' attorney filed a motion to dismiss a claim for lack of personal jurisdiction.  In reality, the defendants had purposely availed themselves by conducting activities in New York and it was very clear that the motion was meritless.  Although there was no colorable basis for the motion, there was no evidence to suggest the attorney acted in bad faith.

Similarly, in *Oliveri,* an attorney raised claims of unconstitutional arrest, excessive force, challenged a policy by the district attorney's office, and a claim for malicious prosecution.  803 F.2d at 1275.  The attorney was sanctioned by the lower court for bringing meritless claims and

19

for continuing the prosecution of claims after it became apparent that they were without a factual or legal basis. *Id.* Specifically, the lower court sanctioned the attorney for challenging a policy implemented by the district attorney's office of attempting to coerce defendants into signing releases of civil rights claims against county employees before agreeing to dismiss charges against arrestees. Id. The district court imposed sanctions determining that there were no factual basis whatsoever in bringing such a claim against the district attorney's office. Id. The 2nd Cir. found that "although it may be true that the [attorney] was not in possession of facts that would support the allegations . . . it is also true that the [attorney] was not in possession of the facts that would negate the claim." Id. at 1279. In fact, the 2nd Cir. took into consideration that the attorney was very familiar with many similar claims against the same agency. *Id.* The 2nd Cir. reasoned "if sanctions were to bar possible exploration of such claims, the agency would be effectively immunized even if it were engaged in unconstitutional policies and practices." *Id.* at 1279. Here, trustee alleges that Appellant is on a "personal crusade" against trustees and cites to other cases in which Appellant has brought similar claims. But, that is not enough to show that Appellant acted in bad faith when raising those counter-claims, which have a colorable basis. Even assuming *arguendo* that Appellant's claims lacked a colorable basis, the Bankruptcy Court still did not make a finding of bad faith. Like *Oliveri*, Appellant is challenging the policy of an agency protected by the government. Further, Appellant is familiar with cases where Trustees may have abused their power in bringing lawsuits against third parties. Appellant's counterclaims were not made as a result of some personal vendetta against trustees, instead it arose from a good faith extension that Trustees should be held to a higher standard than the average private citizen filing a lawsuit. Like *Oliveri*, Appellant's experience with bankruptcy cases allowed him to challenge a policy where there is no effective check on trustee's power to

bring such lawsuits. Trustee has more protections and powers pursuant to the Bankruptcy Code

which gives Trustees an advantage over the average litigant. If trustee prevails, trustee gets a

percentage of the recovery. If trustee fails, trustee does not lose anything. Appellant

understands that trustee is under the duty to find assets for the estate, but, Appellant in good faith

believes that trustees should be expected to conduct a more thorough research prior to

commencing such an action and not subject vulnerable people to unwarranted lawsuits. Even if

the Bankruptcy Court does not agree with Appellant's counter-claims against trustee, sanctions

under 1927 and the court's inherent powers are not warranted. In *Ball*, the addressed the concern

that 1927 requires a sanctioning court "to do more than disagree with a party's legal analysis."

451 F.3d 66, 70 (2d Cir. 2006).

The Bankruptcy Court also cited *Inteli-Check* and determined that absent bad faith, a

court could not impose sanctions under 1927 or the court's inherent power where no clear

evidence of bad faith existed. Attorney was sanctioned for preparing false emails, preparing false

minutes of corporate meetings and protecting documents by asserting the attorney-client

privilege. 2005 WL 3533153 *6. The adversary sought sanctions under 1927 and the court's

inherent power alleging that the attorney's misconduct delayed the case for over two years. *Id.* at

10. The court refused to sanction the attorney even where the claims were erroneous and

determined that both attorneys were responsible for the delay. *Id.* Here, the Bankruptcy Court

spends an entire page of its decision listing all of the missed deadlines and extensions that

Appellant requested in defending the motion to sanction. But, the Bankruptcy Court did not take

into consideration that like any other party appearing before the court, Appellant too has the right

to hire an attorney of his choice and not become subjected to defending himself *pro se*. It is

difficult, if not impossible, to challenge the power of the very court that you practice before and

argue that the Court should not impose sanctions. This is why it was very difficult for Appellant to find an attorney and this Court can see from the record, Appellant still has to represent himself. Still, Appellant's counter-claims were withdrawn by Mahia's new attorney and it is only the motion for sanctions, which was filed by trustee, which has caused such a delay. Ironically it was trustee that ignored the main adversary and keep requesting adjournment of the pre-trial conference, for the sole purpose of seeking sanctions against the appellant so that he could use this as a platform to intimidate the defendant into settlement. This has been brought to the bankruptcy judge attention, in the pending motions. Other cases cited in the Bankruptcy Court's decision also decided against sanctions. In *Schlaifer*, discussed in § II sub§ A of this brief, the district court imposed sanctions on the attorneys finding that the attorneys raised the claim for fraud in bad faith. 194 F.3d at 329. The court supported its finding of bad faith by finding that the claim for fraud was "patently frivolous," attorneys allowed a witness to testify although the witness had previously given contradictory testimony in a prior proceeding; the attorneys ran up a $2.6 million in fees pursuing the claim; the attorneys had already won $4 million form an arbitral panel; the attorneys shifted to a contingency fee arrangement with their clients; and the attorneys litigated the case with an "unreasonable tenacity," including issuing onerous subpoenas. *Id.* at 339. The 2nd Cir. concluded that even with all these factors, there was still not enough support to find bad faith. *Id.* The court determined that this was nothing more than the "result of poor legal judgment" but there was no evidence to suggest that the attorneys had utterly no basis for their subjective belief in the merits of their case. *Id.* at 340. The Bankruptcy Court relies on trustee's argument that Appellant's bad faith can be inferred from the "legal and factual infirmities in the Counterclaims." The court cites to *In re East 80th Street Equities, Inc.,* where the 2nd Cir. reasoned that bad faith can be inferred where conduct at

issue is so completely without merit. 218 F.3d 109 (2d Cir. 2000). The 2nd Cir. affirmed sanctions imposed on an attorney under 1927 and the court's inherent power for seeking to vacate an approve sale of the debtor's estate judgments to creditors and alleging lack of notice and violation of trustee's fiduciary duty. *Id.* The bankruptcy court warned the attorney that this appeal was meritless. *Id.* On appeal, the attorney's misconduct was so egregious when he called trustee an "idiot" and slandered the bankruptcy court by calling this a "judicially sanctioned grand larceny." *Id.* at 113. The attorney did not have any respect for the court and at the time the appeal was pending with the 2nd Cir., he had failed to pay sanctions. *Id.* at 114. The court inferred bad faith where the attorney, after being warned, continued his frivolous actions. *Id.*

The Bankruptcy Court cites to *Veneziano* where sanctions were imposed against an attorney for bringing a frivolous and meritless claims under the Americans with Disability Act. 238 F.Supp.2d at 683. Although the court found the claims were meritless and were brought solely to harass the adversary with whom the attorney had been in conflict with, the determination was not based solely on the complaint being frivolous. *Id.* at 694. Instead, the court noted that counsel knew or should have known that they were without merit especially since the attorney ignored guidance from the court. *Id.* Here, unlike *Veneziano* and *In re East 80th Street*, Appellant's bad faith cannot be inferred merely because the Bankruptcy Court believed Appellant's counter-claims are without color. The Bankruptcy Court cites to these very decisions in support of its decision to sanction but does not compare the difference between the attorneys sanctionable conduct in those cases and Appellant's. Trustee filed a motion for sanctions immediately after Appellant asserted those counter-claims. Appellant never once received any warning from the court or his adversary that his claims were meritless. There is no choice for the sanctioning court but to infer bad faith where the sanctioned attorney refuses to

listen to any warnings by the court or its adversary. Here, trustee or her counsel did not even provide Appellant with a warning letter and give an opportunity to withdraw the case.

Although Appellant may have requested extensions over the course of these proceedings, Appellant has never conducted himself in a manner where he has disrespected the Court or trustee. Appellant paid the entire $15,000 sanctions to trustee by taking a very high cost loan and has never once slandered trustee or the Bankruptcy Court. Even when the Bankruptcy Court found no colorable basis for Appellant's counterclaims, sanctions should not been imposed. Appellant is not acting in bad faith and is not on a personal crusade against Trustees. Merely challenging a prevalent practice of trustee of filing lawsuit and then exploring grounds for such lawsuit does not automatically infer bad faith on part of the attorney. Thus, sanctions against Appellant are not warranted and should be reversed.

**XVI. MULTIPLICATION OF PROCEEDINGS**: Filing of a counter-claim by Appellant did not multiply proceedings as required for sanctions under 1927. 1927 "does not apply to initial pleadings, since it addresses only multiplication of proceedings. It is only possible to multiply a prolonged proceeding after the complaint is filed." *In re Yagman,* 796 F.2d 1165, 1187 (9th Cir. 1986). 1927 sanctions were not warranted since the attorney only filed a complaint and complaints do not multiply proceedings. *Sussman v. Bank of Isreal,* 154 F.R.D. 68, 71 n.2 (S.D.N.Y. 1994). There was no multiplication of proceeding because counterclaims were withdrawn and trustee did not act on those counterclaims.

**XVII. COURT DID NOT CONSIDER ABILITY TO PAY.** Under 1927 and the court's inherent power, the ability of the attorney to pay should be considered when determining the appropriate amount of sanctions. In *Oliveri*, there was some question about the attorney's ability to pay an award of the sanctions imposed and the district court scheduled a hearing to determine

the issue. 802 F.2d at 1268. In this case, Appellant only made a mere $250 and consistently mentioned to the Bankruptcy Court that he did not have the ability to pay the $18,000 requested by trustee and her counsel. He borrowed $15,000 at an exorbitant rate to be in compliance with the order. Here, the court acknowledges that it should consider Appellant's ability to pay the sanctions, but never made the actual finding. Thus, this Court should reverse the decision.

**XIX. LAW FIRMS SHOULD NOT BE SANCTIONED UNDER 1927.** 1927 allows for the sanctions of "any attorney or other person admitted." *See Rates Technology, Inc. v. Mediatrix Telecom, Inc.,* 2012 WL 948661 (E.D.N.Y. 2012)(law firms do not have culpability).

**XX. CONCLUSION** This case is not about the indiscipline of the appellant or of any contemptuous act, it is about the merit of assertions, a right to be not wronged by an aggressive trustee and her legal team. It was about protecting a minority family from unwarranted onslaught of a lawsuit, which the family cannot afford. Trustee lawsuit against the defendant had no basis and was filed to extort settlement from the family. It is clear that a bare legal title holder has no ownership interest. That is, the bankruptcy estate does not include "property of others in which the debtor ha[s] some minor interest such as a lien or bare legal title," *U.S. v. Whiting Pools, Inc.,* 462 U.S. 198, 204 n. 8, 103 S.Ct. 2309, 2313 n. 8, 76 L.Ed.2d 515 (1983); *see 4 Collier on Bankruptcy* ¶ 541.13, at 541-75 (15th ed.1989) (estate succeeds only to the title and rights that the debtor possessed); *In re Quality Holstein Leasing,* 752 F.2d 1009, 1012 (5th Cir.1985) (same). *In re Howard's Appliance Corp.,* 874 F.2d 88, 93 (2d Cir. 1989).

Thus, this appeal be granted in all aspects and award for sanction be set aside, in the alternative the appellants be given a *de novo* hearing before this court, as the appellant did not participate in bankruptcy court proceeding.

Dated: June 26, 2013

Karamvir Appellant, Esq.

25