```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
                                                         :
KARAMVIR DAHIYA and                                      :
DAHIYA LAW OFFICES LLC,                                  :
                                                         :        MEMORANDUM AND ORDER
                                                         :           13-CV-3079 (DLI)
                              Appellants,                :
                                                         :
              -against-                                  :
                                                         :
DEBRA KRAMER AS TRUTEE OF THE                            :
ESTATE OF SHAHARA KHAN,                                  :
                                                         :
                              Appellee.                  :
---------------------------------------------------------x
```
**DORA L. IRIZARRY, United States District Judge:**

Karamvir Dahiya and Dahiya Law Offices LLC (collectively, "Dahiya," or "Appellant") appeal from the March 11, 2013 Order and accompanying memorandum decision of the Honorable Elizabeth S. Stong, United States Bankruptcy Judge for the Eastern District of New York, in *In re Kahn*, Docket No. 11-AP-1520 (ESS), an adversary proceeding pending in the Bankruptcy Court.[1] Judge Stong's Order granted a motion for sanctions brought by Debra Kramer (the "Trustee") against Dahiya. *In re Khan*, 488 B.R. 515 (Bankr. E.D.N.Y. 2013). For the reasons set forth below, Dahiya's appeal is denied.[2]

## BACKGROUND

Familiarity with the background of this case, as summarized in this Court's memorandum and order on Dahiya's motion to withdraw the reference to the Bankruptcy Court of the sanctions

---

[1] The adversary proceeding is related to the Chapter 7 bankruptcy proceeding *In re Khan*, Docket No. 10-BK-46901 (ESS).
[2] By motion dated July 2, 2013, Appellant requests that the Court take judicial notice of certain documents filed in this and related cases. (Docket Entry No. 13.) The Trustee does not oppose Appellant's request, although she disputes the relevancy of the documents. (Docket Entry No. 14.) The documents that Appellant urges the Court to consider do not affect the outcome of this appeal.

1

motion, is assumed. *See Kramer v. Mahia*, 2013 WL 1629254, at *1-2 (E.D.N.Y. Apr. 15, 2013). Thus, the Court relates only the facts relevant to the present appeal.

On December 3, 2011, Debra Kramer, in her role as trustee of the bankruptcy estate of Shahara Khan (the "Debtor"), filed an adversary proceeding in Bankruptcy Court to recover alleged fraudulent conveyances from Tozammel H. Mahia ("Mahia" or "Defendant"), the Debtor's son. (Compl., Docket No. 11-AP-1520,[3] Doc. Entry No. 1.) The Trustee alleged that Defendant received all of the net proceeds of the sale of real property jointly owned by Defendant, the Debtor, and a third party. (*Id.*) After missing the deadline to answer the Trustee's complaint, Defendant retained Dahiya to represent him in the adversary proceeding. (Scheduling Ord., Docket No. 11-AP-1520, Doc. Entry No. 5.) The Bankruptcy Court then granted Defendant an extension of time, *nunc pro tunc*, to January 31, 2012, to file an answer. (*Id.*)

On February 7, 2013, one week after the extended deadline to answer the complaint had passed, Dahiya filed an answer on behalf of Defendant, which brought two counterclaims against the Trustee and demanded a jury trial. (Ans., Docket No. 11-AP-1520, Doc. Entry No. 8.) The Defendant's counterclaims alleged abuse of process and "constitutional torts" (the "Counterclaims"). (*Id.* at 4-6.) Specifically, Defendant claimed that the Trustee failed to investigate properly before bringing the adversary proceeding, and acted "deliberately, maliciously, and oppressively" to intimidate and injure the Debtor's family. (*Id.*) Defendant requested: 1) an injunction barring the Trustee from bringing actions against a debtor's family unless she first demonstrates probable cause; 2) that the requirement to show probable cause be incorporated into the Local Bankruptcy Rules for this District; and 3) that the United States Trustee Office investigate whether lawsuits by panel trustees are abusive. (*Id.* at 6.)

---

[3] All references to "Docket No. 11-AP-1520" are to the adversary proceeding underlying the instant appeal.

On March 24, 2012, the Trustee responded to the Counterclaims by moving for sanctions against Dahiya pursuant to 28 U.S.C. § 1927 and 11 U.S.C. § 105 (the "Sanctions Motion"). (Sanctions Motion, Docket No. 11-AP-1520, Doc. Entry No. 15.) The Trustee asserted that the Counterclaims were baseless, made in bad faith, protracted the adversary proceeding, and caused her to incur additional legal fees and increased malpractice and liability insurance premiums. (*Id.*) Between April 2012 and November 2012, the Bankruptcy Court granted Dahiya numerous requests for adjournments of the evidentiary hearing on the Sanctions Motion and encouraged Dahiya to obtain counsel. Dahiya missed several deadlines to file prehearing statements on the Sanctions Motion, hired and fired counsel, and reneged on a tentative settlement that the parties had placed on the record. When Dahiya advised the Bankruptcy Court that he was having personal issues and was unable to defend himself, the Bankruptcy Court emphasized the serious nature of the sanctions motion and implored him to seek help from a bar associations' lawyer's assistance program and retain counsel. (*See* Transcript of June 13, 2012 Bankruptcy Court Hearing ("6/13/12 Tr.") at 23:25–24:9, 26:18–24, 38:19–25, Docket No. 12-MC-794,[4] Doc. Entry No. 9; Docket No. 12-MC-832,[5] Doc. Entry No. 9.) Nowhere in the record does it appear that Dahiya pursued the Bankruptcy Court's suggestions.

On November 19, 2012, Dahiya moved this Court to withdraw the reference to the Bankruptcy Court of the Sanctions Motion. (Docket No. 12-MC-794, Doc. Entry No. 1.) On November 30, 2012, the Bankruptcy Court held an evidentiary hearing on the Sanctions Motion, at which Dahiya appeared but refused to participate. (Transcript of November 30, 2012 Bankruptcy Court Hearing ("11/30/12 Tr."), Docket No. 11-AP-1520, Doc. Entry No. 68.) On

---

[4] All references to "Docket No. 12-MC-794" are to Appellant's motion to withdraw the reference to the Bankruptcy Court of the Sanctions Motion.
[5] All references to "Docket No. 12-MC-832" are to Appellant's motion to withdraw the reference to the Bankruptcy Court of the adversary proceeding.

3

December 5, 2012, Dahiya filed a separate motion to withdraw the reference to the Bankruptcy Court of the adversary proceeding itself. (Docket No. 12-MC-832, Doc. Entry No. 1.)

On March 11, 2013, the Bankruptcy Court granted the Sanctions Motion (the "Sanctions Order"). *See In re Khan*, 488 B.R. 515. The Bankruptcy Court found that Dahiya had acted in bad faith by bringing Counterclaims against the Trustee that lacked a colorable basis and imposed sanctions against Dahiya, including a fine in the amount of $15,000. (*Id.*) The sanctions were to be paid to the Trustee in three installments of $5,000, to be received by April 15, 2013, May 15, 2013, and June 17, 2013. (*Id.*)

On the evening of April 10, 2013 – two business days before the first sanctions payment was due and thirty days after the issuance of the Sanctions Order – Dahiya filed an Order to Show Cause in this Court seeking to enjoin the Sanctions Order pending resolution of the withdrawal of reference motions. (Docket No. 12-MC-794, Doc. Entry No. 11.) On April 15, 2013, this Court denied the motion to withdraw the reference of the Sanctions Motion, the motion to withdraw the reference of the adversary proceeding, and the motion to enjoin the Sanctions Order. (Docket No. 12-MC-794, Doc. Entry No. 14; Docket No. 12-MC-832, Doc. Entry No. 10.)

On May 24, 2013, Dahiya filed this appeal of the Sanctions Order. Appellant claims that the Bankruptcy Court lacked jurisdiction over the Sanctions Motion and that, even if the Bankruptcy Court had jurisdiction, the imposition of sanctions against Dahiya was unwarranted.

## DISCUSSION

### I. Standard of Review

A district court reviews a bankruptcy court's findings of fact for clear error and reviews its legal conclusions *de novo*. *Overbaugh v. Household Bank N.A.* (*In re Overbaugh*), 559 F.3d

4

125, 129 (2d Cir. 2009); Fed. R. Bankr. P. 8013. "A bankruptcy court's award of sanctions will not be set aside by [the reviewing court] in the absence of an abuse of discretion." *In re Kalikow*, 602 F.3d 82, 91 (2d Cir. 2010). A bankruptcy court abuses its discretion where "its decision (1) rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding, or (2) cannot be located within the range of permissible decisions, even if it is not necessarily the product of a legal error or a clearly erroneous factual finding." *Schwartz v. Geltzer* (*In re Smith*), 507 F.3d 64, 73 (2d Cir. 2007) (quoting *Schwartz v. Aquatic Dev. Grp., Inc.* (*In re Aquatic Dev. Grp., Inc.*), 352 F.3d 671, 678 (2d Cir. 2003) (internal quotation marks and brackets omitted)).

## II. Application

### A. Authority to Issue Sanctions

The Bankruptcy Court found that it could impose sanctions under both its inherent authority and 28 U.S.C. § 1927 ("Section 1927"). *In re Khan*, 488 B.R. 515, 528 (Bankr. E.D.N.Y. 2013). Dahiya claims that: 1) the Bankruptcy Court does not possess "inherent authority" to issue sanctions because it is not an Article III court and 2) it is not authorized to impose sanctions under Section 1927 because it is not a "court of the United States." Since the Bankruptcy Court's finding that it had jurisdiction over the Sanctions Motion is a legal conclusion, this Court reviews the finding *de novo*.

First, Appellant appears to argue that the Bankruptcy Court did not have jurisdiction over the Sanctions Motion, because the "inherent authority" to impose sanctions is a judicial power that may only be exercised by Article III judges.[6] (App.'s Mem. at 8, Docket Entry No. 9.) This

---

[6] Article III § 1 of the United States Constitution requires that "[t]he judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish." U.S. Const. art. III, § 1. The judges of such courts "shall hold their Offices during good Behaviour, and shall, at stated Times, receive for their Services, a Compensation, which shall not be diminished during their

5

argument is without merit. Although the category of cases that can constitutionally be assigned to bankruptcy judges to issue final judgment is limited, *see Stern v. Marshal*, __ U.S. __, 131 S. Ct. 2594 (2011); *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989); *Northern Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 53 (1982), bankruptcy courts "possess inherent authority to impose sanctions against attorneys and their clients." *In re Plumeri*, 434 B.R. 315, 327-28 (S.D.N.Y. 2010) (quoting *In re Evergreen Sec., Ltd.*, 570 F.3d 1257, 1263 (11th Cir. 2009)). The inherent power to sanction is not governed by a specific rule or statute, but instead "derives from the fact that courts are vested, by their very creation, with power to impose silence, respect, and decorum in their presence, and submission to their lawful mandates." *Id.* at 328 (quoting *Schlaifer Nance & Co., Inc. v. Estate of Warhol*, 194 F.3d 323, 336 (2d Cir. 1999)); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). Despite Appellant's argument to the contrary, there is no support for the contention that the "inherent powers" of courts to issue sanctions "belong[] exclusively to the Article III courts." (App.'s Mem. at 8.)

Second, Appellant argues that the Bankruptcy Court did not have authority to sanction Dahiya under Section 1927, because the Bankruptcy Court is not a "court of the United States." (App.'s Mem. at 9-10.) Section 1927 provides that

> [a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C.A. § 1927. Although there is a circuit split with respect to the question of whether Section 1927 applies to bankruptcy courts, *In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 102

---

Continuance in Office." *Id.* Bankruptcy judges, in contrast, do not enjoy life tenure or protection against salary diminution as provided by Article III. *N. Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. at 61 (finding that "there is no doubt that . . . bankruptcy judges . . . are not Art. III judges").

6

(3d Cir. 2008) (collecting cases), the Second Circuit has found, albeit without discussion, that a bankruptcy court is a "court of the United States" and may issue sanctions under Section 1927. *Matter of Cohoes Indus. Terminal, Inc.*, 931 F.2d 222, 230 (2d Cir. 1991) (finding that "[a] bankruptcy court may impose sanctions pursuant to 28 U.S.C. § 1927 if it finds that an attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay"). Appellant has not presented any arguments or legal authority that persuade this Court otherwise.

Accordingly, the Court finds that the Bankruptcy Court correctly concluded that it had authority to impose sanctions under both its inherent authority and Section 1927.

### B. Whether sanctions were warranted

The Bankruptcy Court found that the imposition of sanctions against Dahiya was warranted because Dahiya acted in bad faith by advancing counterclaims that lacked a colorable basis. *In re Khan*, 488 B.R. at 535. Appellant argues that his conduct was not sufficiently egregious to warrant sanctions. The Court reviews the Bankruptcy Court's award of sanctions for abuse of discretion. *In re Kalikow*, 602 F.3d at 91.

#### 1. Legal Standard

Under its inherent powers to supervise and control its own proceedings, the Bankruptcy Court may impose sanctions where: 1) the challenged claim was without a colorable basis and 2) the claim was brought in bad faith, *i.e.,* motivated by improper purposes such as harassment or delay. *Enmon v. Prospect Capital Corp.*, 675 F.3d 138, 143-44 (2d Cir. 2012) (citing *Schlaifer Nance*, 194 F.3d at 336). A claim is colorable when it has some legal and factual support, considered in light of the reasonable beliefs of the individual making the claim. *Schlaifer Nance*, 194 F.3d at 337. Bad faith may be inferred "only if actions are so completely without merit as to

7

require the conclusion that they must have been undertaken for some improper purpose such as delay." *Id.* at 336.

Under Section 1927, the Bankruptcy Court may order an attorney to "satisfy personally the excess costs, expenses, and attorneys' fees" resulting from misconduct that "multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. A showing of bad faith is also required to support sanctions under Section 1927. *Oliveri v. Thompson,* 803 F.2d 1265, 1273 (2d Cir. 1986). In practice, "the only meaningful difference between an award made under § 1927 and one made pursuant to the court's inherent power is . . . that awards under § 1927 are made only against attorneys or other persons authorized to practice before the courts while an award made under the court's inherent power may be made against an attorney, a party, or both." *Id.*

### 2. The Counterclaims

Dahiya asserted two counterclaims against the Trustee on behalf of the Defendant in the adversary proceeding: 1) abuse of process and 2) constitutional torts. Both counterclaims were premised on the argument that the Trustee failed to investigate properly before bringing the adversary proceeding. The Bankruptcy Court found that neither counterclaim was colorable and that Dahiya could not have had a reasonable belief that they might be established. *In re Khan*, 488 B.R. at 533-34.

#### i. Abuse of Process

A claim for abuse of process has three elements: 1) regularly issued process, either civil or criminal; 2) intent to do harm without excuse or justification; and 3) use of the process in a perverted manner to obtain a collateral objective outside the legitimate ends of the process. *Morea v. Saywitz*, 2010 WL 475302, at *3 (E.D.N.Y. Feb. 8, 2010) (quoting *Savino v. City of*

8

*New York*, 331 F.3d 63, 76 (2d Cir. 2003)). In connection with the adversary proceeding, Appellant claimed that the Trustee was liable for abuse of process because she initiated the adversary proceeding against the Defendant without a proper basis for doing so. The Bankruptcy Court found that the abuse of process counterclaim was meritless, because: 1) "[t]he filing and service of a summons and complaint, without more, 'is not a sufficient basis for meeting the first element'" of an abuse of process claim, *In re Khan*, 488 B.R. at 532-33 (quoting *O'Bradovich v. Vill. of Tuckahoe*, 325 F. Supp. 2d 413, 434 (S.D.N.Y. 2004)); 2) Appellant failed to plead special damages, *id.* at 533 (citing *Jaroslawicz v. Cohen*, 783 N.Y.S.2d 467, 467 (1st Dep't 2004); and 3) the record contained undisputed facts undermining Appellant's claim. *Id.* Appellant disputes all of the Bankruptcy Court's findings.

The Court turns first to the Bankruptcy Court's finding that the filing and service of a summons and complaint is insufficient to meet the first element of an abuse of process claim. It is worth noting that, although the New York State Court of Appeals has expressly left open the question whether a claim for abuse of process must fail as a matter of law if it is based solely on the filing and service of a summons and complaint, *Parkin v. Cornell Univ., Inc.*, 78 N.Y.2d 523, 530 (1991), the Second Circuit has "maintained that the gist of abuse of process is the improper use of process after it is regularly issued." *Gilman v. Marsh & McLennan Companies, Inc.*, 868 F. Supp. 2d 118, 131 (S.D.N.Y. 2012) (quoting *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994)). In any event, Dahiya concedes that the filing and service of a summons and complaint is generally insufficient to satisfy the first element of an abuse of process claim. (App.'s Mem. at 13; App.'s Reply at 4, Doc. Entry No. 19). He contends, however, that "an exception carved out by *O'Bradovich*" provides a legal basis for the claim. (*Id.* at 13-14.) Specifically, Appellant cites the *O'Bradovich* court's statement that a properly pled abuse of process claim must allege

"misuse of process after it was issued, *or* that the defendant acted to deprive the plaintiff of property 'under color of process.'" (*Id.* at 14 (citing *O'Bradovich*, 325 F. Supp. 2d at 434) (emphasis added by Appellant)). According to Appellant, since the Trustee sought to deprive Defendant of property by initiating the adversary proceeding, the abuse of process claim was colorable. (*Id.* at 14-15.)

Appellant's argument is void of merit. As a preliminary matter, Dahiya's quotation of *O'Bradovich* is taken out of context. The complete quote reads as follows:

> "Numerous other courts have also held that the mere issuing of process cannot give rise to an abuse of process claim, since the unlawful pursuit of a collateral objective must occur *after* the process is issued. In other words, a malicious motive alone does not give rise to a cause of action for abuse of process under New York law; rather, plaintiff must allege misuse of process after it was issued, or that the defendant acted to deprive the plaintiff of property 'under color of process.'"

*O'Bradovich*, 325 F. Supp. 2d at 434 (emphasis in the original) (citations omitted). Read in context, the quoted section of *O'Bradovich* cannot reasonably be read to create an exception to the abuse of process doctrine. Instead, *O'Bradovich* indicates that a plaintiff must allege that the defendant acted to deprive the plaintiff of property rather than merely alleging a malicious motive. *See also El Greco Leather Products Co., Inc. v. Shoe World, Inc.*, 623 F. Supp. 1038, 1046 (E.D.N.Y. 1985) (finding that "[a]n action for abuse of process must include some element of extortion"), *aff'd*, 806 F.2d 392 (2d Cir. 1986); *Williams v. Williams*, 23 N.Y.2d 592, 596 (1969) (finding that "[t]he gist of the action for abuse of process lies in the improper use of process after it is issued. . . . It follows that there must be an unlawful interference with one's person or property under color of process in order that action for abuse of process may lie").

Accordingly, on this basis alone, Appellant's allegation that the Trustee failed to investigate before initiating the adversary proceeding did not properly plead a cause of action for abuse of process. Nonetheless, the Court will consider Appellant's remaining arguments.

Appellant contends that the Bankruptcy Court incorrectly held that a party must plead special damages to state a cause of action for abuse of process. (App.'s Mem. at 15.) New York law requires that a plaintiff alleging abuse of process plead actual or special damages. *Bd. of Ed. of Farmingdale Union Free Sch. Dist. v. Farmingdale Classroom Teachers Ass'n, Inc., Local 1889 AFT AFL-CIO*, 38 N.Y.2d 397, 405 (1975). "Special damages involve interference with person or property 'beyond the ordinary burden of defending a lawsuit,'" *Scopo v. Laborers' Int'l Union of N. Am.*, 2013 WL 837293 (E.D.N.Y. Mar. 6, 2013). In addition, they "must be alleged with sufficient particularity to identify actual losses and be related causally to the alleged tortious acts. Broad and conclusory terms are insufficient to fulfill this element." *Pawaroo v. Countrywide Bank*, 2010 WL 1048822, at *6 (E.D.N.Y. Mar. 18, 2010). Although Appellant claims that the legal expenses incurred by Defendant in connection with the adversary proceeding constitute actual damages (Reply at 5 (citing *Parkin,* 78 N.Y.2d at 530)), such damages were not pled in connection with the Counterclaims. (*See* Ans. At 4-5). Instead, Defendant's counterclaim for abuse of process stated only that "plaintiff [sic] has sustained damages in an amount to be determined at trial" and "is entitled to punitive damages." (*Id.* at 5.) Appellant's *post hoc* claim of damages does not serve to correct his failure to allege actual or special damages with sufficient particularity in the pleadings.

For this additional reason, the Court finds that the Bankruptcy Court correctly concluded that the abuse of process counterclaim was not colorable.

Finally, Dahiya claims that the Bankruptcy Court "did not focus on the factual information available to Appellant at the relevant times. . . ." (App.'s Mem. at 15-16 (citing *Oliveri*, 803 F.2d 1265)). Appellant argues that, when he submitted the Counterclaims, he had a "subject belief" that the "Trustee, knowing that the Debtor and her family did not have a lot of money and were immigrants, could have abused the process in filing the lawsuit." (*Id.* at 16-17.) However, based on a review of the record as a whole, this Court finds that the Bankruptcy Court did not err in finding that Dahiya could not have had a *reasonable* belief that his abuse of process claim had factual support. *See Schlaifer Nance*, 194 F.3d at 337.

Accordingly, this Court finds that the Bankruptcy Court did not abuse its discretion in concluding that the abuse of process counterclaim was not colorable.

### ii. Constitutional Torts

The "constitutional torts" counterclaim submitted by Dahiya on behalf of the Defendant reads as follows:

> "The trustee deliberately hurts the family composition here, undertakes to sue the son defendant on behalf of [the] mother debtor. The trustee law suit without ascertaining the real facts erodes our constitutional principle – 'the family unit does not simply co-exist with our constitutional system' but 'is an integral part of it,' for our 'political system is superimposed on and presupposes a social system of family units, not just of isolated individuals. No assumption more deeply underlies our society. . . .' The debtor['s] living has been put to a jeopardy [sic] – the very son who is supporting his mother has been sued and this is a tortious interference with the family. The defendant-son is under [a] religious duty to support his mother, the debtor here and now because of fear of this lawsuit, his spiritual duty to maintain his family has been negatively impacted. The trustee ignore[s] this, and decides to file this law suit, incurring expenses for the defendant already going through very tough times. Trustee did not do her homework. Had she done her homework, she would not or rather could not have brought this action. Trustee abused her powers. Wherefore we demand legal fees and punitive damages to be ascertained at the jury trial under an Article III tribunal."

(Ans. ¶ 29, Docket Entry No. 1-4.) In the Sanctions Order, the Bankruptcy Court found that Dahiya had failed to show that such "unspecified 'constitutional torts'" are recognized in this or any other Circuit. *In re Khan*, 488 B.R. at 533-34. The Bankruptcy Court noted that Dahiya had not identified any "constitutional article or amendment, or other constitutional grounds, upon which this claim is based." *Id.* at 534. Appellant objects to the Bankruptcy Court's finding that the "constitutional torts" claim was unsupported by law, arguing that "[a]ll rights do not have to be named. . . . Although Appellant may not have cited to a particular article or amendment under which his constitutional tort is based, Appellant did assert that his client had the right to be left alone, in peace with his family." (App.'s Mem. at 18.) Appellant also argues that the Bankruptcy Court should have directed him to be more specific or dismissed the counterclaim rather than imposing sanctions against him. (*Id.* at 18-19.)

This Court finds that the Bankruptcy Court did not err in finding that the "constitutional torts" claim was without legal or factual support. An initial matter, the Bankruptcy Court was not required to spend its limited time and resources attempting to construe the true substance, if any, of Dahiya's "confused, ambiguous, vague, [and] otherwise unintelligible" pleadings. *See Kalderon v. Finkelstein*, 495 F. App'x 103, 105-06 (2d Cir. 2012). As an attorney, it is Dahiya's responsibility to present allegations with sufficient clarity that the Court and his adversaries can understand the nature of his claims. *See id.* (finding that "[a] party proceeding *pro se* may not be familiar with the pleading standards, but attorneys, as officers of the court, are held to a higher standard").

Moreover, even if the Court were to construe Appellant's allegations as a substantive due process claim, as Dahiya appears to advocate (*see* App.'s Mem. at 18), this claim would fail as a matter of law. Although Dahiya claimed that his client's constitutional rights were violated

because the Trustee initiated an allegedly meritless adversary proceeding against him, this Court is not aware of any constitutional right "to be free from baseless civil litigation," *O'Bradovich*, 325 F. Supp. 2d at 426, even where such litigation negatively impacts one's family. As the Bankruptcy Court held, the Trustee's alleged "lack of respect for the Defendant's personal, religious, and spiritual obligations and duties . . . [is] not a substitute for a colorable claim." *In re Khan*, 488 B.R. at 534.

Accordingly, this Court agrees with the Bankruptcy Court's finding that the constitutional torts counterclaim was not colorable.

### 3. Bad faith and Multiplication of the Proceedings

"Bad faith may be inferred only if the actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *United Artists Theatre Circuit, Inc. v. Sun Plaza Enter. Corp.*, 352 F. Supp. 2d 342, 355 (E.D.N.Y. 2005) (quoting *Schlaifer Nance*, 194 F.3d at 336). Although Appellant argues that the Bankruptcy Court should not have concluded that Dahiya brought the Counterclaims for an improper purpose, the Bankruptcy Court's finding of bad faith was well reasoned and well "within the range of permissible decisions." *Schwartz v. Geltzer (In re Smith)*, 507 F.3d at 73.

As both this Court and the Bankruptcy Court concluded, the Counterclaims were clearly without merit. The Bankruptcy Court acknowledged that Dahiya possesses strong personal convictions regarding "fairness and equity under the Bankruptcy Code," but found that "where there is no colorable basis to bring [a claim], even the most laudable of motivations cannot provide a proper purpose for having done so, or infuse merit into a groundless claim." *In re Khan*, 488 B.R. at 535. Based on the record as a whole, the Bankruptcy Court concluded that, by bringing the Counterclaims, Dahiya had let his "passion [and] policy concerns overwhelm [his]

14

professional judgment . . . at the expense of [his] client's interests." *Id.* at 534. The Bankruptcy Court also noted that Dahiya had brought similar counterclaims against other trustees in various contexts. *Id.* (citing cases). Under the circumstances of this case, it was reasonable for the Bankruptcy Court to infer that Appellant had brought the Counterclaims for an improper purpose – namely, to pursue his own policy concerns regarding the fairness of trustees' administration of bankruptcy estates. Moreover, although Appellant claims that his actions did not "multiply the proceedings" (App.'s Mem. at 24), the record clearly supports the Bankruptcy Court's finding that "Dahiya's assertion of the Counterclaims [] caused significant and unnecessary delay in [the] adversary proceeding and in the administration of the Debtor's bankruptcy case, and [] increased the costs of these proceedings." *In re Khan*, 488 B.R. at 535.

Under the circumstances of this case, the Bankruptcy Court did not abuse its discretion in inferring bad faith on the part of the Appellant and in finding that his actions needlessly multiplied the proceedings.

### C. The amount of sanctions

The Bankruptcy Court imposed sanctions against Dahiya in the amount of $15,000. *In re Khan*, 488 B.R. at 537. Dahiya complains that his ability to pay the sanctions was not considered. However, this argument is contradicted by the record. The Bankruptcy Court found that the Trustee's requested sanctions award of $18,336 reflected the actual costs that were "reasonable and necessary in connection with responding to the Counterclaims and pursuing [the Sanctions Motion]." *Id.* Nonetheless, the Bankrupcty Court decided to award a lower amount "based on the objectives of compensation and deterrence, with due regard to ability to pay." *Id.* Moreover, even if the Bankruptcy Court had not considered Appellant's ability to pay, Dahiya has not presented any case law showing that it was required to do so. The case cited by Dahiya

states only that the court *may* consider an offending attorney's ability to pay sanctions, not that it must. *Oliveri,* 803 F.2d at 1281 (finding that "it lies well within the district court's discretion to temper the amount to be awarded against an offending attorney by a balancing consideration of his ability to pay").

Accordingly, the Bankruptcy Court did not abuse its discretion in awarding sanctions in the amount of $15,000.

### D. Sanctions against the Firm

Appellant argues that sanctions should not have been imposed against his firm, Dahiya Law Offices, LLC, under Section 1927. (App.'s Mem. at 25 (citing *Rates Tech., Inc. v. Mediatrix Telecom, Inc.*, 2012 WL 948661, at *2 (E.D.N.Y. Mar. 19, 2012)). Although "it is not clear whether firms – as opposed to individual attorneys – can be sanctioned under Section 1927," *Rates Tech*, 2012 WL 948661, at *2, the Court is not aware of any similar limitation on sanctions awarded under a court's inherent powers. Thus, the Court finds that the Bankruptcy Court did not abuse its discretion in imposing sanctions against the Firm.

## CONCLUSION

For the reasons set forth above, the Bankruptcy Court's Sanctions Order is affirmed and Dahiya's appeal is dismissed.

SO ORDERED.

Dated: Brooklyn, New York
March 27, 2014

/s/
DORA L. IRIZARRY
United States District Judge